```
1                    UNITED STATES DISTRICT COURT
2                    NORTHERN DISTRICT OF FLORIDA
                         TALLAHASSEE DIVISION
3
                                    )
4    NETCHOICE LLC, and             )
     COMPUTER & COMMUNICATIONS      )
5    INDUSTRY ASSOCIATION, d/b/a    )
     CCIA,                          )
6                                   )
                    Plaintiffs,     ) Case No: 4:21cv220
7                                   )
            v.                      ) Tallahassee, Florida
8                                   ) June 10, 2021
     ASHLEY BROOKE MOODY, in her    )
9    official capacity as Attorney ) 2:00 PM
     General of the State of        )
10   Florida, et al,                )
                                    )
11                  Defendants.     )
     _____)
12
             TRANSCRIPT OF TELEPHONIC SCHEDULING CONFERENCE
13            BEFORE THE HONORABLE ROBERT L. HINKLE
                 UNITED STATES DISTRICT JUDGE
14                  (Pages 1 through 33)

15   APPEARANCES: (by telephone)

16   For the Plaintiff:      DLA Piper US LLP – Miami
     Netchoice               By:  CHRISTOPHER GEORGE OPRISON
17                                Attorney at Law
                                  chris.oprison@dlapiper.com
18                           200 S. Biscayne Blvd., Suite 2500 Floor
                             Miami, FL 33131
19
                             DLA Piper US LLP – Philadelphia
20                           By:  ILANA HOPE EISENSTEIN
                                  Attorney at Law
21                                ilana.eisensein@dlapiper.com
                             1650 Market Street, Suite 5000
22                           Philadelphia, PA, 19101

23

24                   LISA C. SNYDER, RPR, CRR
                 Official United States Court Reporter
25          111 North Adams Street, Tallahassee, FL 32301
                 (850)567–1374 * lisasnydercr@gmail.com
```

```
1   (Continued)

2   For the Plaintiff:      Stearns, Weaver, Miller, Etc PA
    CCIA                    By:  DOUGLAS LAMAR KILBY
3                                Attorney at Law
                                 dkilby@stearnsweaver.com
4                           106 E. College Ave., Suite 700
                            Tallahassee, FL  32301
5

6   For the Defendant:      Office of the Attorney General
    Moody                   By:  BLAINE H. WINSHIP
7                                Attorney at Law
                                 blaine.winship@myfloridalegal.com
8                                GLEN ALLEN BASSETT
                                 Attorney at Law
9                                glen.bassett@myfloridalegal.com
                            The Capitol, PL-01
10                          400 S. Monroe Street
                            Tallahassee, FL 32399
11

12  For the Defendant:      Cooper & Kirk, PLLC – Washington DC
    Gillespie               By:  BRIAN WESLEY BARNES
13                               Attorney at Law
                                 bbarnes@cooperkirk.com
14                          1523 New Hampshire Ave.
                            Washington, DC  20036
15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

1

2          (Call to Order of the Court at 2:02 PM on Thursday, June

3     10, 2021.)

4               THE COURT:  Good afternoon.  This is Judge Hinkle.

5               Thank you for being available on short notice.

6               The agenda for the day is to set a schedule where we

7     can get done what we need to get done.  The plaintiffs have

8     moved for a preliminary injunction and they have asked for a

9     ruling by the end of the month.

10               Couple of ground rules for the hearing -- they may

11     have covered this with you when you checked in -- if you are not

12     speaking, please mute your phone.  If you are speaking, if I

13     call on you by name, of course, the court reporter will know,

14     and I will know, and the record will be clear who is speaking.

15     If I don't call on you by name if you would start each time by

16     telling us who you are that will help everybody.

17               Maybe the place to start is on the defense side

18     because the plaintiffs have already filed their memo.  My

19     understanding for the defense is that we're going to have

20     Mr. Winship and Mr. Barnes.

21               Mr. Winship, let me start with you.  How much time do

22     you want?

23               MR. WINSHIP:  Your Honor, we would like to have an

24     extension of a few weeks going into July.  We proposed to the

25     plaintiffs' counsel that we would -- about extending this

1    through near the end of July, and basically putting ourselves

2    into a position to have a hearing before Your Honor some time

3    around the end of July or early August.

4             We represented on behalf of all of the defendants in

5    this case that we will not -- we will agree not to enforce the

6    provisions of the new Act -- that is the Act that's at issue in

7    this litigation -- through and including August 1st, in order to

8    remove any threat of prejudice to the plaintiffs in this

9    litigation from having -- us have the opportunity to have some

10   more time, and, frankly, for the Court to have the benefit of

11   our having a fuller record that gets developed in this case.

12   And we don't believe that they are going to be suffering any

13   prejudice from this.  They have mentioned the threat of possible

14   civil actions that are authorized for some components of this

15   Act, and we pointed out to them, and we, of course, would point

16   out that as Your Honor very well knows that nothing that would

17   be happening in this litigation, and certainly in connection

18   with a preliminary injunction proceeding, would in any way tie

19   the hands of any civil litigants out there who might be wanting

20   to bring some kind of an extraneous action outside the scope of

21   this litigation.

22            Within the scope of this litigation we believe it

23   makes eminent sense for us to not do this at 90 miles an hour.

24   It's an important piece of legislation.  We know the Court wants

25   to get this right.  We all want to try to get it right.  And we

1    think it would make a lot more sense for us to have more of an

2    opportunity to develop a record.

3         I know that I've been contacted already by

4    organizations that are looking to come on an amicus basis on

5    behalf of plaintiffs.  We are looking to probably have

6    organizations come in on an amicus basis on behalf of the

7    defendants as well in support of the Act.  And so we need a bit

8    more time.

9         This is a big piece of legislation.  And I know, Your

10   Honor -- I have been before you many times over the years -- we

11   have had other cases where we have had other acts where we have

12   gone really at a hurried pace but the circumstances there were

13   different.  I think the importance of this, the importance of

14   the issues that are raised, warrant more time for this.

15        And, you know, frankly, it's a First Amendment case,

16   but in this instance, I mean, I will be telling you, as you will

17   see in our papers, that we don't think any speech on the part of

18   the defendants -- on the part of the plaintiffs, pardon me, is

19   being curtailed.  We are actually here on the side of freedom of

20   speech.  But all of that will be explained in detail in our

21   submission.

22        I would note also that the plaintiffs today were

23   telling us that they basically wanted to hurry us even faster in

24   order to get a ruling by July 1, so that they could have a reply

25   brief, which they don't ordinarily get under the rules.  And

1    many times Your Honor has allowed for reply briefs.  And our

2    view is if we can extend this timeframe out, toward the end of

3    July, we would be amenable to a period being built in for the

4    plaintiffs to have a reply.

5              But for them to have one now, under the circumstances

6    that we are facing, I think would greatly prejudice the

7    defendants in being able to put together the kind of record that

8    I think they need to put together and that I think the Court

9    needs to have the benefit of.

10             I will circle back later on, if I may, Your Honor, on

11   the question -- the related question that Your Honor noted in

12   your recent order about giving us more time with regard to

13   responding to the complaint and with regard to pretrial

14   disclosures.

15             The plaintiffs have indicated they don't have any

16   objection to our being able to have those dates rolled back

17   after Your Honor's ruling on the preliminary injunction.  We

18   think that makes a lot of sense.  But, as I said, we can come

19   back to that.  I think the core issue right now has to do with

20   the scheduling of the briefing.

21             I also want to note that we are probably going to want

22   to take some discovery of the plaintiffs.  We have a number of

23   declarations that they have submitted that raise a lot of issues

24   of fact that I think bear closer scrutiny.

25             I don't want to take all of the time in this hearing.

1   I know that counsel for the head of DMS also wants to address

2   Your Honor, but before I do that is there anything you would

3   like to ask me?  Anything I can tell that you would help?

4           THE COURT:  Yes.  Tell me the schedule you propose.

5           MR. WINSHIP:  Well, the schedule we would propose,

6   Your Honor, would actually backtrack from whenever Your Honor

7   would be in a position to hear the argument.

8           We would propose that you would hear it as close to

9   the end of July as your calendar would permit.  I would imagine

10  we would probably want to have a hearing that would last, I

11  would say -- and everyone else is obviously going to weigh in on

12  this -- but looking at this I would imagine it would be a

13  minimum of a couple of hours, and it might very well be a

14  morning or an afternoon entirely that would be consumed with

15  this, and it would raise the questions of whether we are going

16  to have live witnesses or not.  I think a lot of these questions

17  are really hard to deal with at this point.

18          You had indicated in your order, that you entered a

19  few days ago, that you would invite us, if we wanted to, to

20  postpone the hearing on scheduling for a few days, and we also

21  asked plaintiffs if they would be agreeable to do that, and they

22  were not agreeable to doing that.

23          I would suggest, Your Honor, that if we were able to

24  pin down a hearing date with Your Honor some time around the end

25  of July or early August that it might make some sense for the

 1   parties then, with that knowledge, to go back and try to work

 2   out, in an orderly fashion, a schedule that would allow for the

 3   defendants to have an ample opportunity to take some discovery,

 4   and to put their submissions -- their legal submissions --

 5   together and that would allow for a sufficient time for the

 6   plaintiffs to put together a reply brief, and allow Your Honor

 7   sufficient time to digest all of these things and the amicus

 8   filings that are probably going to be coming in, so that this

 9   hearing will be in a more orderly fashion.  So that really would

10   be my suggestion.

11          I don't have exact dates in mind for these various

12   events, but I do believe that with the benefit of knowing when

13   Your Honor wants to hear the case we probably could work

14   together with the plaintiffs' counsel to come up with a

15   reasonable schedule.

16          THE COURT:  Let me circle back and say something I

17   meant to say at the beginning of the hearing.  This is, of

18   course, a public hearing and so I know there was at least some

19   contact with the clerk's office about calling in and I'm sure

20   there are some members of the public on the phone.  You are

21   welcome to be on the phone.  The policy of the Judicial

22   Conference of the United States is that there is to be no

23   recording of proceedings in a federal district court, so please

24   don't record this.  I don't expect anybody to say anything

25   that's of the sort that you would want to have recorded anyway,

1   but please comply with the Judicial Conference policy, and, of

2   course, only lawyers get to speak in the hearing.

3        Mr. Barnes?

4        MR. BARNES:  Thank you, Your Honor.

5        I won't burden the Court with repetition of everything

6   that Mr. Winship said.  I agree with all of it.  I guess the

7   only addendum, or thought, I'd offer to the Court is I think

8   it's, given the complexity of the legal issues that the Court is

9   going to be tasked with deciding here, it's very important that

10  the Court enter a preliminary injunction schedule that gives

11  everyone, both the defendants as well as the Court itself, ample

12  time to seriously consider the issues.

13       THE COURT:  I'm going to ask each of you essentially

14  this:  If I took your suggestion not to enforce the statute for

15  August 1st, and framed it a little differently, it might be

16  called a temporary restraining order, or even a preliminary

17  injunction, that would be in effect just until August the 1st.

18       You, of course, don't want to have any ruling made

19  that sounds like you've lost anything on the merits, or that the

20  plaintiff has gained something, but, Mr. Winship, is there any

21  substantive difference between what you're asking me to do and a

22  temporary restraining order extended by consent to August 1st?

23       MR. WINSHIP:  Well, Your Honor, I think that's a fair

24  question.  I mean, the substance of it would -- the effect of it

25  would not really be different from one to the other.  I would

 1   note that under Rule 65 there is a provision for a temporary

 2   restraining order to be entered.  Obviously, if it's ex parte

 3   there have to be the kinds of findings and conclusions that

 4   would justify it, but that otherwise it doesn't have to be done

 5   that way.

 6        I would simply say that to me the difference is

 7   whether or not this is being done because the Court is

 8   acknowledging that the defendants have represented to the Court

 9   that they are not going to enforce it, as compared to the Court

10   taking it upon itself to order the defendants not to, and that

11   is to me the substantive difference.

12        I don't think it's necessary, Your Honor, for you to

13   enter an order that tells us we can't.  I think it would be more

14   appropriate for you, in your scheduling order, just to indicate

15   that in light of the representations made by the defendants in

16   this litigation, who are organs of the government of the state

17   of Florida, that that would be sufficient grounds for entering

18   the kind of scheduling provision that we are looking to have you

19   do.

20        I have to say while --

21        THE COURT:  What keeps -- here is the -- and I will

22   hear from the other side, but just anticipating it -- what keeps

23   the state attorney from starting a prosecution based on a social

24   media platform's decision to post a statement that somebody's

25   post is not true?  So the hypothetical is on July 15th some

1   person, maybe a person who is qualified to run for office

2   somewhere, makes a post, and it's just not true, and the social

3   media platform proposes to put a header on it that says:  This

4   is not true, and that happens on July 15th; what keeps a state

5   attorney from bringing a case?

6           MR. WINSHIP:  Well, it's an interesting question, Your

7   Honor, and I think it kind of goes to the heart as well of what

8   a scope of an injunction would be, or a temporary restraining

9   order, with regard to a party that isn't here; in this case, a

10  state attorney who is independently elected.  And I would simply

11  note that I would find it very difficult to believe that in

12  light of the fact that this litigation is pending that the

13  attorney general, and the election commissioners, are parties to

14  this, that the head of DMS is a party to this, that any state

15  attorney would actually undertake to do that, in light of the

16  fact that we will have made a representation to Your Honor that

17  we will not be enforcing the provisions.

18          But, I think by the same token if there were an

19  injunction I don't think it would reach the state attorneys

20  because they are not parties to this case.

21          I respect the question that you're asking and the

22  distinction that you're drawing, but I just want to indicate to

23  you that I think it's so unlikely that I don't think it ought to

24  be in any way a determinative possibility that would interfere

25  in our being able to get our -- the extension that we want and

1   the dates that we want hammered out here.

2          And I would just note that when organs of government

3   have made these kinds of representations that they will stand

4   down, the courts have historically given that a lot of deference

5   and I think properly so, even where you have the situation of

6   mooting a case.

7          THE COURT:  Absolutely.  I understand.  It does seem

8   to me that there is potentially a difference -- and, of course,

9   the action doesn't have to be initiated before August the 1st.

10  I mean, if this happens on July 15th, and then either the user

11  who made the false post, or more dramatically a state attorney

12  decides in November to bring a prosecution or bring a civil

13  action.  It seems to me a potential makes a difference that the

14  social media platform can say:  When I did this, on July the

15  15th, I had an injunction saying that this was -- that this

16  couldn't be enforced.  As opposed to saying to the private user:

17  Oh, but the state of Florida had said they weren't going to

18  enforce it.  You see?

19          Fair enough.  We've explored that.  I get it.  Let me

20  hear what the -- and, let me say, before I turn to the

21  plaintiffs, you are absolutely right; it's an important issue.

22  There is some substance to this.  It's got what I used to call

23  "good lawyers issues".  There is some issues of substance here

24  that's going to take some analysis.  I assume that both sides

25  have spent much more time than I have looking at these issues.

1    I assume the state of Florida studied this stuff in detail.

2    Somebody must have before you adopted the statute.  The

3    plaintiffs not as recently, but I suspect the plaintiffs had

4    people involved in this at the time it was before the

5    legislation.  So both sides may have spent a lot more time

6    looking at these issues than I have.  So, Mr. Winship is right.

7    I'd like to have time, and amicus briefs don't always help, but

8    if you've got -- if each side could put together a group of the

9    15 best law professors in the country that are on your side of

10   the issue and submit an amicus brief that might be helpful.  It

11   might not, but it might be.

12            I don't want to slow -- I don't want to get in the way

13   of any of that.  On the other hand, we don't have unlimited time

14   and if we need to make a decision by the end of June I can make

15   a decision by the end of June.

16            Let me hear what the plaintiffs have to say.  Start by

17   telling me who is going to address the issue and then what you

18   have to say.

19            MR. OPRISON:  Thank you, Your Honor.  This is Chris

20   Oprison from DLA Piper representing Netchoice, one of the

21   plaintiffs in this action.

22            Your Honor, if I may, I'd like to start with the last

23   point that you made and the last point that Mr. Winship made.

24            This has been a statute and the implications of the

25   provisions in the statute have been under review for quite some

1   time by the state.  This is no surprise that, in fact, this was

2   well-anticipated there would be a legal challenge by the state

3   well in advance of the passage by the legislature and the

4   signing into law by the governor.

5           The other issue of course is that Mr. Winship is much

6   more confident in the actions of state attorneys who are

7   independently elected to not proceed with action on their own

8   when they are elected by their own constituents than we are,

9   frankly.  We think there is a real risk.

10          You had asked earlier if there is any substantive

11  difference between what the defendants' counsel are asking for,

12  or proposing, which is a 30-day stay effectively, and a TRO or

13  even an injunction.  We think there is a very big difference

14  and, Your Honor, I will point this fact out as one reason for

15  that.

16          What they proposed was simply a 30-day stay of

17  execution.  There is no indication that from counsel, either

18  Mr. Winship or Mr. Barnes, that on August 2nd that the AG, or

19  somebody else, would not then go back and attempt to enforce 30

20  days of violations from July 1 to July 31st.  They simply won't

21  enforce it, or won't bring an enforcement action, during the

22  month of July.  That's one differentiation -- one difference.

23          The other issue here, and we explained this during our

24  call -- and I appreciated counsel getting on the call today.  I

25  know Mr. Barnes is new to this matter, just having come on

1    yesterday.  Mr. Winship, we've been corresponding over the past

2    several weeks -- more us to him than him to us, but I appreciate

3    he's a very busy man -- but we appreciated the call today.  And

4    we explained to them the big reason here is this is not a

5    statute that calls for an on-off switch.  You don't just become

6    compliant overnight.

7              We are talking about entities that have to make global

8    systemic changes in the way they organize their content on their

9    platforms and they have to do that before July 1st.  And if they

10   don't do it before July 1st -- and that's a deadline, not our

11   deadline, that's the state's deadline in the statute -- if they

12   don't do it before July 1st, we are in dangerous waters of

13   having accumulated and aggregated penalties throughout the month

14   of July.

15             So while we were receptive to discussions about

16   putting off the scheduling conference today, that was something

17   that we had contacted Mr. Winship about a week ago when we first

18   got the order and wanted to have a conversation.  But as of this

19   morning we were on the eve of a -- literally on the eve of

20   having this scheduling hearing today and we thought we needed to

21   proceed.  Any delay will harm our clients and only help the

22   state.

23             Your Honor, we need a decision by the end of the

24   month.  And I understand, Your Honor, the Court needs time to

25   review, and understand, and digest the record.  These are

1    complex issues.  There is no question about it.

2              The rules provide, and we had asked for an expedited

3    hearing and expedited consideration of this, but what the rules

4    provide is a default 14 days to respond to a motion.  Baked into

5    that are all the due process considerations, all the fundamental

6    fairness considerations that would typically go along with the

7    more mundane, as well as the more complex type of issues that

8    come up.

9              We believe, and we proposed this to counsel this

10   morning on our call, that their response would be due, or should

11   be due, to the preliminary injunction motion within the 14 days.

12   We think that's fair.  And that allows them to have over the

13   last week to digest what our issues are in the motion, have

14   another week to prepare a response.  If that moves by a day or

15   two, I don't think we would be all that opposed to it.

16             We did raise the question -- it was certainly not

17   prefaced on this notion that we have to hastily get through a

18   brief schedule to get a reply brief.  We made very clear that in

19   all the years I have been practicing, and my colleagues have

20   been practicing, this type of case would probably invite, and be

21   open to, a reply brief if only to try to refine and focus on

22   issues that would be helpful for the Court.  And we mentioned

23   that that wouldn't impact them.  It would impact us.  We would

24   take the hit on what a briefing schedule would be if the Court

25   gave us leave to file a reply brief before any hearing.  We had

1    proposed July 25th, or before, if that suited the Court's

2    schedule to have a hearing --

3              THE COURT:  You mean June 25th.

4              MR. OPRISON:  I'm sorry.  Yes, sir.  You are right.

5    June 25th, Friday, or before, if the Court's schedule permits to

6    have our hearing.  That allows another week for them to comply

7    with the rules to file the response.  It gives us a couple of

8    days if Your Honor grants us leave to file a reply brief, and

9    then come in and have an argument.

10             We agree with them that it's probably not a -- it's

11   not necessary to call live witnesses.  I think a two -- two or

12   three hour hearing would suffice on the legal arguments.  It's a

13   highly legally based -- legal-based, constitutional-based case.

14   It's not a fact specific case, despite the fact that we have put

15   declarations to put meat on the bones of what the impact of this

16   would be.  It really fundamentally is a constitutional

17   challenge.

18             So that, I think, and we talked about whether or not

19   there should be live testimony or the opportunity to engage in

20   discovery.  We don't believe that's necessary.  We think it

21   would unduly delay this case from being decided and the

22   injunction action being decided.

23             So, Your Honor, we proposed June 25th, which would

24   hopefully give the Court sufficient time before July 1st, which

25   really is the drop-dead date.  I mean, there really -- at that

1    point, our clients become exposed 100 percent to enforcement

2    actions, if not on July 2nd then on August 2nd.

3           And the Hobson's choice here, of course, is that we

4    either have to take our chances and roll the dice, which is what

5    the state appears to want us to do, or we have to capitulate to

6    a fundamental constitutional violation, which we cannot do.  We

7    cannot that.

8           So July 1 is the date, Your Honor, if we can get the

9    brief done in time and get the hearing done, and any follow up

10   that the Court would need, to hopefully be able to have

11   resolution on this.

12          And there is a fundamental difference between, as Your

13   Honor pointed out, having an order that outlines the likelihood

14   of success factors, that outlines and discusses the irreparable

15   harm and the public interest factors.  There is a very big

16   difference.  A fundamental difference between having that and a

17   handshake agreement where we just put off the inevitable to the

18   end of July, or early August, and then still face the same

19   exposure.  But at that point our clients are potentially exposed

20   to aggregated penalties that might have accrued throughout July.

21          So I won't belabor it anymore, Your Honor.  I am happy

22   to answer any questions.  But these were the points we had

23   raised and we communicated over the last week, and even today on

24   our call, with counsel.

25          We believe, again, that this is a case that, on the

1    preliminary injunction motion, really needs to be resolved by

2    the end of this month.

3              Thank you, sir.

4              THE COURT:  And you're willing to go forward on the

5    papers with no live testimony I take it?

6              MR. OPRISON:  Yes, sir.  Well, Your Honor, I would

7    say -- if I may -- without live testimony on the papers as well

8    as any argument that Your Honor would deem necessary at the

9    hearing.  Yes, sir.

10             THE COURT:  Oh, sure.  And, heads up to both sides, I

11   may have questions about the practicalities of how this works.

12   The lawyers will know the answer to that.  I think they are

13   going to be mostly uncontested.  So questions like:  Can you

14   really do this?  Can you have one platform that -- or one set of

15   materials that can be viewed in Florida that there is stuff in

16   Georgia but it doesn't get shown in Florida; how does that work?

17   And the papers may go into all of that.

18             I can tell you I have read the preliminary injunction

19   motion so I could be prepared for the hearing.  I haven't read

20   all of the affidavits.  And we are a ways off from that, so I

21   don't know whether they address any of that.  And, frankly,

22   that's not going to be critical to the issues.  It's just going

23   to be helpful.  I do try to understand how things work on the

24   ground, so I'm sure I will have some questions.  We won't need

25   witnesses to address those.  I think the lawyers can help me

1   through it.

2           Mr. Winship, before I call on you to respond, same

3   thing goes for the reply brief.  I don't need you to say the

4   same thing twice.  I have heard what you have said.

5           I'm going to build into a schedule an opportunity to

6   file a reply brief.  And, Mr. Oprison, you are probably right,

7   you probably have gotten reply briefs on matters like this all

8   along.  I can tell you my experience has been that perhaps

9   three percent of all of the reply briefs add something, and the

10  other 97 percent just don't.  So, try to be in the three

11  percent, or you don't have to file a reply brief at all.

12          Mr. Winship, anything further you want to tell me?

13          MR. WINSHIP:  Yes, Your Honor.

14          The characterization of what we have offered as a

15  handshake agreement is completely unfounded.

16          This isn't a handshake agreement.  This isn't some

17  side agreement that we're offering --

18          THE COURT:  Oh, I got it.  Look, I understand it's a

19  representation of the state of Florida and I get that due

20  respect.  I understand.  And so I have got it.

21          MR. WINSHIP:  And, Your Honor, you know, plaintiffs'

22  counsel wants to kind of -- having offered all of these

23  declarations -- now wants to kind of retreat and say, Well, we

24  put them in there but they are not really that important.  Well,

25  they are.  We have significant issues of harm that they allege

1    throughout their motion.  And we need to have a fair opportunity

2    in order to show Your Honor that we are on the side of free

3    speech.  They're not.  I mean, this is a very --

4              THE COURT:  And, Mr. Winship -- Mr. Winship, let me

5    tell you, when we have the hearing, I am going to ask you this

6    question.  I don't want you to try to respond to it today, but

7    here is going to be my question, and you can address it in your

8    papers if you want, otherwise I am going to ask you at the

9    hearing.

10             I'm going to say:  List for me every case, every

11   decision by any court anywhere, that has said a private entity,

12   not operating under color of law, must comply with the

13   obligations that the First Amendment places on a public actor.

14             So, I understand you say you are on the side of the

15   First Amendment.  That's kind of what that goes to.  So that's

16   going to be my question.  And we will see whether that list has

17   a lot of cases, or none, or somewhere in between.

18             I interrupted you.  Go ahead?

19             MR. WINSHIP:  That's fine, Your Honor.  It just kind

20   of underscores the tasks that we have to do in order to help

21   Your Honor sort through all of these issues and come up with the

22   right answer.

23             We think that we facilitate that process by getting

24   this extra time.  And I will endeavor to answer that question

25   when you put it to me on the basis of our having done a really

1    full preparation so that we can assist the Court by giving you

2    the right answer.

3            I also would note that the claims about prejudice

4    are -- I think they just ring untrue here that you heard from

5    plaintiff's counsel.  Whatever it is that they are required to

6    do under the Act, as of July 1, whether they wanted to say:  Oh,

7    we're subject to a TRO that the Court has put into effect

8    without making any findings, or whether the Court accepted our

9    formal representation that we will be standing down, either way

10   they can avail themselves of the benefit of that in responding

11   to whoever is going to be trying to assail them for having done

12   whatever it is they did, or for having failed to do whatever it

13   was they were required to do.  But neither an injunction against

14   us -- that is against the defendants here -- nor -- that is a

15   TRO against us -- nor a representation by us that we will be

16   standing down.  In either event, those may be persuasive but

17   neither of them in effect immunizes the plaintiffs in any event.

18           They raised an issue with you, Your Honor, that really

19   has no moment insofar as our deliberations for purposes of this

20   hearing are concerned.  We are saying that we're the ones they

21   have sued.  We're the ones they've sued.  We're the ones who are

22   tasked with defending the constitutionality of this Act, which

23   we intend to do.

24           And we are saying that within the scope of this

25   lawsuit, which is all we can really speak to, within the scope

1   of this lawsuit we are representing to them that there is no

2   effective difference between July 1 and August 1.

3         THE COURT:  All right.  Mr. Barnes, anything further

4   you want to add?

5         MR. BARNES:  Yes, Your Honor, if I may.  Just a couple

6   of things.

7         One, let me, at least on behalf of my client, and then

8   maybe Mr. Winship will see if he will do the same on behalf of

9   his, let me make the representation that my friend on the other

10  side suggested that we had not made, to date, which is that if

11  there was conduct that violated this law that occurred during

12  the month of July that, you know, we might -- subsequent to the

13  August 1 enforcement date we might reach back and try to punish

14  that conduct.  My client will not do that.  In other words --

15  and this is, frankly, how I understood sort of the

16  non-enforcement vow that we had made previously, that any

17  conduct -- conduct that occurred during July, at least insofar

18  as my client is concerned, is not conduct that, you know, would

19  be the subject of any kind of enforcement of the law.

20        THE COURT:  You're not going to bar anybody based on

21  what they did in July?

22        MR. BARNES:  Exactly right.  Exactly right, Your

23  Honor.

24        And I expect the same will go for all of the

25  defendants, you know, and that I think really does remove any

1   prejudice as to the plaintiffs from the additional time that

2   we're proposing.

3           You know, they're making arguments about what someone

4   who is not party to this case might do.  And these just sound

5   like arguments for maybe why they didn't sue all of the people

6   they should have sued.  We are offering them 100 percent of what

7   they could get through a preliminary injunction issued before

8   July 1.  And so I just don't see, you know, how there could be

9   prejudice to the other side, at least with respect to, you know,

10  what the Court could conceivably give them.

11          And then the final thought here, Your Honor, is there

12  are significant factual representations and arguments that show

13  up in the preliminary injunction papers.  And, you know, if the

14  Court enters the expedited schedule along the lines that the

15  plaintiffs are proposing it will in effect be denying us a

16  meaningful opportunity to contest those acts.  That's just the

17  reality of the schedule we are looking at.

18          I just urge the Court, given the gravity of this case,

19  given our willingness to stand down on enforcement, I'd urge the

20  Court not to put us in that position.

21          MR. WINSHIP:  Your Honor --

22          THE COURT:  Hold on just a minute.  Let me talk to

23  Mr. Barnes.  I hear what you're saying, and it would concern me

24  more if I thought that you wouldn't be able to provide some

25  factual information.

1          Both lawyers involved -- Mr. Barnes, you probably had

2    the least reason to be involved during the legislative process,

3    but maybe it's an unfair question; were there hearings on this

4    statute?

5          MR. BARNES:  You know, Mr. Winship may know the answer

6    to that.  I think the answer is no, but I may be mistaken.  I

7    confess that I don't know for certain.

8          THE COURT:  Mr. Winship, were there hearings on this

9    legislation?

10         MR. WINSHIP:  I have to confess, I'm at a

11   disadvantage, I don't know.  There was a bill analysis out

12   there.  There is legislative history on this.  But I can't

13   answer that specific question so I'll just have to leave it at

14   that.

15         THE COURT:  Well, so here's the question:  The state

16   of Florida adopted this statute and now I guess I'm being told

17   that if I only give you maybe 18 days to respond to the

18   preliminary injunction motion you won't be able to put together

19   the facts that you need to support the legislation, and I'm kind

20   of scratching my head and saying, Why not?  Didn't you put the

21   facts together before you adopted the statute?

22         MR. WINSHIP:  Your Honor, this is Blaine Winship.  And

23   I just wanted to say that there really -- the processes are kind

24   of different.  When the legislature does what it does, it has a

25   goal in mind and it looks to satisfy itself that it has the

1    authority to do what it wants to do.  But that's distinct from

2    the task that I have, and the other lawyers have, when we get a

3    challenge like this in order to fully brief up and litigate the

4    legislation.  They are really not exactly two sides of the same

5    coin, if you will, Your Honor.  This is --

6              THE COURT:  That's fair enough.  I understand that.

7              But, I mean, if you really need the factual basis for

8    doing this can't you go back to the people at the legislature

9    and say, Give me the factual material that you relied on when

10   you put this together.

11             Look, we don't need to beat this to death.  Here is --

12             MR. BARNES:  Your Honor, this is Brian Barnes again.

13   Just a couple of thoughts here.

14             One, in terms of the scrutiny that that law is

15   subjected to under the First Amendment, certainly an important

16   place for the Court to look will be the legislative record, but

17   I don't understand the judicial inquiry to be limited to the

18   legislative record --

19             THE COURT:  You're absolutely right.  You're correct.

20   I understand that.

21             MR. BARNES:  And then the other point I wanted to

22   make, just very quickly, is, you know, when I refer to potential

23   factual disputes here I am not just talking about kind of the

24   merits of the First Amendment challenge, but also questions

25   around standing and irreparable harm.

1          We heard the counsel for the plaintiffs say that this

2     is going to cause just tremendous disruption among their

3     members.  And, that's a claim that I think we're entitled to

4     probe, and question, whether that's actually true.  And I think,

5     at least based on the preliminary injunction papers, we probably

6     have a fundamental disagreement about exactly what this law does

7     or doesn't require regulated entities to do.  But that's another

8     kind of field of potential inquiry, factual inquiry, that,

9     frankly, we just won't be able to pursue in the preliminary

10    injunction proceedings if the Court goes forward with the

11    schedule the plaintiffs are proposing.

12          MR. OPRISON:  Your Honor, this is Chris Oprison --

13          THE COURT:  All right.  No.  I've heard enough.  Thank

14    you.  We are at the point of saying the same things over.

15          Here is the schedule:  The defense is to respond to

16    the preliminary injunction motion by June the 21st.  The hearing

17    will be on June the 28th.  I am going to -- let's do the hearing

18    at 1:30.

19          MR. WINSHIP:  Your Honor, this is Blaine Winship.  I

20    can try to make arrangements, otherwise I have a deposition set

21    for June 28th.  I didn't know if Your Honor might be able to

22    move that to maybe the 29th.  I don't know what day of the week

23    the 29th would be.

24          THE COURT:  The 28th is Monday.  The 29th is Tuesday.

25          There are depositions that rank everywhere from

1   trivial to -- or not quite trivial to pretty darn important.

2   It's hard to imagine one comes anywhere close to the preliminary

3   injunction hearing, but how important is this one?  Is it

4   something I really need to accommodate or --

5             MR. WINSHIP:  Well, in all candor, it's something I

6   can work around, Your Honor.  I just didn't know how wedded to

7   the 28th you were in terms of your own calendar.  I don't mean

8   to cause you a major inconvenience either.

9             THE COURT:  Yeah.  Here's the thing.  You folks --

10  like I said, you folks have had some months.  I'm going to have

11  a hearing at 1:30 on the 28th and get a ruling out by the end of

12  the day on the 30th, so I'm not giving myself a whole lot of

13  time.  And if I put it off until the 29th, I am giving myself

14  even less time.  And, frankly, what I would like to do in these

15  cases, but we have a compressed schedule so I am not doing it

16  here, but what I really like to do in these cases is enter a

17  ruling quickly enough that the losing side can take it to the

18  Eleventh Circuit.  Now that's going to be hard.  And under the

19  circumstances, I am just not going to back it up to the point

20  that somebody can take it there.

21            But, as all of you know, these are the kinds of cases

22  that one side or the other often appeals.  And I try to get the

23  ruling right, but I also try to get the ruling done in a way

24  that preserves both sides' appellate rights.

25            Then, Mr. Oprison, you can file a reply brief.  You

heard my analysis.  When I was a lawyer I thought a 100 precent of the reply memos and briefs I wrote were very important.  As a judge I can put the number at about three percent.  So if you have got something in the three percent, file it.  I am going to read everything.  And I am going to be as well-prepared and I'm looking for all of the help I can get.  But please don't repeat what you have already said because I will have lots to do without reading the same thing over.

I promise never to rule based on who writes the longest briefs, or who says the same thing the most times.

I am inclined to have this hearing in person.  I have conducted lots of proceedings, including some major trials, over video.  And we can do this that way.  We have got people traveling in the case.  And I am certainly willing to do it by video and I don't think there is any chance that the result will be any different if we do it by video than if we do it in person.

The defense lawyers are here, but the plaintiffs lawyers are traveling.

Mr. Oprison, tell me your -- I know the answer sometimes is you want to be in person because you think you got a better chance to win.  I assure you that's not the case.  But, do you want to do it in person or do you want to do it over the video?

MR. OPRISON:  Your Honor, we do have co-counsel that

1   would travel in, if Your Honor decided to have an in-person

2   hearing.  We would favor a zoom hearing.  We've gotten quite

3   comfortable over the last 18 months, frankly, on perfecting the

4   art, I think, of doing things remotely when I think we had some

5   shyness to doing it before then, but whatever Your Honor

6   proposes we will obviously do.

7           THE COURT:  Well, I think that's good.  I like to

8   think that we haven't gotten anybody sick with in person

9   proceedings, but I am pretty darn sure we hadn't gotten anybody

10  sick with remote proceedings.

11          Mr. Winship, is that just as good for you?

12          MR. WINSHIP:  Either way is fine for me, Your Honor.

13  It's a walk for me to get to where you are.

14          THE COURT:  I understand.

15          Mr. Barnes, how about you?  You're okay with a video

16  hearing?

17          MR. BARNES:  I am completely fine with it, Your Honor.

18          THE COURT:  All right.  Good.  Then we will do it by

19  video at 1:30 on the 28th.

20          Mr. Oprison, if you're going to do a reply memo do it

21  by the 24th.

22          MR. OPRISON:  Yes, sir.

23          THE COURT:  And this time comply with the word limit

24  in the rule, which is, what, 3200 words, or something like that.

25  Hopefully that's enough for the reply memo.

1          So, June 21st for the defense memo and any

2     declarations.

3          The 24th for any reply memo or brief.

4          The 28th for the hearing.

5          Mr. Winship, you had brought up earlier the Rule 26

6     schedule.  My just standard order in every civil case that comes

7     in I usually set the deadline for the 26(f) conference I think

8     35 days after the first -- after an attorney for both sides

9     appears.  There may not even be a defense appearance on the

10    record yet, but you, of course, moved things around and been

11    good enough to appear here today.  And so even the ordinary

12    standard would put this back in the middle of July somewhere,

13    and that's probably good enough, I think.  So what I think I

14    will do is enter my standard order which will just make you meet

15    by mid July, and set presumptive deadlines, and you can go from

16    there.

17         One thing I do say in that order is I can have trials

18    sooner, so talk to each other.  The object is just to get the

19    whole thing presented as efficiently as possible.  By the time

20    you meet in mid July you will see what has happened, and you

21    will have a good feel at that point for whether you really want

22    discovery and more proceedings, or whether it really is just a

23    legal issue, and you're where you're going to be with me and

24    it's time for somebody to appeal and get on down the road.  So

25    you can do all of that at that point.  I think that means if we

```
 1    don't do anything else with the schedule today --

 2              MR. WINSHIP:  Your Honor?

 3              THE COURT:  -- if you think you need something, tell

 4    me.

 5              Yes, Mr. Winship?

 6              MR. WINSHIP:  Yes, Your Honor.  Thank you, sir.

 7              I had broached also the topic of when we have to file

 8    answers or responses to the complaint.  And the plaintiffs had

 9    indicated they didn't have an objection to our doing that after

10    Your Honor has entered your ruling on the preliminary

11    injunction.  So, I would ask that mid July also be the date set

12    down for us to -- for all of the defendants to be filing

13    their -- whether it's an answer or a motion to dismiss or

14    what -- that we be responding to the complaint at that time in

15    mid July.

16              THE COURT:  July 15th okay?

17              MR. WINSHIP:  That would be fine, Your Honor.  Thank

18    you.

19              THE COURT:  All right.  Mr. Oprison, that work for

20    you?

21              MR. OPRISON:  Yes, sir.  No objection to that.

22              THE COURT:  All right.  And I will set the 26(f)

23    conference a few days after that so that you get the answer and

24    then you get together and talk it through.

25              All right.  Anything else we can accomplish today?
```

1          Mr. Oprison?

2          MR. OPRISON:  No, sir.  Thank you, Your Honor.

3          THE COURT:  Mr. Winship?

4          MR. WINSHIP:  Nothing, Your Honor.  Thank you.

5          THE COURT:  Mr. Barnes?

6          MR. BARNES:  Nothing further, Your Honor.

7          THE COURT:  Thank you all.  We are adjourned.

8       (Proceedings concluded at 2:52 on Thursday, June 10, 2021.)

9                    * * * * * * * *

10          I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled matter.
11  Any redaction of personal data identifiers pursuant to the
   Judicial Conference Policy on Privacy are noted within the
12  transcript.

13

14  /s/ Lisa C. Snyder                    6/11/2021

15  Lisa C. Snyder, RPR, CRR              Date
   Official U.S Court Reporter
16

17

18

19

20

21

22

23

24

25