UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NETCHOICE, a 501(c)(6) District of Columbia organization, and COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>ASHLEY BROOKE MOODY, in her official capacity as Attorney General of the State of Florida; *et al*.,<br><br>      Defendants.<br>_____/ | **Civil Action No. 4:21-cv-00220-RH-MAF** |

**CHAMBER OF PROGRESS, CONNECTED COMMERCE COUNCIL, CTA®, ENGINE ADVOCACY, INFORMATION TECHNOLOGY & INNOVATION FOUNDATION, NATIONAL BLACK JUSTICE COALITION, PROGRESSIVE POLICY INSTITUTE, TECHNET, AND WASHINGTON CENTER FOR TECHNOLOGY POLICY INCLUSION'S <u>MOTION FOR LEAVE TO FILE BRIEF AS AMICI CURIAE</u>**

Chamber of Progress, Connected Commerce Council, CTA®, Engine Advocacy, Information Technology & Innovation Foundation, Washington Center for Technology Policy Inclusion, TechNet, and the National Black Justice Coalition (collectively, "Amici") respectfully submit this motion for leave to appear as *amici curiae* and file the brief attached as Exhibit A in support of

1

Plaintiffs' Motion for Preliminary Injunction. In support of their motion, Amici state as follows:[1]

## A. INTEREST OF AMICI

Chamber of Progress is a center-left tech industry coalition devoted to a progressive society, economy, workforce, and consumer climate. It is an industry organization that backs public policies that will build a fairer, more inclusive country in which all people benefit from technological leaps. It seeks to protect Internet freedom and free speech, promote innovation and economic growth, and empower customers and users. Its work is supported by corporate partners, many of whom will be subject to the law at issue, though its partners do not sit on its board of directors and do not have a vote on or veto over its positions.[2]

The Connected Commerce Council (3C) is a nonprofit membership organization with a single goal: to promote small businesses' access to essential digital technologies and tools. 3C provides small businesses with access to the market's most effective digital tools available, provides coaching to optimize

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person other than amici, its members, or its counsel contributed money intended to fund the preparation of submission of this brief.

[2] Chamber of Progress' Partners are available at: https://progresschamber.org/.

growth and efficiency, and works to cultivate a policy environment that considers and respects the interests of today's small businesses.

As North America's largest technology trade association, CTA® is the tech sector. Our members are the world's leading innovators – from startups to global brands – helping support more than 18 million American jobs. CTA owns and produces CES® – the most influential tech event in the world.[3]

Engine Advocacy ("Engine") is a nonprofit technology policy, research, and advocacy organization that bridges the gap between policymakers and startups. Engine works with government representatives and a community of high-technology, growth-oriented startups across the nation to support the development of technology entrepreneurship. Engine conducts research, organizes events, and spearheads campaigns to educate elected officials, the entrepreneur community, and the public on issues vital to fostering technological innovation.

Founded in 2006, Information Technology & Innovation Foundation (ITIF) is an independent 501(c)(3) nonprofit, nonpartisan research, and educational institute—a think tank. Its mission is to formulate, evaluate, and promote policy solutions that accelerate innovation and boost productivity to spur growth,

---

[3] A complete list of the Consumer Technology Association's members is available at http://cta.tech/Membership/Membership-Directory.aspx.

opportunity, and progress. ITIF's goal is to provide policymakers around the world with high-quality information, analysis, and recommendations they can trust.

Since 2003, the National Black Justice Coalition (NBJC) has been America's leading national civil rights organization dedicated to the empowerment of Black lesbian, gay, bisexual, transgender, queer+, and same gender loving (LGBTQ+/SGL) people, including people living with HIV/AIDS through coalition building, federal policy change, research, and education. Our mission is to end racism, homophobia, and LGBTQ+/SGL bias and stigma. NBJC supports Black individuals, families, and communities in strengthening the bonds and bridging the gaps between the movements for racial justice and LGBTQ+/SGL equity.

The Progressive Policy Institute (PPI) is a catalyst for policy innovation and political reform based in Washington, D.C. Its mission is to create radically pragmatic ideas for moving America beyond ideological and partisan deadlock.

TechNet is the national, bipartisan network of technology CEOs and senior executives that promotes the growth of the innovation economy by advocating a targeted policy agenda at the federal and 50-state level. TechNet's diverse membership includes dynamic American businesses ranging from startups to the most iconic companies on the planet and represents over four million employees and countless customers in the fields of information technology, e-commerce, the

sharing, and gig economies, advanced energy, cybersecurity, venture capital, and finance.

The Washington Center for Technology Policy Inclusion (WashingTECH), a nonpartisan, nonprofit 501(c)(3) corporation, is an advocacy platform committed to civil rights, empowerment, justice, and inclusion in technology public policy making. As America's "inclusive voice of tech policy," WashingTECH's mission is to convene diverse technology public policy professionals to defend America's rich diversity with programs that promote an inclusive narrative about technology's impact on society.

Amici have a substantial interest in this case because they are dedicated to ensuring that consumers can enjoy a healthy online environment where they can work, play, learn, shop, connect, and express themselves without harassment, disinformation, and incendiary content. Online platforms have adopted policies and enforcement procedures against these types of behaviors because they understand they are necessary to ensure that all online users have the opportunity and comfort to express themselves online. For that reason, Amici have a substantial legal interest in the laws that govern these types of content moderation, including laws that have the potential to interfere, restrain, or impose liability for activities platforms engage in to protect consumers, such as Florida's S.B. 7072, 2021 Leg. (Fla. 2021) (the "Act").

B.   ARGUMENT

The Court has broad discretion to permit a non-party to participate in an action as *amicus curiae*. *See, e.g., Fla. by & through McCollum v. United States Dep't of Health & Hum. Servs.*, No. 3:10-CV-91-RV/EMT, 2010 WL 11570635, at *1 (N.D. Fla. June 14, 2010) ("district courts have broad discretion and the inherent authority to allow amici to participate in appropriate cases") (allowing *amici* to file briefs at the summary judgment stage).  Indeed, "[d]istrict courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Sonoma Falls Developers, LLC v. Nev. Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003) (quoting *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003) (citation omitted)).  No special qualifications are required; an individual seeking to appear as *amicus* must merely make a showing that his participation is useful to or otherwise desirable to the court. *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991).

Amici will present unique perspectives as coalitions that represent the interests of providers that will likely be subject to the Act and consumers whose online experiences will be materially worsened by the Act. Amici's perspectives are particularly important at this juncture because the public interest is a major

factor in the consideration of Plaintiffs' Motion for Preliminary Injunction. *See Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005). ("Courts have found the participation of an amicus especially proper . . . where an issue of general public interest is at stake.") (citation omitted). This is because the primary role of an *amicus* is "to assist the Court in reaching the right decision in a case affected with the interest of the general public." *Russell v. Bd. of Plumbing Exam'rs of the Cty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999), *aff'd*, 1 F. App'x 38 (2d Cir. 2001). In *Liberty Resources*, a case brought by a disability rights advocacy group against a public housing authority, the court granted *amicus curiae* status to another advocacy group that represented residents of public housing because the group's participation "will serve to keep the Court apprised of the interests of non-disabled Section 8 voucher recipients who may be affected by this case." 395 F. Supp. 2d at 210. Similarly, Amici here will represent their own interests as industry coalitions and consumers who will be profoundly affected by the Act's restrictions on content moderation and who are not directly represented in this case. Accordingly, this Court should allow Amici to appear as *amici curiae* and present argument in support of Plaintiffs in connection with their Motion for Preliminary Injunction.

## C. CONCLUSION

For these reasons, Amici respectfully request that this Court enter an order granting Amici leave to file the brief attached hereto as Exhibit A in support of Plaintiffs.

### RULE 7.1(C) CERTIFICATION

Pursuant to Local Rule 7.1(b), undersigned counsel certifies that counsel for all parties were contacted via email on June 10, 2021 prior to 1 p.m. Eastern Time concerning the issue presented by Amici's Motion. Counsel for Plaintiffs assented to Amici's motion. However, counsel for Defendants did not respond to counsel's attempt to reach them.

### RULE 7.1(F) CERTIFICATION

This motion contains a total of 813 words and the memorandum of law contains a total of 567 words.

Dated: June 11, 2021                    Respectfully submitted,

 /s/ Nury Siekkinen
Nury Siekkinen
Florida Bar No. 1015937
**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile:  (202) 706-5298
Email: nury@zwillgen.com

*Attorney for Amici Curiae Chamber of Progress, Connected Commerce Council,*

*CTA®, Engine Advocacy, Information Technology & Innovation Foundation, National Black Justice Coalition, Progressive Policy Institute, TechNet, Washington Center for Technology Policy Inclusion*

9