# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION


NETCHOICE LLC, et al.

     VS                       USDC NO. 4:21-cv-220-RH-MAF
                                USCA NO. _____

ASHLEY BROOKE MOODY, et al.

## TRANSMITTAL OF NOTICE OF APPEAL

       The following documents are hereby transmitted to the Clerk, U. S. Court of Appeals. The Certified copy of the appeal notice, docket entries, judgment/opinion/order appealed from are enclosed.

First Appeal Notice.
The appellate docket fee paid.  Date paid: 7/12/2021
Judge/Magistrate Judge appealed from: Robert L. Hinkle
Court Reporter(s): Lisa Snyder, Judy Gagnon
Other:

Please acknowledge receipt on the enclosed copy of this transmittal to: TALLAHASSEE DIVISION

                          JESSICA J. LYUBLANOVITS,
                          CLERK OF COURT

                          By: Chip Epperson
                          Deputy Clerk
                          111 North Adams Street
July 13, 2021                 Tallahassee, Florida 32301

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

NETCHOICE, LLC et al.,

        Plaintiffs,

v.

ASHLEY BROOKE MOODY et al.,

        Defendants.

CASE NO. 4:21-cv-00220-RH-MAF

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that all Defendants in the above-named action appeal to the United States Court of Appeals for the Eleventh Circuit from the Preliminary Injunction (Doc. 113), entered by this Court on June 30, 2021.

Dated: July 12, 2021

/s/Blaine H. Winship
Blaine H. Winship
Florida Bar No. 356913
Chief Assistant Attorney General
Complex Litigation Bureau

Daniel W. Bell
Florida Bar No. 1008587
Chief Deputy Solicitor General

Office of the Attorney General of
Florida
The Capitol, Suite PL-01

Respectfully submitted,

/s/Charles J. Cooper
Charles J. Cooper (248070DC)
David H. Thompson (450503DC)
Brian W. Barnes*
Joseph O. Masterman (Florida Bar
No. 1004179)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com
dthompson@cooperkirk.com
bbarnes@cooperkirk.com

1

Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Blaine.winship@myfloridalegal.com
Daniel.bell@myfloridalegal.com

*Attorneys for Defendants Ashley Moody, in her official capacity as Attorney General of Florida; Joni Alexis Poitier, in her official capacity as Commissioner of the Florida Elections Commission; Jason Todd Allen, in his official capacity as Commissioner of the Florida Elections Commission; John Martin Hayes, in his official capacity as Commissioner of the Florida Elections Commission; and Kymberlee Curry Smith, in her official capacity as Commissioner of the Florida Elections Commission*

jmasterman@cooperkirk.com
  *Admitted *pro hac vice*

James W. Uthmeier
Florida Bar No. 113156
General Counsel
Raymond F. Treadwell
Florida Bar No. 93834
Chief Deputy General Counsel
EXECUTIVE OFFICE OF GOVERNOR RON DESANTIS
Office of the General Counsel
The Capitol, PL-05
Tallahassee, FL 32399
(850) 717-9310
James.Uthmeier@eog.myflorida.com
Ray.Treadwell@eog.myflorida.com

*Attorneys for Defendant Patrick Gillespie, in his official capacity as Deputy Secretary of Business Operations of the Florida Department of Management Services*

Query     Reports     Utilities     Help     Log Out

APPEAL

# U.S. District Court
## Northern District of Florida (Tallahassee)
## CIVIL DOCKET FOR CASE #: 4:21-cv-00220-RH-MAF

NETCHOICE LLC et al v. MOODY et al
Assigned to: JUDGE ROBERT L HINKLE
Referred to: MAGISTRATE JUDGE MARTIN A FITZPATRICK
Cause: 42:1983 Civil Rights Act

Date Filed: 05/27/2021
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

### Plaintiff

**NETCHOICE LLC**
*doing business as*
NETCHOICE

represented by  **BEN FABENS-LASSEN**
DLA PIPER US LLP -
PHILADELPHIA PA
1650 MARKET STREET
SUITE 5000
PHILADELPHIA, PA 19103-7300
215-656-3325
Fax: 215-606-3352
Email: ben.fabens-lassen@dlapiper.com
*ATTORNEY TO BE NOTICED*

**BRIAN M WILLEN**
WILSON SONSINI GOODRICH ETC
- NEW YORK NY
1301 AVENUE OF THE AMERICAS
40TH FLR
NEW YORK, NY 10019-6022
212-999-5800
Email: bwillen@wsgr.com
*ATTORNEY TO BE NOTICED*

**DANIELLE T MORRISON**
DLA PIPER US LLP -
PHILADELPHIA PA
1650 MARKET STREET
SUITE 5000
PHILADELPHIA, PA 19103-7300
215-656-3300
Fax: 215-656-3301
Email:
danielle.morrison@us.dlapiper.com
*ATTORNEY TO BE NOTICED*

**ILANA HOPE EISENSTEIN**
DLA PIPER US LLP -
PHILADELPHIA PA
1650 MARKET STREET
SUITE 5000
PHILADELPHIA, PA 19103-7300
215-656-3351
Fax: 215-606-3351
Email: ilana.eisenstein@dlapiper.com
*ATTORNEY TO BE NOTICED*

**JONATHAN ALLEN GREEN**
DLA PIPER US LLP -
PHILADELPHIA PA
1650 MARKET STREET
SUITE 5000
PHILADELPHIA, PA 19103-7300
215-656-2454
Email: jonathan.green@dlapiper.com
*ATTORNEY TO BE NOTICED*

**JOSEPH TRUMON PHILLIPS**
DLA PIPER US LLP - TAMPA FL
100 N TAMPA ST STE 2200
TAMPA, FL 33602
813-222-5993
Fax: 813-371-1193
Email: trumon.phillips@dlapiper.com
*ATTORNEY TO BE NOTICED*

**LAUREN GALLO WHITE**
WILSON SONSINI GOODRICH ETC
- SAN FRANCISCO CA
ONE MARKET PLAZA
SPEAR TOWER SUITE 3300
SAN FRANCISCO, CA 94105-1126
415-947-2000
Fax: 415-947-2099
Email: lwhite@wsgr.com
*ATTORNEY TO BE NOTICED*

**MENG JIA YANG**
WILSON SONSINI GOODRICH ETC
- PALO ALTO CA
650 PAGE MILL RD
PALO ALTO, CA 94304-1050
650-493-9300
Email: mjyang@wsgr.com

*ATTORNEY TO BE NOTICED*

**PETER KARANJIA**
DLA PIPER US LLP -
WASHINGTON DC
500 8TH ST NW
WASHINGTON, DC 20004
202-799-4135
Email: peter.karanjia@dlapiper.com
*ATTORNEY TO BE NOTICED*

**STEFFEN N JOHNSON**
WILSON SONSINI GOODRICH ETC
- WASHINGTON DC
1700 K STREET NW
5TH FLOOR
WASHINGTON, DC 20006-3817
202-973-8888
Fax: 202-973-8899
Email: sjohnson@wsgr.com
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER GEORGE
OPRISON**
DLA PIPER US LLP - MIAMI FL
200 S BISCAYNE BLVD
STE 2500
MIAMI, FL 33131
305-423-8522
Fax: 305-675-6366
Email: chris.oprison@dlapiper.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**COMPUTER &
COMMUNICATIONS INDUSTRY
ASSOCIATION**
*doing business as*
CCIA

represented by **BEN FABENS-LASSEN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRIAN M WILLEN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRIDGET KELLOGG SMITHA**
STEARNS WEAVER MILLER ETC
PA - TALLAHASSEE FL
106 EAST COLLEGE AVE
SUITE 700
TALLAHASSEE, FL 32301
850-328-4852

Email: bsmitha@stearnsweaver.com
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER ROY CLARK**
STEARNS WEAVER MILLER -
TALLAHASSEE FL
106 E COLLEGE AVENUE
SUITE 700
TALLAHASSEE, FL 32301
912-223-9901
Email: crclark@stearnsweaver.com
*ATTORNEY TO BE NOTICED*

**DANIELLE T MORRISON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DOUGLAS LAMAR KILBY**
AUSLEY MCMULLEN -
TALLAHASSEE FL
123 S CALHOUN STREET
TALLAHASSEE, FL 32301
850-224-9115
Fax: 850-222-7560
Email: dkilby@stearnsweaver.com
*ATTORNEY TO BE NOTICED*

**GLENN T BURHANS , JR**
STEARNS WEAVER MILLER ETC
PA - TALLAHASSEE FL
106 EAST COLLEGE AVE
SUITE 700
TALLAHASSEE, FL 32301
850-328-4850
Email: gburhans@stearnsweaver.com
*ATTORNEY TO BE NOTICED*

**ILANA HOPE EISENSTEIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JONATHAN ALLEN GREEN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOSEPH TRUMON PHILLIPS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LAUREN GALLO WHITE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MENG JIA YANG**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PETER KARANJIA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEFFEN N JOHNSON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER GEORGE OPRISON**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ASHLEY BROOKE MOODY**
*IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF FLORIDA*

represented by **BLAINE H WINSHIP**
OFFICE OF THE ATTORNEY GENERAL - TALLAHASSEE FL
THE CAPITOL STE PL-01
400 S MONROE ST
TALLAHASSEE, FL 32399
850-414-3657
Fax: 850-488-4872
Email:
blaine.winship@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**DANIEL WILLIAM BELL**
FLORIDA ATTORNEY GENERALS OFFICE
PL-01 THE CAPITOL
TALLAHASSEE, FL 32399
786-473-2923
Email: daniel.bell@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**GLEN ALLEN BASSETT**
ATTORNEY GENERAL - PL-01 - TALLAHASSEE FL
STATE OF FLORIDA

PL 01 THE CAPITOL
400 S MONROE ST
TALLAHASSEE, FL 32399
850-414-3717
Fax: 850-488-4872
Email:
glen.bassett@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JONI ALEXIS POITIER**                 represented by   **BLAINE H WINSHIP**
*IN HER OFFICIAL CAPACITY AS*                            (See above for address)
*COMMISSIONER OF THE FLORIDA*                            *ATTORNEY TO BE NOTICED*
*ELECTIONS COMMISSION*
                                                        **DANIEL WILLIAM BELL**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **GLEN ALLEN BASSETT**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**JASON TODD ALLEN**                    represented by   **BLAINE H WINSHIP**
*IN HIS OFFICIAL CAPACITY AS*                            (See above for address)
*COMMISSIONER OF THE FLORIDA*                            *ATTORNEY TO BE NOTICED*
*ELECTIONS COMMISSION*
                                                        **DANIEL WILLIAM BELL**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **GLEN ALLEN BASSETT**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN MARTIN HAYES**                   represented by   **BLAINE H WINSHIP**
*IN HIS OFFICIAL CAPACITY AS*                            (See above for address)
*COMMISSIONER OF THE FLORIDA*                            *ATTORNEY TO BE NOTICED*
*ELECTIONS COMMISSION*
                                                        **DANIEL WILLIAM BELL**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **GLEN ALLEN BASSETT**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**KYMBERLEE CURRY SMITH**
*IN HER OFFICIAL CAPACITY AS
COMMISSIONER OF THE FLORIDA
ELECTIONS COMMISSION*

represented by **BLAINE H WINSHIP**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL WILLIAM BELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**GLEN ALLEN BASSETT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PATRICK GILLESPIE**
*IN HIS OFFICIAL CAPACITY AS
DEPUTY SECRETARY OF BUSINESS
OPERATIONS OF THE FLORIDA
DEPARTMENT OF MANAGEMENT
SERVICES*

represented by **BRIAN WESLEY BARNES**
COOPER & KIRK PLLC -
WASHINGTON DC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036
202-220-9600
Fax: 202-220-9601
Email: bbarnes@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**CHARLES JUSTIN COOPER**
COOPER & KIRK PLLC -
WASHINGTON DC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036
202-220-9600
Email: ccooper@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**DAVID HENRY THOMPSON**
COOPER & KIRK PLLC -
WASHINGTON DC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036
202-220-9600
Email: dthompson@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**JAMES WILLIAM UTHMEIER**
EXECUTIVE OFFICE OF THE
GOVERNOR OF FLORIDA
OFFICE OF GENERAL COUNSEL
400 S MONROE STREET
SUITE 209
TALLAHASSEE, FL 32399
850-225-5299

Email:
james.uthmeier@eog.myflorida.com
*ATTORNEY TO BE NOTICED*

**JOSEPH MASTERMAN**
COOPER & KIRK PLLC -
WASHINGTON DC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036
202-220-9600
Email: jmasterman@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**RAYMOND FREDERICK
TREADWELL**
EXECUTIVE OFFICE OF THE
GOVERNOR
OFFICE OF GENERAL COUNSEL
400 S MONROE STREET
THE CAPITOL
SUITE 209
TALLAHASSEE, FL 32399
850-717-9321
Fax: 850-488-9810
Email:
ray.treadwell@eog.myflorida.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**TECHFREEDOM**                    represented by  **BERIN MICHAEL SZOKA**
TECH FREEDOM - WASHINGTON
DC
110 MARYLAND AVENUE NE
SUITE 205
WASHINGTON, DC 20002
202-642-4246
Email: bszoka@techfreedom.org
*ATTORNEY TO BE NOTICED*

**LAWRENCE G WALTERS**
WALTERS LAW GROUP -
LONGWOOD FL
195 W PINE AVE
LONGWOOD, FL 32750
407-975-9150
Fax: 407-774-6151
Email: larry@firstamendment.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHAMBER OF PROGRESS**                 represented by   **NURY AGUDO SIEKKINEN**
                                                        ZWILLGEN PLLC - WASHINGTON
                                                        DC
                                                        1900 M STREET NW
                                                        SUITE 250
                                                        WASHINGTON, DC 20036
                                                        202-296-3585
                                                        Fax: 202-706-5298
                                                        Email: nury@zwillgen.com
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**CONNECTED COMMERCE**                  represented by   **NURY AGUDO SIEKKINEN**
**COUNCIL**                                             (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**CONSUMER TECHNOLOGY**                 represented by   **NURY AGUDO SIEKKINEN**
**ASSOCIATION**                                         (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**ENGINE ADVOCACY**                     represented by   **NURY AGUDO SIEKKINEN**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**INFORMATION TECHNOLOGY &**            represented by   **NURY AGUDO SIEKKINEN**
**INNOVATION FOUNDATION**                               (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL BLACK JUSTICE**              represented by   **NURY AGUDO SIEKKINEN**
**COALITION**                                           (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**PROGRESSIVE POLICY**                  represented by   **NURY AGUDO SIEKKINEN**
**INSTITUTE**                                           (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**TECHNET**                             represented by   **NURY AGUDO SIEKKINEN**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **WASHINGTON CENTER FOR TECHNOLOGY POLICY INCLUSION** | represented by | **NURY AGUDO SIEKKINEN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS** | represented by | **DEANNA K SHULLMAN**<br>SHULLMAN FUGATE PLLC - WEST PALM BEACH FL<br>2101 VISTA PARKWAY<br>SUITE 4006<br>WEST PALM BEACH, FL 33411<br>561-429-3619<br>Email: dshullman@shullmanfugate.com<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **AMERICAN CIVIL LIBERTIES UNION** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **AMERICAN CIVIL LIBERTIES UNION OF FLORIDA** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **AUTHORS GUILD INC** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **CENTER FOR DEMOCRACY AND TECHNOLOGY** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **MEDIA LAW RESOURCE CENTER INC** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **PEN AMERICAN CENTER INC** | represented by | **DEANNA K SHULLMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **INTERNET ASSOCIATION** | represented by | **ARI HOLTZBLATT**<br>WILMER HALE - WASHINGTON |

DC
1875 PENNSYLVANIA AVENUE
NW
WASHINGTON, DC 20006
202-663-6964
Email: ari.holtzblatt@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**PATRICK J CAROME**
WILMER HALE - NEW YORK NY
7 WORLD TRADE CENTER
250 GREENWICH STREET
NEW YORK, NY 10007
202-663-6610
Email:
patrick.carome@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**PAUL R WOLFSON**
WILMER HALE - WASHINGTON
DC
1875 PENNSYLVANIA AVENUE
NW
WASHINGTON, DC 20006
202-663-6390
Fax: 202-663-6363
Email: paul.wolfson@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**PETER WINSLOW HOMER**
HOMER BONNER
1441 BRICKELL AVE STE 1200
MIAMI, FL 33131
305-350-5139
Fax: 305-372-1443
Email: phomer@homerbonner.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**ELECTRONIC FRONTIER
FOUNDATION**

**Amicus**

**LEONID GOLDSTEIN**

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 05/27/2021 | 1 | |

| | | COMPLAINT *for Declaratory and Injunctive Relief* against JASON TODD ALLEN, PATRICK GILLESPIE, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH ( Filing fee $ 402 receipt number AFLNDC-6111479.), filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE, LLC. (Attachments: # 1 Summons (Ashley Moody), # 2 Summons (Joni Poitier), # 3 Summons (Jason Allen), # 4 Summons (John Hayes), # 5 Summons (Kymberlee Smith), # 6 Summons (Patrick Gillespie)) (OPRISON, CHRISTOPHER) (Entered: 05/27/2021) |
|---|---|---|
| 05/27/2021 | 2 | CIVIL COVER SHEET. (OPRISON, CHRISTOPHER) (Entered: 05/27/2021) |
| 05/27/2021 | 3 | Corporate Disclosure Statement/Certificate of Interested Persons by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE, LLC. (OPRISON, CHRISTOPHER) (Entered: 05/27/2021) |
| 05/28/2021 | 4 | Summons Issued as to JASON TODD ALLEN and (Attachments: # 1 PATRICK GILLESPIE, # 2 JOHN MARTIN HAYES, # 3 ASHLEY BROOKE MOODY, # 4 JONI ALEXIS POITIER, # 5 KYMBERLEE CURRY SMITH) (blb) (Entered: 05/28/2021) |
| 06/02/2021 | 5 | NOTICE of Appearance by DOUGLAS LAMAR KILBY on behalf of COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION (KILBY, DOUGLAS) (Entered: 06/02/2021) |
| 06/02/2021 | 6 | First MOTION for Leave to File Excess Pages by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (KILBY, DOUGLAS) (Entered: 06/02/2021) |
| 06/03/2021 | 7 | ORDER GRANTING LEAVE TO EXCEED THE WORD LIMIT - Plaintiffs' motion, ECF No. 6 , for leave to file a memorandum of excessive length in support of their anticipated motion for a preliminary injunction is granted. Signed by JUDGE ROBERT L HINKLE on 6/3/2021. (cle) (Entered: 06/03/2021) |
| 06/03/2021 | 8 | NOTICE of Appearance by GLENN T BURHANS, JR on behalf of COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION (BURHANS, GLENN) (Entered: 06/03/2021) |
| 06/03/2021 | 9 | NOTICE of Appearance by BRIDGET KELLOGG SMITHA on behalf of COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION (SMITHA, BRIDGET) (Entered: 06/03/2021) |
| 06/03/2021 | 10 | NOTICE of Appearance by CHRISTOPHER ROY CLARK on behalf of COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION (CLARK, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 11 | NOTICE of Appearance by JOSEPH TRUMON PHILLIPS on behalf of COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC (PHILLIPS, JOSEPH) (Entered: 06/03/2021) |
| 06/03/2021 | 12 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on Ashley Brooke Moody, in her official capacity as Attorney General of the State of Florida on May 28, 2021, filed by |

| | | COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
|---|---|---|
| 06/03/2021 | 13 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on Joni Alexis Poitier, in her official capacity as Commissioner of the Florida Elections Commission on May 28, 2021, filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 14 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on Jason Todd Allen, in his official capacity as Commissioner of the Florida Elections Commission on May 28, 2021, filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 15 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on John Martin Hayes, in his official capacity as Commissioner of the Florida Elections Commission on May 28, 2021, filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 16 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on Kymberlee Curry Smith, in her official capacity as Commissioner of the Florida Elections Commission on May 28, 2021, filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 17 | AFFIDAVIT of Service for Summons and Complaint *for Declaratory and Injunctive Relief* served on Patrick Gillespie, in his official capacity as Deputy Secretary of Business Operations of the Florida Department of Management Services on May 28, 2021, filed by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (OPRISON, CHRISTOPHER) (Entered: 06/03/2021) |
| 06/03/2021 | 18 | MOTION to Appear Pro Hac Vice by Lauren Gallo White.( Filing fee $ 208 receipt number AFLNDC-6120416.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Exhibit Certificate of Good Standing) (BURHANS, GLENN) (Entered: 06/03/2021) |
| 06/03/2021 | 19 | MOTION to Appear Pro Hac Vice( Filing fee $ 208 receipt number AFLNDC-6120468.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Exhibit Certificate of Good Standing) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 20 | MOTION to Appear Pro Hac Vice by Brian M. Willen.( Filing fee $ 208 receipt number AFLNDC-6120479.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Exhibit Certificate of Good Standing) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 21 | MOTION to Appear Pro Hac Vice by Steffen N. Johnson.( Filing fee $ 208 receipt number AFLNDC-6120484.) by COMPUTER & |

| | | |
|---|---|---|
| | | COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Exhibit Certificate of Good Standing) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 22 | First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 23 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 24 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 25 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 26 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 27 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 28 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 29 | AFFIDAVIT re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (Attachments: # 1 Affidavit) (KILBY, DOUGLAS) (Entered: 06/03/2021) |
| 06/03/2021 | 30 | Memorandum of Law in Support of 22 Motion for Preliminary Injunction by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (KILBY, DOUGLAS) Modified on 6/23/2021 to reflect title and terminate as this is not a motion (ckm). (Entered: 06/03/2021) |
| 06/04/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed re: 18 MOTION to Appear Pro Hac Vice by Lauren Gallo White, 19 MOTION to Appear Pro Hac Vice, 20 MOTION to Appear Pro Hac Vice by |

| | | |
|---|---|---|
| | | Brian M. Willen, and 21 MOTION to Appear Pro Hac Vice by Steffen N. Johnson. Referred to MARTIN A FITZPATRICK. (cle) (Entered: 06/04/2021) |
| 06/04/2021 | 31 | ORDER SETTING A SCHEDULING CONFERENCE. Signed by JUDGE ROBERT L HINKLE on 6/4/21. (sms) By separate notice, the clerk must set a scheduling conference for June 10, 2021, at 2:00 p.m., by telephone.(cle) (Entered: 06/04/2021) |
| 06/07/2021 | 32 | NOTICE OF TELEPHONIC HEARING: Telephonic Scheduling Conference set for **6/10/2021 02:00 PM** before JUDGE ROBERT L HINKLE. Call in number: **888-684-8852** Access code: **3243416#** Security code: **1234#** *Proceedings may not be recorded or otherwise broadcast for public dissemination.* _s/ Cindy Markley_ Courtroom Deputy Clerk (ckm) (Entered: 06/07/2021) |
| 06/07/2021 | 33 | ORDER - granting 18 Motion to Appear Pro Hac Vice - re: LAUREN GALLO WHITE for NETCHOICE, LLC. and CCIA. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/7/2021. (cle) (Entered: 06/07/2021) |
| 06/07/2021 | 34 | ORDER - granting 19 Motion to Appear Pro Hac Vice - re: MENG JIA YANG for NETCHOICE, LLC. and CCIA. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/7/2021. (cle) (Entered: 06/07/2021) |
| 06/07/2021 | 35 | ORDER - granting 20 Motion to Appear Pro Hac Vice - re: BRIAN MICHAEL WILLEN for NETCHOICE, LLC. and CCIA. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/7/2021. (cle) (Entered: 06/07/2021) |
| 06/07/2021 | 36 | ORDER - granting 21 Motion to Appear Pro Hac Vice - re: STEFFEN N. JOHNSON for NETCHOICE, LLC. and CCIA. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/7/2021. (cle) (Entered: 06/07/2021) |
| 06/09/2021 | 37 | STATUS REPORT *re: Compliance with Scheduling Order* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION. (KILBY, DOUGLAS) (Entered: 06/09/2021) |
| 06/09/2021 | 38 | MOTION to Appear Pro Hac Vice by Peter Karanjia.( Filing fee $ 208 receipt number AFLNDC-6128887.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (Attachments: # 1 Exhibit) (KARANJIA, PETER) (Entered: 06/09/2021) |
| 06/09/2021 | 39 | MOTION to Appear Pro Hac Vice by Ben C. Fabens-Lassen.( Filing fee $ 208 receipt number AFLNDC-6128913.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (Attachments: # 1 Exhibit) (FABENS-LASSEN, BEN) (Entered: 06/09/2021) |
| 06/09/2021 | 40 | MOTION to Appear Pro Hac Vice by Jonathan Green.( Filing fee $ 208 receipt number AFLNDC-6128965.) by COMPUTER & COMMUNICATIONS |

| | | |
|---|---|---|
| | | INDUSTRY ASSOCIATION, NETCHOICE LLC. (Attachments: # 1 Exhibit) (GREEN, JONATHAN) (Entered: 06/09/2021) |
| 06/09/2021 | 41 | MOTION to Appear Pro Hac Vice by Danielle T. Morrison.( Filing fee $ 208 receipt number AFLNDC-6128989.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (Attachments: # 1 Exhibit) (MORRISON, DANIELLE) (Entered: 06/09/2021) |
| 06/10/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed re: 38 MOTION to Appear Pro Hac Vice by Peter Karanjia, 39 MOTION to Appear Pro Hac Vice by Ben C. Fabens-Lassen, 40 MOTION to Appear Pro Hac Vice by Jonathan Green, and 41 MOTION to Appear Pro Hac Vice by Danielle T. Morrison. Referred to MARTIN A FITZPATRICK. (cle) (Entered: 06/10/2021) |
| 06/10/2021 | 42 | PLAINTIFFS' MOTION FOR ADMISSION PRO HAC VICE (ILANA H. EISENSTEIN).( Filing fee $ 208 receipt number AFLNDC-6129676.) by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC. (Attachments: # 1 Exhibit) (EISENSTEIN, ILANA) Modified to edit title on 6/10/2021 (rcb). Modified on 6/16/2021 (lsd). (Entered: 06/10/2021) |
| 06/10/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed Re: 42 PLAINTIFFS'MOTION FOR ADMISSION PRO HAC VICE (ILANA H. EISENSTEIN) Referred to MARTIN A FITZPATRICK. (rcb) (Entered: 06/10/2021) |
| 06/10/2021 | 43 | NOTICE of Appearance by BLAINE H WINSHIP on behalf of JASON TODD ALLEN, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH (WINSHIP, BLAINE) (Entered: 06/10/2021) |
| 06/10/2021 | 44 | NOTICE of Appearance by GLEN ALLEN BASSETT on behalf of JASON TODD ALLEN, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH (BASSETT, GLEN) (Entered: 06/10/2021) |
| 06/10/2021 | 45 | MOTION to Appear Pro Hac Vice by Brian W. Barnes.( Filing fee $ 208 receipt number AFLNDC-6130659.) by PATRICK GILLESPIE. (Attachments: # 1 Exhibit A - Certificate of Good Standing) (BARNES, BRIAN) (Entered: 06/10/2021) |
| 06/10/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed re: 45 MOTION to Appear Pro Hac Vice by Brian W. Barnes. Referred to MARTIN A FITZPATRICK. (cle) (Entered: 06/10/2021) |
| 06/10/2021 | 46 | ORDER - The motion for leave to appear pro hac vice, ECF No. 38 , is GRANTED.(Appointed PETER KARANJIA for COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION and NETCHOICE LLC. |

| | | Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/10/2021. (cle) (Entered: 06/10/2021) |
|---|---|---|
| 06/10/2021 | 47 | ORDER - The motion for leave to appear pro hac vice, ECF No. 39 , is GRANTED. Attorney Ben C. Labens-Lassen is appointed for Plaintiffs. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/10/2021. (cle) (Entered: 06/10/2021) |
| 06/10/2021 | 48 | ORDER - The motion for leave to appear pro hac vice, ECF No. 40 , is GRANTED. Attorney Jonathan Allen Green is appointed for Plaintiffs. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/10/2021. (cle) (Entered: 06/10/2021) |
| 06/10/2021 | 49 | ORDER - The motion for leave to appear pro hac vice, ECF No. 41 , is GRANTED. Danielle T. Morrison is appointed for Plaintiffs. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/10/2021. (cle) (Entered: 06/10/2021) |
| 06/10/2021 | 50 | Minute Entry for proceedings held before JUDGE ROBERT L HINKLE: Telephonic Scheduling Conference held on 6/10/2021. An order setting the schedule is forthcoming. (Court Reporter Lisa Snyder.) (kjw) (Entered: 06/10/2021) |
| 06/10/2021 | 51 | ORDER SETTING THE PRELIMINARY-INJUNCTION SCHEDULE - The defendants must file by **6/21/2021**, a memorandum and any evidence on which they rely in opposition to the preliminary-injunction motion. The plaintiffs may file a reply memorandum by **6/24/2021**. By separate notice, the clerk must set a video hearing on the motion on June 28, 2021, at 1:30 p.m. The time limit is one hour per side. Signed by JUDGE ROBERT L HINKLE on 6/10/2021. (cle) (Entered: 06/11/2021) |
| 06/10/2021 | 52 | INITIAL SCHEDULING ORDER - Fed.R.Civ.P. 7.1 Corporate Disclosure Statement Deadline set for **6/24/2021**. Answer due by **7/15/2021**. Attorney Conference due by **7/19/2021**. Rule 26 Meeting Report due by **8/2/2021**. Discovery due by **11/15/2021**. Jury Trial set for **2/22/2022 at 8:15 AM** in U.S. Courthouse Tallahassee before JUDGE ROBERT L HINKLE. Signed by JUDGE ROBERT L HINKLE on 6/10/2021. (cle) (Entered: 06/11/2021) |
| 06/11/2021 | 53 | Unopposed MOTION for Leave to File Brief as Amicus Curiae in Support of Plaintiffs' Motion for Preliminary Injunction by TechFreedom. (Internal deadline for referral to judge if response not filed earlier: **6/25/2021**). (Attachments: # 1 Exhibit Amicus Brief) (WALTERS, LAWRENCE) Modified on 6/14/2021 to reflect document title (ckm). (Entered: 06/11/2021) |
| 06/11/2021 | 54 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephonic Scheduling Conference held on 6/10/2021, before Judge Robert Hinkle. Court Reporter/Transcriber Lisa Snyder, Telephone number 8505671374. Tape Number: lisasnydercr@gmail.com. *Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.* |

| | | |
|---|---|---|
| | | Redaction Request due **6/18/2021**. Release of Transcript Restriction set for **9/16/2021**. (ls) (Entered: 06/11/2021) |
| 06/11/2021 | 55 | Amicus Curiae Brief in Support of Plaintiffs' Motion for Preliminary Injunction (docked as Notice of Filing corrected Amicus Brief to correct typographical errors on p. 14) by TechFreedom re 53 MOTION to File Amicus Brief (WALTERS, LAWRENCE) Modified on 6/14/2021 to reflect document title (ckm). (Entered: 06/11/2021) |
| 06/11/2021 | 56 | NOTICE of Appearance by NURY AGUDO SIEKKINEN on behalf of chamber of progress, connected commerce council, consumer technology association, engine advocacy, information technology & Innovation Foundation, National Black Justice Coalition, progressive policy institute, technet, washington center for technology policy inclusion (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 57 | MOTION for Leave to File Brief as Amici Curia (re 22 First MOTION for Preliminary Injunction) by National Black Justice Coalition, chamber of progress, connected commerce council, consumer technology association, engine advocacy, information technology & Innovation Foundation, progressive policy institute, technet, washington center for technology policy inclusion. (Attachments: # 1 Exhibit A-Proposed Brief of Amici Curiae) (SIEKKINEN, NURY) Modified on 6/14/2021 to reflect document title (ckm). (Entered: 06/11/2021) |
| 06/11/2021 | 58 | Corporate Disclosure Statement/Certificate of Interested Persons by chamber of progress. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 59 | Corporate Disclosure Statement/Certificate of Interested Persons by National Black Justice Coalition. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 60 | Corporate Disclosure Statement/Certificate of Interested Persons by progressive policy institute. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 61 | Corporate Disclosure Statement/Certificate of Interested Persons by technet. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 62 | Corporate Disclosure Statement/Certificate of Interested Persons by washington center for technology policy inclusion. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 63 | Corporate Disclosure Statement/Certificate of Interested Persons by connected commerce council. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 64 | Corporate Disclosure Statement/Certificate of Interested Persons by engine advocacy. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 65 | Corporate Disclosure Statement/Certificate of Interested Persons by consumer technology association. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | 66 | Corporate Disclosure Statement/Certificate of Interested Persons by information technology & Innovation Foundation. (SIEKKINEN, NURY) (Entered: 06/11/2021) |
| 06/11/2021 | | |

| | | |
|---|---|---|
| | | Set Deadline as to [57](#) Motion for Leave to File. (Internal deadline for referral to judge if response not filed earlier: **6/25/2021**.) (ckm) (Entered: 06/14/2021) |
| 06/14/2021 | 67 | DOCKET ANNOTATION BY COURT TO AMICI ATTORNEYS (re [53](#) and [57](#) Motions): The parties named in the above-referenced documents were added to the docket incorrectly and will be corrected by the clerk. Party names (including aliases) are to be added using all caps and no punctuation. For future reference, please review the procedures for adding/creating new parties in the "Style Guide for Electronic Case Filing" and/or Chapter 10 of the "CM/ECF Attorney User's Guide" (both available on the clerk's website) at www.flnd.uscourts.gov. (Click on CM/ECF link and go to General Info.) (ckm) (Entered: 06/14/2021) |
| 06/14/2021 | [68](#) | ORDER ON AMICUS BRIEFS - TechFreedom's unopposed motion, ECF No. [53](#) , for leave to file an amicus brief is granted. The defendants must respond by **6/15/2021** at noon to the attempt of Chamber of Progress et al. to confer on their motion for leave to file an amicus brief. Signed by JUDGE ROBERT L HINKLE on 6/14/2021. (ckm) (Entered: 06/14/2021) |
| 06/14/2021 | [69](#) | MOTION to File Amicus Brief by Electronic Frontier Foundation, Protect Democracy Project, Inc.. (Internal deadline for referral to judge if response not filed earlier: **6/28/2021**). (Attachments: # [1](#) Exhibit Amicus Brief) (HOPKINS, CHRISTOPHER) (Entered: 06/14/2021) |
| 06/14/2021 | [70](#) | Corporate Disclosure Statement/Certificate of Interested Persons by Electronic Frontier Foundation. (HOPKINS, CHRISTOPHER) (Entered: 06/14/2021) |
| 06/14/2021 | [71](#) | MOTION to File Amicus Brief *(Unopposed)* by Reporters Committee for Freedom of the Press, AMERICAN CIVIL LIBERTIES UNION, American Civil Liberties Union of Florida, Authors Guild Inc., Center for Democracy and Technology, Media Law Resource Center, Inc., Pen American Center, Inc.. (Internal deadline for referral to judge if response not filed earlier: **6/28/2021**). (Attachments: # [1](#) Proposed Amici Curiae Brief) (SHULLMAN, DEANNA) (Entered: 06/14/2021) |
| 06/14/2021 | [72](#) | Corporate Disclosure Statement/Certificate of Interested Persons by Protect Democracy Project, Inc.. (HOPKINS, CHRISTOPHER) (Entered: 06/14/2021) |
| 06/14/2021 | [73](#) | NOTICE of Appearance by PETER WINSLOW HOMER on behalf of Internet Association (HOMER, PETER) (Entered: 06/14/2021) |
| 06/14/2021 | [74](#) | MOTION to Appear Pro Hac Vice by Paul R.Q. Wolfson.( Filing fee $ 208 receipt number AFLNDC-6134924.) by Internet Association. (Attachments: # [1](#) Certificate of Good Standing) (WOLFSON, PAUL) (Entered: 06/14/2021) |
| 06/14/2021 | [75](#) | MOTION to Appear Pro Hac Vice by Patrick J. Carome.( Filing fee $ 208 receipt number AFLNDC-6134927.) by Internet Association. (Attachments: # [1](#) Certificate of Good Standing) (CAROME, PATRICK) (Entered: 06/14/2021) |
| 06/14/2021 | [76](#) | MOTION to Appear Pro Hac Vice by Ari Holtzblatt.( Filing fee $ 208 receipt number AFLNDC-6134931.) by Internet Association. (Attachments: # [1](#) Certificate of Good Standing) (HOLTZBLATT, ARI) (Entered: 06/14/2021) |
| 06/14/2021 | [77](#) | |

| | | |
|---|---|---|
| | | Consent MOTION for Leave to File *Amicus Brief* by Internet Association. (Attachments: # 1 Text of Proposed Order, # 2 Proposed Amicus Brief) (HOMER, PETER) (Entered: 06/14/2021) |
| 06/14/2021 | 91 | AMICUS CURIAE BRIEF filed by Electronic Frontier Foundation and Protect Democracy Project, Inc. See Doc. 69 . (cle) (Entered: 06/17/2021) |
| 06/14/2021 | 92 | AMICUS CURIAE BRIEF filed by AMERICAN CIVIL LIBERTIES UNION, American Civil Liberties Union of Florida, Authors Guild Inc, Center for Democracy and Technology, Media Law Resource Center, Inc, Pen American Center, Inc, Reporters Committee for Freedom of the Press. See Doc. 71 . (cle) (Entered: 06/17/2021) |
| 06/14/2021 | 93 | AMICUS CURIAE BRIEF by Internet Association. See Doc. 77 . (cle) (Entered: 06/17/2021) |
| 06/15/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed Re: 75 MOTION to Appear Pro Hac Vice by Patrick J. Carome.( Filing fee $ 208 receipt number AFLNDC-6134927.), 76 MOTION to Appear Pro Hac Vice by Ari Holtzblatt.( Filing fee $ 208 receipt number AFLNDC-6134931.), 74 MOTION to Appear Pro Hac Vice by Paul R.Q. Wolfson. ( Filing fee $ 208 receipt number AFLNDC-6134924.). Referred to MARTIN A FITZPATRICK. (pll) (Entered: 06/15/2021) |
| 06/15/2021 | 78 | DOCKET ANNOTATION BY COURT TO AMICI ATTORNEYS (re 69 , 71 and 77 Motions): The parties named in the above-referenced documents were added to the docket incorrectly and will be corrected by the clerk. Party names (including aliases) are to be added using all caps and no punctuation. For future reference, please review the procedures for adding/creating new parties in the "Style Guide for Electronic Case Filing" and/or Chapter 10 of the "CM/ECF Attorney User's Guide" (both available on the clerk's website) at www.flnd.uscourts.gov. (Click on CM/ECF link and go to General Info.) (pll) (Entered: 06/15/2021) |
| 06/15/2021 | 79 | RESPONSE by PATRICK GILLESPIE re 57 MOTION for Leave to File re 22 First MOTION for Preliminary Injunction *and Expedited Consideration Brief of Amici Curiae*, 68 Order,, Set Deadlines, . (BARNES, BRIAN) (Entered: 06/15/2021) |
| 06/15/2021 | 80 | First MOTION to Appear Pro Hac Vice by Berin Szoka.( Filing fee $ 208 receipt number AFLNDC-6135440.) by TechFreedom. (Attachments: # 1 Exhibit Certificate of good standing) (SZOKA, BERIN) (Entered: 06/15/2021) |
| 06/15/2021 | 81 | ORDER ON AMICUS BRIEFSThe unopposed motions to file amicus briefs, ECF Nos. 69 , 71 , and 77 , are granted. The briefs are deemed properly filed. Signed by JUDGE ROBERT L HINKLE on 6/15/2021. (kjw) (Entered: 06/16/2021) |
| 06/15/2021 | 82 | ORDER - re: 42 MOTION to Appear Pro Hac Vice. The motion for leave to appear pro hac vice, re: Ilana H. Eisenstein, ECF No. 42 , is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |

| 06/15/2021 | 83 | ORDER - Motion for leave to appear prohac vice, as to Brian W. Barnes, ECF No. 45, is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |
|---|---|---|
| 06/15/2021 | 84 | ORDER - Motion for leave to appear prohac vice, as to Paul R.Q. Wolfson, ECF No. 74, is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |
| 06/15/2021 | 85 | ORDER - Motion for leave to appear pro hac vice, as to Patrick J. Carome, ECF No. 75, is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |
| 06/15/2021 | 86 | ORDER - Motion for leave to appear pro hac vice, as to Ari Holtzblatt, ECF No. 76, is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |
| 06/15/2021 | 87 | ORDER - Motion for leave to appear pro hac vice, as to Berin M. Szoka, ECF No. 80, is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (cle) (Entered: 06/16/2021) |
| 06/15/2021 | | **Duplicate - ORDER granting 42 Motion to Appear Pro Hac Vice. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/15/2021. (lsd) (Entered: 06/16/2021) |
| 06/16/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed re: 80 First MOTION to Appear Pro Hac Vice by Berin Szoka. Referred to MARTIN A FITZPATRICK. (cle) (Entered: 06/16/2021) |
| 06/16/2021 | 88 | MOTION to Appear Pro Hac Vice( Filing fee $ 208 receipt number AFLNDC-6138151.) by Electronic Frontier Foundation. (Attachments: # 1 Certificate of Good Standing) (GREENE, DAVID) (Entered: 06/16/2021) |
| 06/16/2021 | 89 | MOTION to Appear Pro Hac Vice( Filing fee $ 208 receipt number AFLNDC-6138222.) by Electronic Frontier Foundation. (Attachments: # 1 Certificate of Good Standing) (GREENE, DAVID) (Entered: 06/16/2021) |
| 06/16/2021 | 90 | MOTION to Appear Pro Hac Vice( Filing fee $ 208 receipt number AFLNDC-6138263.) by Electronic Frontier Foundation. (Attachments: # 1 Certificate of Good Standing) (GREENE, DAVID) (Entered: 06/16/2021) |
| 06/17/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MARTIN A FITZPATRICK notified that action is needed re: 88 MOTION to Appear Pro Hac Vice, 89 MOTION to Appear Pro Hac Vice, and 90 MOTION to Appear Pro Hac Vice. Referred to MARTIN A FITZPATRICK. (cle) (Entered: 06/17/2021) |
| 06/17/2021 | 94 | ORDER ALLOWING CHAMBER OF PROGRESS TO FILE AN AMICUS BRIEF - The unopposed motion of Chamber of Progress et al. for leave to file an amicus brief, ECF No. 57, is granted. The brief is deemed properly filed. Signed by JUDGE ROBERT L HINKLE on 6/17/2021. (cle) (Entered: 06/17/2021) |
| 06/17/2021 | 95 | |

| | | |
|---|---|---|
| | | ORDER - The motion for leave to appear pro hac vice, as to DAVID ALLEN GREENE, for Electronic Frontier Foundation, ECF No. 88 , is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/17/2021. (cle) (Entered: 06/17/2021) |
| 06/17/2021 | 96 | ORDER - The motion for leave to appear pro hac vice, as to Kurt Opsahl, for Electronic Frontier Foundation, ECF No. 90 , is GRANTED. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/17/2021. (cle) (Entered: 06/17/2021) |
| 06/17/2021 | 97 | ORDER - The motion for leave to appear pro hac vice, ECF No. 89 , is GRANTED, as to Aaron Mackey on behalf of Electronic Frontier Foundation. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/17/2021. (cle) (Entered: 06/21/2021) |
| 06/17/2021 | | **Duplicate - ORDER granting 89 Motion to Appear Pro Hac Vice. Signed by MAGISTRATE JUDGE MARTIN A FITZPATRICK on 6/17/2021. (lsd) (Entered: 06/22/2021) |
| 06/21/2021 | 98 | Sealed Notice of Video Hearing (ckm) (Entered: 06/21/2021) |
| 06/21/2021 | 99 | NOTICE OF VIDEO HEARING on 22 Motion for Preliminary Injunction: Preliminary Injunction Hearing set for **6/28/2021 01:30 PM** before JUDGE ROBERT L HINKLE. Only attorneys of record may join by video (link will be provided separately). All others interested in listening to the proceeding may dial in using the information provided below: Call in number: **669-254-5252 (if calling from the west coast) or 646-828-7666 (if calling from the east coast)** Meeting ID: **1619431903#** *Proceedings may not be recorded or otherwise broadcast for public dissemination.* *s/ Cindy Markley* (ckm) (Entered: 06/21/2021) |
| 06/21/2021 | 100 | NOTICE of Appearance by RAYMOND FREDERICK TREADWELL on behalf of PATRICK GILLESPIE (TREADWELL, RAYMOND) (Entered: 06/21/2021) |
| 06/21/2021 | 101 | NOTICE of Appearance by CHARLES JUSTIN COOPER on behalf of PATRICK GILLESPIE (COOPER, CHARLES) (Entered: 06/21/2021) |
| 06/21/2021 | 102 | NOTICE of Appearance by DAVID HENRY THOMPSON on behalf of PATRICK GILLESPIE (THOMPSON, DAVID) (Entered: 06/21/2021) |
| 06/21/2021 | 103 | NOTICE of Appearance by JOSEPH MASTERMAN on behalf of PATRICK GILLESPIE (MASTERMAN, JOSEPH) (Entered: 06/21/2021) |
| 06/21/2021 | 104 | NOTICE of Appearance by DANIEL WILLIAM BELL on behalf of JASON TODD ALLEN, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH (BELL, DANIEL) (Entered: 06/21/2021) |

| 06/21/2021 | 105 | NOTICE of Appearance by JAMES WILLIAM UTHMEIER on behalf of PATRICK GILLESPIE (UTHMEIER, JAMES) (Entered: 06/21/2021) |
| 06/21/2021 | 106 | RESPONSE in Opposition re 22 First MOTION for Preliminary Injunction *and Expedited Consideration* filed by JASON TODD ALLEN, PATRICK GILLESPIE, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH. (Attachments: # 1 Appendix Volume 1, # 2 Appendix Volume 2, # 3 Appendix Volume 3, # 4 Appendix Volume 4, # 5 Appendix Volume 5) (COOPER, CHARLES) (Entered: 06/21/2021) |
| 06/22/2021 | 107 | MOTION of Leonid Goldstein For Leave to File an Amicus Brief in Support of Defendants in Opposition to Plaintiff's Motion For a Preliminary Injunction, file by LEONID GOLDSTEIN. (cle) (Entered: 06/23/2021) |
| 06/22/2021 | 108 | BRIEF of Leonid Goldstein as AMICUS CURIAE in Support of Defendants in Opposition to Plaintiff's Motion For a Preliminary Injunction, filed by LEONID GOLDSTEIN. (cle) (Entered: 06/23/2021) |
| 06/24/2021 | 109 | REPLY by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE LLC re 29 Affidavit, 30 MOTION for Preliminary Injunction *Memorandum of Law*, 25 Affidavit, 22 First MOTION for Preliminary Injunction *and Expedited Consideration*, 26 Affidavit, 27 Affidavit, 23 Affidavit, 24 Affidavit, 28 Affidavit *Brief in Support of Motion for Preliminary Injunction*. (OPRISON, CHRISTOPHER) (Entered: 06/24/2021) |
| 06/24/2021 | 110 | ORDER ALLOWING GOLDSTEIN AMICUS BRIEF - Leonid Goldstein's unopposed motion for leave to file an amicus brief, ECF No. 107 , is granted. The brief is deemed properly filed. Signed by JUDGE ROBERT L HINKLE on 6/24/2021. (cle) (Entered: 06/25/2021) |
| 06/28/2021 | 111 | Minute Entry for proceedings held before JUDGE ROBERT L HINKLE: Motion Hearing held on 6/28/2021. Court hears argument re: 22 Motion for Preliminary Injunction. Ruling by Court: 22 Motion for Preliminary Injunction taken under advisement. Order to follow (Court Reporter Judy Gagnon). (vkm) (Entered: 06/28/2021) |
| 06/29/2021 | 112 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction Motion Hearing held on 6/28/2021 before Judge Robert L. Hinkle. Court Reporter: Judy Gagnon, Telephone number: 850-443-7896.<br><br>*Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.*<br><br>Redaction Request due **7/6/2021**. Release of Transcript Restriction set for **10/4/2021**. (kjw) (Entered: 06/29/2021) |
| 06/30/2021 | 113 | ORDER granting 22 Motion for Preliminary Injunction. Signed by JUDGE ROBERT L HINKLE on 6/30/2021. (RH) (Entered: 06/30/2021) |

| 06/30/2021 | 114 | NOTICE *of Undertaking in Support of Injunction* by COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION re 113 Order on Motion for Preliminary Injunction (BURHANS, GLENN) (Entered: 06/30/2021) |
| 07/12/2021 | 115 | NOTICE OF APPEAL as to 113 Order on Motion for Preliminary Injunction by JASON TODD ALLEN, PATRICK GILLESPIE, JOHN MARTIN HAYES, ASHLEY BROOKE MOODY, JONI ALEXIS POITIER, KYMBERLEE CURRY SMITH. ( Filing fee $505 Receipt Number AFLNDC-6178675.) (COOPER, CHARLES) (Entered: 07/12/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/13/2021 10:19:59 | | | |
| **PACER Login:** | 8picard8 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:21-cv-00220-RH-MAF |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

NETCHOICE, LLC d/b/a NETCHOICE, a
501(c)(6) District of Columbia organization;
and COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION d/b/a CCIA, a
501(c)(6) non-stock Virginia corporation,

**Civil Action No.
4:21-cv-00220-RH-MAF**

  Plaintiffs,

v.

ASHLEY BROOKE MOODY, in her
official capacity as Attorney General of the
State of Florida; JONI ALEXIS POITIER, in
her official capacity as Commissioner of the
Florida Elections Commission; JASON
TODD ALLEN, in his official capacity as
Commissioner of the Florida Elections
Commission; JOHN MARTIN HAYES, in
his official capacity as Commissioner of the
Florida Elections Commission;
KYMBERLEE CURRY SMITH, in her
official capacity as Commissioner of the
Florida Elections Commission; and
PATRICK GILLESPIE, in his official
capacity as Deputy Secretary of Business
Operations of the Florida Department of
Management Services,

  Defendants.

_____

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
## REQUEST FOR EXPEDITED CONSIDERATION
### (Oral Argument Requested)

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiffs, NetChoice, LLC, and Computer & Communications Industry Association (collectively, "Plaintiffs"), for the reasons set forth in the memorandum of law and supporting declarations filed concurrently with this motion,[1] respectfully move for an Order preliminarily enjoining Defendants from implementing or enforcing the operative provisions of Florida Senate Bill 7072 (the "Act"), including but not limited to sections 106.072, 287.137, and 501.2041, Fla. Stat.

## REQUEST FOR EXPEDITED CONSIDERATION

Plaintiffs respectfully request that the Court consider this Motion for Preliminary Injunction on an expedited basis before the Act identified above takes effect on July 1, 2021. As Plaintiffs' Memorandum explains in detail, the Act, signed into law on May 24, 2021, launches a frontal attack on their members' First Amendment rights and is expressly preempted by federal law. Expedited consideration is necessary because the Act would inflict immediate, irreparable harm upon Plaintiffs' member companies. Unless enjoined before taking effect, the Act will throw into legal jeopardy countless moderation measures taken by these businesses on a continual basis, will flatly bar them from removing or regulating large swaths of online content that might be highly objectionable or in violation of

---

[1] Plaintiffs are filing the supporting declarations of Matthew Schruers (CCIA), Carl Szabo (NetChoice), Alexandra Veitch (YouTube), Neil Potts (Facebook), Stacy Rumenap (Stop Child Predators), Servando Esparza (TechNet), and Corinne Pavlovic (Etsy) concurrently herewith.

their rules, and require them to send millions of new, detailed notices to their users. The result would be to expose billions of users online, including families and children, to illegal, dangerous, and objectionable material and to require fundamental and far-reaching changes to how Plaintiffs' members operate their businesses. At a minimum, the Court should have an opportunity to address Plaintiffs' request for a preliminary injunction before these new statutory provisions are allowed to upend the status quo.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(K), Plaintiffs respectfully request oral argument on this Motion, and estimate two hours as the required time for the hearing.

## LOCAL RULE 7.1(B) CERTIFICATION

Undersigned Counsel for Plaintiff Computer & Communications Industry Association certifies that he conferred with counsel for Defendants Ashley Brooke Moody, in her official capacity as Attorney General of the State of Florida, and for Joni Alexis Poitier, Jason Todd Allen, John Martin Hayes, and Kymberlee Curry Smith, in their official capacities as Commissioners of the Florida Elections Commission, in a good faith effort to resolve the issue set forth herein. Those Defendants do <u>not</u> consent to the relief requested herein. On June 2, 2021, Counsel for Plaintiff conferred with counsel for Defendant Patrick Gillespie, in his official capacity as Deputy Secretary of Business Operations of the Florida Department of

Management Services, but such counsel has not responded as to her client's position at the time of filing this Motion.

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel for Plaintiff Computer & Communications Industry Association certifies that this motion contains 347 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 3, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. In addition, because counsel for Defendants have not yet appeared in this case, I caused a copy of this filing to be delivered today via e-mail to the following, by agreement with counsel:

Blaine H. Winship
Office of the Florida Attorney General
The Capitol
400 S Monroe St., Ste PL-01
Tallahassee, FL 32399-6536
blaine.winship@myfloridalegal.com

*Counsel for Defendants Ashley B. Moody, in her official capacity as Florida Attorney General, and for Joni Alexis Poitier, Jason Todd Allen, John Martin Hayes, And Kymberlee Curry Smith, in their official capacities as Commissioners of the Florida Elections Commission*

Rebekah A. Davis
Deputy General Counsel - Litigation
Florida Department of Management Services
4050 Esplanade Way, Suite 280
Tallahassee, FL 32399-0950
rebekah.davis@dms.fl.gov

*Counsel for Defendant Patrick Gillespie In his official capacity as Deputy Secretary of Business Operations, Florida Department of Management Services*

Respectfully submitted,

/s/ *Douglas L. Kilby*

Ilana H. Eisenstein (pro hac vice forthcoming)
Ben C. Fabens-Lassen (pro hac vice forthcoming)
Danielle T. Morrison (pro hac vice forthcoming)
Jonathan Green (pro hac vice forthcoming)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Phone: 215-656-3300
Fax: 215-656-3301
Email: ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com
danielle.morrison@dlapiper.com
jonathan.green@dlapiper.com

Christopher G. Oprison
Florida Bar No. 0122080
J. Trumon Phillips
Florida Bar No. 84568
DLA PIPER LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
Phone: 305-423-8500
Fax: 305-675-6366
Email: chris.oprison@dlapiper.com

Douglas L. Kilby
Florida Bar No. 0073407
Glenn Burhans, Jr.
Florida Bar No. 0605867
Bridget Smitha
Florida Bar No. 0709581
Christopher R. Clark
Florida Bar No. 1002388
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
Phone: (850) 580-7200
Email: dkilby@stearnsweaver.com
gburhans@stearnsweaver.com
bsmitha@stearnsweaver.com
crclark@stearnsweaver.com

Lauren Gallo White
(pro hac vice forthcoming)
Meng Jia Yang
(pro hac vice forthcoming)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Phone: (415) 947-2000

trumon.phillips@dlapiper.com
sheila.hall@dlapiper.com

Peter Karanjia (pro hac vice
forthcoming)
James J. Halpert (pro hac vice
forthcoming)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Phone: 202-799-4000
Fax: 202-799-5000
Email: peter.karanjia@dlapiper.com
jim.halpert@dlapiper.com


*Attorneys for Plaintiff
NetChoice, LLC*

Email: lwhite@wsgr.com
mjyang@wsgr.com

Brian M. Willen
(pro hac vice forthcoming)
Steffen N. Johnson
(pro hac vice forthcoming)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K St NW
Washington, DC 20006
Phone: (202) 973-8800
Email: bwillen@wsgr.com
sjohnson@wsgr.com


*Attorneys for Plaintiff Computer &
Communications Industry Association*

#9518293 v2

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


NETCHOICE, LLC et al.,

        Plaintiffs,

v.                                CASE NO.  4:21cv220-RH-MAF

ASHLEY BROOKE MOODY et al.,

        Defendants.

_____/


## PRELIMINARY INJUNCTION


The State of Florida has adopted legislation that imposes sweeping requirements on some but not all social-media providers. The legislation applies only to large providers, not otherwise-identical but smaller providers, and explicitly exempts providers under common ownership with any large Florida theme park. The legislation compels providers to host speech that violates their standards—speech they otherwise would not host—and forbids providers from speaking as they otherwise would. The Governor's signing statement and numerous remarks of legislators show rather clearly that the legislation is viewpoint-based. And parts contravene a federal statute. This order preliminarily

enjoins enforcement of the parts of the legislation that are preempted or violate the First Amendment.

I. The Lawsuit

The plaintiffs are NetChoice, LLC and Computer & Communications Industry Association. Both are trade associations whose members include social-media providers subject to the legislation at issue. The plaintiffs assert the rights of their affected members and have standing to do so. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).

The defendants are the Attorney General of Florida, the members of the Florida Elections Commission, and a Deputy Secretary of the Florida Department of Management Services, all in their official capacities. The plaintiffs named the Deputy Secretary because the Secretary's position was vacant. Each of the defendants has a role in enforcement of the provisions at issue and is a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908). For convenience, this order sometimes refers to the defendants simply as "the State."

The complaint challenges Senate Bill 7072 as adopted by the 2021 Florida Legislature ("the Act"). The Act created three new Florida statutes: § 106.072, § 287.137, and § 501.2041. The Act also included findings and a severability clause. The Act is scheduled to take effect on July 1, 2021.

Count 1 of the complaint alleges the Act violates the First Amendment's free-speech clause by interfering with the providers' editorial judgment, compelling speech, and prohibiting speech. Count 2 alleges the Act is vague in violation of the Fourteenth Amendment. Count 3 alleges the Act violates the Fourteenth Amendment's equal protection clause by impermissibly discriminating between providers that are or are not under common ownership with a large theme park and by discriminating between providers that do or do not meet the Act's size requirements. Count 4 alleges the Act violates the Constitution's dormant commerce clause. Count 5 alleges the Act is preempted by 47 U.S.C. § 230(e)(3), which, together with § 230(c)(2)(A), expressly prohibits imposition of liability on an interactive computer service—this includes a social-media provider—for action taken in good faith to restrict access to material the service finds objectionable.

The plaintiffs have moved for a preliminary injunction. The motion has been fully briefed and orally argued. Each side has submitted evidentiary material. The motion is ripe for a decision.

## II. Preliminary-Injunction Standard

As a prerequisite to a preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and

that the injunction will not be adverse to the public interest. *See*, *e.g.*, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

This order addresses these prerequisites. The order addresses the merits because likelihood of success on the merits is one of the prerequisites. With further factual development, the analysis may change. Statements in this order about the facts should be understood to relate only to the current record and the properly considered material now available. Statements about the merits should be understood only as statements about the likelihood of success as viewed at this time.

III. The Statutes

A. Terminology

Before setting out the substance of the challenged statutes, a word is in order about terminology. This order sometimes uses the term "social-media provider" to refer to what most people on the street would probably understand that term to mean—so YouTube, Facebook, Twitter, and dozens of smaller but similar providers. The distinguishing characteristic is perhaps this: the primary function of a social-media provider, or at least *a* primary function, is to receive content from users and in turn to make the content available to other users. This is hardly a precise definition, but none is needed; the term is used only for purposes of this

order. The term "social-media provider," as used in this order, is not limited to providers who are covered by the challenged statutes; the term is used instead to apply to all such entities, including those smaller than the providers covered by the statutes and those under common ownership with a large theme park.

The challenged statutes, in contrast, use a slightly different term, "social media *platform*." See Fla. Stat. § 501.2041(1)(g) (emphasis added). There is no significance to this order's use of "provider" to describe all social-media entities instead of "platform"—the word the statutes use to define the more limited set of entities covered by the statutes. The order just needs different terms to refer to the substantially different sets of entities.

When this order uses "social media platform"—the statutory term—with or without quotation marks, the reference ordinarily will be to an entity that both meets the statutory definition *and* is a social-media provider as described above. This order sometimes shortens the phrase to a single word: "platform." At least on its face, the statutory definition also applies to systems nobody would refer to as social media; the definition says nothing about sharing content with other users. The State says the definition should nonetheless be understood to be limited to providers of social media within the common understanding—the State says this comports with the statutory findings and the statutes' obvious purpose. The State may be correct. For present purposes it makes no difference.

B. Removing Candidates

A social-media provider sometimes bars a specific user from posting on the provider's site. This can happen, for example, when a user violates the provider's standards by engaging in fraud, spreading a foreign government's disinformation, inciting a riot or insurrection, providing false medical or public-health information, or attempting to entice minors for sexual encounters.

Newly enacted Florida Statutes § 106.072 prohibits a social media platform from barring from its site any candidate for office—that is, any person who has filed qualification papers and subscribed to the candidate's oath. *See* Fla. Stat. § 106.011(3)(e). It is a low bar.

C. Posts "By or About" a Candidate

A social-media provider sometimes takes down a user's post, sometimes restricts access to a post, and sometimes adds content to a post, saying, for example, that a post has been determined not to be true or that accurate information on the subject can be found at a specified location. And a social-media provider sometimes rearranges content on its site, including, for example, by making more readily available to a user content the provider believes the user will most wish to see. Social-media providers also often elevate content—make it more readily available to chosen users—when paid by advertisers to do so. Social-media providers routinely use algorithms as part of these processes.

Florida Statutes § 501.2041(2)(h) prohibits a social media platform from using "post-prioritization or shadow banning algorithms" for content "posted by or about a user" who is known by the platform to be a candidate for office. The statute does not define "about" a candidate. "Post-prioritization" means "action by a social media platform to place, feature, or prioritize certain content or material ahead of, below, or in a more or less prominent position than others in a newsfeed, a feed, a view, or in search results." Fla. Stat. § 501.2041(1)(e). But the term does not apply to ads—to content the platform is paid to carry. *Id*. "Shadow ban" means action by a social media platform "to limit or eliminate the exposure of a user or content or material posted by a user to other users of the social media platform." *Id*. § 501.2041(1)(f).

At least by its terms, § 501.2041(2)(h) apparently prohibits a social media platform from using an algorithm to put a candidate's post in the proper feeds—to put the post in the feed of a user who wishes to receive it or to exclude the candidate's post from the feed of a user who does not wish to receive it. Including a post in the feed of a user who wishes to receive it places the post ahead of and in a more prominent position that the many posts the user will not receive at all. Excluding a post from the feed of a user who does not wish to receive it will eliminate the user's exposure to the post.

In any event, the statute does not explain how, if the platform cannot use an algorithm "for content" by or about a candidate, the platform can know, before it has violated the statute by using an algorithm, whether a post is by or about a candidate.

The statute has a paid-content exception to the post-prioritization ban: post-prioritization of "certain content or material" from or about a candidate based on payments from the candidate or a third party is not a violation. The statute does not specify what "certain" refers to—if it just means all such paid content, the word "certain" is superfluous. But the whole paid-content exception may be superfluous anyway; the definition of post-prioritization has its own paid-content exception. *See id.* § 501.2041(1)(e).

D. Posts by a "Journalistic Enterprise"

Florida Statutes § 501.2041(2)(j) prohibits a social media platform from taking action to "censor, deplatform, or shadow ban" a "journalistic enterprise" based on the content of its publication or broadcast. "Censor" is broadly defined to include not just deleting content but *adding* content:

> "Censor" includes any action taken by a social media platform to delete, regulate, restrict, edit, alter, inhibit the publication or republication of, suspend a right to post, remove, or post an addendum to any content or material posted by a user. The term also includes actions to inhibit the ability of a user to be viewable by or to interact with another user of the social media platform.

Fla. Stat. § 501.2041(1)(b). "Deplatform" means to ban a user permanently or for longer than 14 days. *Id*. § 501.2041(1)(c). "Shadow ban" has the meaning set out above. *See id*. § 501.2041(1)(f).

The statute defines "journalistic enterprise" in a manner that covers many entities that are engaged in journalism but many that are not; any retailer who does business in Florida, has a website of substantial size, and fills 100,000 online orders per month apparently qualifies. A small newspaper, in contrast—one with fewer than 50,000 paid subscribers and fewer than 100,000 active monthly users— does not qualify, no matter how high its journalistic standards. The definition provides:

> "Journalistic enterprise" means an entity doing business in Florida that:
>
> 1. Publishes in excess of 100,000 words available online with at least 50,000 paid subscribers or 100,000 monthly active users;
>
> 2. Publishes 100 hours of audio or video available online with at least 100 million viewers annually;
>
> 3. Operates a cable channel that provides more than 40 hours of content per week to more than 100,000 cable television subscribers; or
>
> 4. Operates under a broadcast license issued by the Federal Communications Commission.

Fla. Stat. § 501.2041(1)(d).

The restrictions on a platform's treatment of posts by journalistic enterprises have two exceptions: they do not apply to obscenity or paid content.

E.  Opting Out of Post-Prioritization and Shadow Banning

Florida Statutes § 501.2041(2)(f) requires a social media platform to "[c]ategorize" algorithms used for post-prioritization and shadow banning and to allow a "user" to "opt out of post-prioritization and shadow banning algorithm categories to allow sequential or chronological posts and content." On its face, this allows a user who posts content to insist it be shown to other users in chronological order—not in the order the recipient has otherwise specified or the order that, based on the recipient's profile and history, the social media platform believes would be most preferred by or useful to the recipient. It is not clear how a social media platform would display content posted by multiple users who all opt out—a wild west of content on which the platform would be prohibited from using an algorithm.

The State says, though, that "user" in § 501.2041(2)(f) means only a recipient of information, not a person who posts information. But "user" is explicitly defined in the statute to mean a person who resides or is domiciled in Florida and "has an account on a social media platform, regardless of whether the person posts or has posted content or material to the social media platform." *Id*. § 501.2041(1)(h). Those who post content have accounts, no less than those who

receive content. And "user" is consistently used in other provisions to include those who post content, not just recipients. *See, e.g.*, *id*. § 501.2041(2)(d) (prohibiting a social media platform from censoring or shadow banning "a user's content" or deplatforming "a user" without meeting specific conditions); *id.* § 501.2041(2)(e) (allowing "a user" to request the number of participants "who were provided or shown *the user's content or posts*") (emphasis added); *id*. § 501.2041(2)(h) (restricting treatment of content "posted by . . . a *user*") (emphasis added); *see also id*. § 501.2041(2)(b), (c), (g) & (i).

F.  Consistent Application of Standards

Florida Statutes § 501.2041(2)(a) requires a social media platform to "publish the standards, including detailed definitions, it uses or has used for determining how to censor, deplatform, and shadow ban." And § 501.2041(2)(b) requires a social media platform to "apply censorship, deplatforming, and shadow banning standards in a consistent manner among its users on the platform." The State says "standards," in § 501.2041(2)(b), means the platform's own standards, as published under § 501.2041(2)(a). That is probably correct.

The statute does not define "consistent manner." And the statute does not address what a social media platform should do when the statute itself prohibits consistent application of the platform's standards—for example, when a candidate engages in conduct that would appropriately lead to deplatforming any other

person, or when content "by or about" a candidate, if by or about anyone else, would be post-prioritized, or when a "journalistic enterprise" posts content that would otherwise be censored.

G. Changing the Standards

Florida Statutes § 501.2041(2)(c) prohibits a social media platform from changing its "user rules, terms, and agreements"—this apparently includes the standards published under § 501.2041(2)(a)—more often than once every 30 days. The provision requires the social media platform to inform each user about any changes before they take effect.

H. Information

Florida Statutes § 501.2041(2) includes additional provisions requiring social media platforms to provide information to users.

Under § 501.2042(2)(d), a platform must give notice to a user who is deplatformed or who posts content that is censored or shadow banned. Under § 501.2041(2)(i), the platform must allow a deplatformed user access to the user's content for 60 days after the notice. The notice for censored content must be especially detailed: it must include a "thorough rationale explaining the reason that the social media platform censored the user," § 501.2041(3)(c), and a "precise and thorough explanation of how the social media platform became aware of the censored content or material, including a thorough explanation of the algorithms

used, if any, to identify or flag the user's content or material as objectionable." *Id*. § 501.2041(3)(d). The notice need not be given, however, for censored content that is obscene. *Id*. § 501.2041(4).

Under § 501.2041(2)(e), a platform must, on request, tell a user how many other participants were shown the user's posts or content.

Under § 501.2041(2)(g), a platform must provide users annual notice of algorithms used for post-prioritization and shadow banning and of their right to opt out of the use of those algorithms.

I. Antitrust

Florida Statutes § 287.137 allows the State to debar from public contracting a social media platform that has committed, or sometimes just been accused of, an antitrust violation. The section raises issues under both state and federal law, but it poses no threat of immediate, irreparable harm to social media platforms. The statute is not further addressed in, or enjoined by, this order.

IV. Likelihood of Success on the Merits

A. 47 U.S.C. § 230

In *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710, at *3–4 (N.Y. Sup. Ct. May 24, 1995), an anonymous user posted allegedly defamatory content on an electronic bulletin board—an earlier version of what today might be called social media. The court said that if the provider of such a

bulletin board did not undertake to review posted content—much as a librarian does not undertake to review all the books in a library—the provider would not be deemed the publisher of a defamatory post, absent sufficient actual knowledge of the defamatory nature of the content at issue. On the facts of that case, though, the provider undertook to screen the posted content—to maintain a "family oriented" site. The court held this subjected the provider to liability as a publisher of the content.

At least partly in response to that decision, which was deemed a threat to development of the internet, Congress enacted 47 U.S.C. § 230. Congress sought "to encourage service providers to self-regulate the dissemination of offensive material over their services," *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997), and to allow "computer service providers to establish standards of decency without risking liability for doing so," *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir. 2021).

Under § 230, a provider of interactive computer services—this includes, as things have evolved, a social-media provider—cannot be "held liable" for any action "taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." *Id*. § 230(c)(2). The statute says it does not prevent a state from enforcing any *consistent* state law—the federal statute thus

does not preempt the field—but the statute does expressly preempt *inconsistent* state laws: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3).

Florida Statutes § 106.072 prohibits a social media platform from deplatforming a candidate for office and imposes substantial fines: $250,000 per day for a statewide office and $25,000 per day for any other office. But deplatforming a candidate restricts access to material the platform plainly considers objectionable within the meaning of 47 U.S.C. § 230(c)(2). If this is done in good faith—as can happen—the Florida provision imposing daily fines is preempted by § 230(e)(3). Good faith, for this purpose, is determined by federal law, not state law. Removing a candidate from a platform based on otherwise-legitimate, generally applicable standards—those applicable to individuals who are not candidates—easily meets the good-faith requirement. Indeed, even a mistaken application of standards may occur in good faith.

The federal statute also preempts the parts of Florida Statutes § 501.2041 that purport to impose liability for other decisions to remove or restrict access to content. *See* Fla. Stat. § 501.2041(6) (creating a private right of action for damages for violations of § 501.2041(2)(b) and (2)(d)1; *id*. § 501.2041(2)(b) (requiring a social media platform to apply censorship, deplatforming, and shadow banning standards in a consistent manner); *id*. § 501.2041(2)(d)1 (prohibiting a social

media platform from deplatforming a user or censoring or shadow banning a user's content without notifying the user); § 501.2041(2) (making any violation of that subsection an unfair or deceptive act or practice within the meaning of § 501.204—and thus providing a private right of action for damages under § 501.211).

Claims based on alleged inconsistency of a platform's removal of some posts but not others are preempted. *See Domen*, 991 F.3d at 73.

In sum, the plaintiffs are likely to prevail on their challenge to the preempted provisions—to those applicable to a social media platform's restriction of access to posted material. This does not, however, invalidate other provisions; for those, the plaintiffs' challenge must rise or fall with their constitutional claims.

B. First Amendment

1. Application to Social-Media Providers

Although a primary function of social-media providers is to receive content from users and in turn to make the content available to other users, the providers routinely manage the content, allowing most, banning some, arranging content in ways intended to make it more useful or desirable for users, sometimes adding the providers' own content. The plaintiffs call this curating or moderating the content posted by users. In the absence curation, a social-media site would soon become unacceptable—and indeed useless—to most users.

The plaintiffs say—correctly—that they use editorial judgment in making these decisions, much as more traditional media providers use editorial judgment when choosing what to put in or leave out of a publication or broadcast. The legislative record is chock full of statements by state officials supporting the view that the providers do indeed use editorial judgment. A constant theme of legislators, as well as the Governor and Lieutenant Governor, was that the providers' decisions on what to leave in or take out and how to present the surviving material are ideologically biased and need to be reined in.

Where social media fit in traditional First Amendment jurisprudence is not settled. But three things are clear.

First, the State has asserted it is on the side of the First Amendment; the plaintiffs are not. It is perhaps a nice sound bite. But the assertion is wholly at odds with accepted constitutional principles. The First Amendment says "Congress" shall make no law abridging the freedom of speech or of the press. The Fourteenth Amendment extended this prohibition to state and local governments. The First Amendment does not restrict the rights of private entities not performing traditional, exclusive public functions. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019). So whatever else may be said of the providers' actions, they do not violate the First Amendment.

Second, the First Amendment applies to speech over the internet, just as it applies to more traditional forms of communication. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (stating that prior cases, including those allowing greater regulation of broadcast media, "provide no basis for qualifying the level of First Amendment scrutiny that should be applied" to the internet).

Third, state authority to regulate speech has not increased even if, as Florida argued nearly 50 years ago and is again arguing today, one or a few powerful entities have gained a monopoly in the marketplace of ideas, reducing the means available to candidates or other individuals to communicate on matters of public interest. In *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), the Court rejected just such an argument, striking down a Florida statute requiring a newspaper to print a candidate's reply to the newspaper's unfavorable assertions. A similar argument about undue concentration of power was commonplace as the social-media restrictions now at issue advanced through the Florida Legislature. But here, as in *Tornillo*, the argument is wrong on the law; the concentration of market power among large social-media providers does not change the governing First Amendment principles. And the argument is also wrong on the facts. Whatever might be said of the largest providers' monopolistic conduct, the internet provides a greater opportunity for individuals to publish their views—and for candidates to communicate directly with voters—than existed before the internet

arrived. To its credit, the State does not assert that the dominance of large

providers renders the First Amendment inapplicable.

That brings us to issues about First Amendment treatment of social-media

providers that are not so clearly settled. The plaintiffs say, in effect, that they

should be treated like any other speaker. The State says, in contrast, that social-

media providers are more like common carriers, transporting information from one

person to another much as a train transports people or products from one city to

another. The truth is in the middle.

More generally, the plaintiffs draw support from three Supreme Court

decisions in which a state mandate for a private entity to allow unwanted speech

was held unconstitutional. On the State's side are two Supreme Court decisions in

which a state or federal mandate for a private entity to allow unwanted speech was

held constitutional. Each side claims the cases on its side are dispositive, but this

case again falls in the middle. On balance, the decisions favor the plaintiffs.

The plaintiffs push hardest of *Tornillo*, which, as set out above, held

unconstitutional the Florida statute requiring a newspaper to allow a candidate to

reply to the newspaper's unfavorable statements. But newspapers, unlike social-

media providers, create or select all their content, including op-eds and letters to

the editor. Nothing makes it into the paper without substantive, discretionary

review, including for content and viewpoint; a newspaper is not a medium invisible

to the provider. Moreover, the viewpoint that would be expressed in a reply would be at odds with the newspaper's own viewpoint. Social media providers, in contrast, routinely use algorithms to screen all content for unacceptable material but usually not for viewpoint, and the overwhelming majority of the material never gets reviewed except by algorithms. Something well north of 99% of the content that makes it onto a social media site never gets reviewed further. The content on a site is, to that extent, invisible to the provider.

Similarly, in *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U. S. 557 (1995), a state court ruled that the state's public-accommodation law required an association conducting a private parade to allow participation by an organization advocating gay rights. The parade association asserted the gay-rights group's participation would contravene what the association was attempting to communicate. The Supreme Court held the association had a First Amendment right to exclude the gay-rights group. Again, though, the parade involved a limited number of participants, all undoubtedly approved in the association's discretionary judgment, including for viewpoint. This was not an invisible-to-the-provider event.

The third case on the plaintiffs' side is *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1 (1986). There a public utility included in its billing envelopes its own viewpoint-laden newsletters. The state

directed the utility to include in its billing envelopes four times per year a private watchdog organization's newsletters setting out a viewpoint with which the utility disagreed. The Supreme Court held this unconstitutional. The utility undoubtedly knew precisely what went into its billing envelopes and newsletters; as in *Tornillo* and *Hurley*, this was not an invisible-to-the-provider forum.

These three cases establish that a private party that creates or uses its editorial judgment to select content for publication cannot be required by the government to also publish other content in the same manner—in each of these instances, content with which the party disagreed. But social-media providers do not use editorial judgment in quite the same way. The content on their sites is, to a large extent, invisible to the provider.

Even so, the activities of social media platforms that are the focus of the statutes now at issue are not the routine posting of material without incident or the routine exclusion without incident of plainly unacceptable content. These statutes are concerned instead primarily with the ideologically sensitive cases. Those are the very cases on which the platforms are most likely to exercise editorial judgment. Indeed, the targets of the statutes at issue are the editorial judgments themselves. The State's announced purpose of balancing the discussion—reining in the ideology of the large social-media providers—is precisely the kind of state action held unconstitutional in *Tornillo*, *Hurley*, and *PG&E*.

On the other side, the State pushes hardest on *Rumsfeld v. FAIR*, 547 U.S. 47 (2006). There the Court upheld a federal statute conditioning law schools' receipt of federal funds on allowing military recruiters the same access as other recruiters to the school's facilities and students. The Court held this was, for the most part, conduct, not speech. Indeed, the schools objected not primarily because they disagreed with anything they expected the recruiters to do or say on campus, but because they disagreed with the government's policy on gays in the military. The statute did not require the schools to say anything at all, nor did the statute prohibit the schools from saying whatever they wished whenever and however they wished. It was unlikely anyone would conclude, from the military recruiters' presence, that the schools supported the military's policy.

Similarly, in *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), a shopping center refused to allow individuals to solicit petition signatures from members of the public at the shopping center. The California Supreme Court held the individuals had the right, under state law, to engage in the proposed activity. The ruling did not compel the shopping center to say anything at all, and the ruling did not prohibit the center from saying anything it wished, when and how it wished. The United States Supreme Court said it was unlikely anyone would attribute the solicitation activities to the shopping center and, with no state action

compelling the center to speak or restricting it from doing so, there was no violation of the First Amendment.

*FAIR* and *PruneYard* establish that compelling a person to allow a visitor access to the person's property, for the purpose of speaking, is not a First Amendment violation, so long as the person is not compelled to speak, the person is not restricted from speaking, and the message of the visitor is not likely to be attributed to the person. The Florida statutes now at issue, unlike the state actions in *FAIR* and *PruneYard*, explicitly forbid social media platforms from appending their own statements to posts by some users. And the statutes compel the platforms to change their own speech in other respects, including, for example, by dictating how the platforms may arrange speech on their sites. This is a far greater burden on the platforms' own speech than was involved in *FAIR* or *PruneYard*.

In sum, it cannot be said that a social media platform, to whom most content is invisible to a substantial extent, is indistinguishable for First Amendment purposes from a newspaper or other traditional medium. But neither can it be said that a platform engages only in conduct, not speech. The statutes at issue are subject to First Amendment scrutiny.

2.  Strict Scrutiny

Viewpoint- and content-based restrictions on speech are subject to strict scrutiny. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015). A law

restricting speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163 (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 563-64 (2011), *Carey v. Brown*, 447 U.S. 455, 462 (1980), and *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Laws that are facially content-neutral, but that cannot be justified without reference to the content of the regulated speech, or that were adopted because of disagreement with the speaker's message, also must satisfy strict scrutiny. *See Reed*, 576 U.S. at 164.

These principles plainly require strict scrutiny here. The Florida statutes at issue are about as content-based as it gets. Thus, for example, § 106.072 applies to deplatforming a candidate, not someone else; this is a content-based restriction. Similarly, § 501.2041(2)(h) imposes restrictions applicable only to material posted "by or about a candidate." This again is content-based. And § 501.2041(2)(j) prohibits a social media platform from taking action based on the "content" of a journalistic enterprise's post; prohibiting a platform from making a decision based on content is itself a content-based restriction. That the statutes are content-based in these and other respects triggers strict scrutiny.

The plaintiffs assert, too, with substantial factual support, that the actual motivation for this legislation was hostility to the social media platforms' perceived liberal viewpoint. Thus, for example, the Governor's signing statement quoted the bill's sponsor in the House of Representatives: "Day in and day out, our

freedom of speech as conservatives is under attack by the 'big tech' oligarchs in Silicon Valley. But in Florida, we said this egregious example of biased silencing will not be tolerated." Similarly, in another passage quoted by the Governor, the Lieutenant Governor said, "What we've been seeing across the U.S. is an effort to silence, intimidate, and wipe out dissenting voices by the leftist media and big corporations. . . . Thankfully in Florida we have a Governor that fights against big tech oligarchs that contrive, manipulate, and censor if you voice views that run contrary to their radical leftist narrative." This viewpoint-based motivation, without more, subjects the legislation to strict scrutiny, root and branch. *See, e.g.*, *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.") (citing *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

Moreover, these statements are consistent with the statutory definition of "social media platform," which extends only to, and thus makes the legislation applicable only to, large entities—those with $100 million in revenues or 100 million monthly participants. As the Supreme Court has recognized, discrimination between speakers is often a tell for content discrimination. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("Speech restrictions

based on the identity of the speaker are all too often simply a means to control content."). That is the case here. The state has suggested no other basis for imposing these restrictions only on the largest providers. And even without evidence of an improper motive, the application of these requirements to only a small subset of social-media entities would be sufficient, standing alone, to subject these statutes to strict scrutiny. *See, e.g.*, *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 591 (1983); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229 (1987).

Similar analysis applies to the treatment of "journalistic enterprises" in § 501.2041(2)(j). The statute affords their posts favored treatment—but to qualify, an entity must meet the minimum size requirement of § 501.2041(1)(d).

Finally, the same is true of the exclusion for social-media providers under common ownership with a large Florida theme park. The State asserted in its brief that the provision could survive intermediate scrutiny, but the proper level of scrutiny is strict, and in any event, when asked at oral argument, the State could suggest no theory under which the exclusion could survive even intermediate scrutiny. The State says this means only that the exclusion fails, but that is at least questionable. Despite the obvious constitutional issue posed by the exclusion, the Legislature adopted it, apparently unwilling to subject favored Florida businesses to the statutes' onerous regulatory burdens. It is a stretch to say the severability

clause allows a court to impose these burdens on the statutorily excluded entities

when the Legislature has not passed, and the Governor has not signed, a statute

subjecting these entities to these requirements.

To survive strict scrutiny, an infringement on speech must further a

compelling state interest and must be narrowly tailored to achieve that interest.

*See, e.g.*, *Reed*, 576 U.S. at 171. These statutes come nowhere close. Indeed, the

State has advanced no argument suggesting the statutes can survive strict scrutiny.

They plainly cannot. First, leveling the playing field—promoting speech on one

side of an issue or restricting speech on the other—is not a legitimate state interest.

*See, e.g.*, *Arizona Free Enter. Club v. Bennett*, 564 U.S. 721, 749-50 (2011).

Whatever might be said of any other allegedly compelling state interest, these

statutes are not narrowly tailored. Like prior First Amendment restrictions, this is

an instance of burning the house to roast a pig. *See, e.g.*, *Reno v. ACLU*, 521 U.S.

at 882; *Sable Commc'n of Cal., Inc. v. FCC*, 492 U.S. 115, 131 (1989).

The plaintiffs are likely to prevail on the merits of their claim that these

statutes violate the First Amendment. There is nothing that could be severed and

survive.

### 3. Intermediate Scrutiny

The result would be the same under intermediate scrutiny—the level of

scrutiny that applies to some content-neutral regulations of speech. To survive

intermediate scrutiny, a restriction on speech must further an important or substantial governmental interest unrelated to the suppression of free expression, and the restriction must be no greater than essential to further that interest. The narrow tailoring requirement is satisfied so long as the governmental interest would be achieved less effectively absent the restriction. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994).

The provisions at issue here do not meet the narrow-tailoring requirement. Indeed, some of the disclosure provisions seem designed not to achieve any governmental interest but to impose the maximum available burden on the social media platforms.

Intermediate scrutiny does not apply because these statutes are not content- or viewpoint-neutral. And the statutes would not survive intermediate scrutiny even if it applied.

C. Vagueness

Florida Statutes § 501.2041 is riddled with imprecision and ambiguity. But this, without more, does not render the statute unconstitutional. As the State correctly notes, uncertainty about a statute's application to marginal cases—or even to not-so-marginal cases—can be resolved through judicial construction. But violations of this statute subject a social media platform to statutory damages that seem more punitive than compensatory: up to $100,000 per claim.

Two provisions are especially vague. First, § 501.2041(2)(b) requires a social media platform to apply its standards in a consistent manner, but as set out *supra* at 12, this requirement is itself inconsistent with other provisions. Second, § 501.2041(2)(h) imposes a requirement that, as set out *supra* at 7-8, is incomprehensible. Vagueness presents heightened concern in a statute that, like this one, trenches on First Amendment interests. *See, e.g.*, *Wollschlaeger v. Gov., Fla.*, 848 F.3d 1293, 1320 (11th Cir. 2017).

This order need not and does not decide whether vagueness would provide an independent ground for a preliminary injunction.

V. Other Prerequisites

The plaintiffs easily meet the other prerequisites to a preliminary injunction. If a preliminary injunction is not issued, the plaintiffs' members will sometimes be compelled to speak and will sometimes be forbidden from speaking, all in violation of their editorial judgment and the First Amendment. This is irreparable injury. The threatened injury outweighs whatever damage the injunction may cause the State. And the injunction will serve, not be adverse to, the public interest. When a plaintiff is likely to prevail on the merits of a First Amendment claim, these other prerequisites to a preliminary injunction are usually met. *See, e.g.*, *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020).

VI. Conclusion

The legislation now at issue was an effort to rein in social-media providers

deemed too large and too liberal. Balancing the exchange of ideas among private

speakers is not a legitimate governmental interest. And even aside from the actual

motivation for this legislation, it is plainly content-based and subject to strict

scrutiny. It is also subject to strict scrutiny because it discriminates on its face

among otherwise-identical speakers: between social-media providers that do or do

not meet the legislation's size requirements and are or are not under common

ownership with a theme park. The legislation does not survive strict scrutiny. Parts

also are expressly preempted by federal law.

For these reasons,

IT IS ORDERED:

1. The plaintiffs' motion for a preliminary injunction, ECF No. 22, is

granted.

2. The defendants Ashley Brooke Moody, Joni Alexis Poitier, Jason Todd

Allen, John Martin Hayes, Kymberlee Curry Smith, and Patrick Gillespie must

take no steps to enforce Florida Statutes §§ 106.072 or 501.2041 until otherwise

ordered. The preliminary injunction set out in this paragraph will take effect upon

the posting of security in the amount of $1,000, or an undertaking to pay up to

$1,000, for costs and damages sustained by a party found to have been wrongfully

enjoined.  The preliminary injunction binds the defendants and their officers,

agents, servants, employees, and attorneys—and others in active concert or

participation with any of them—who receive actual notice of this injunction by

personal service or otherwise.

SO ORDERED on June 30, 2021.

s/Robert L. Hinkle
United States District Judge