# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

NETCHOICE, LLC d/b/a NETCHOICE, a 501(c)(6) District of Columbia organization; and COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION d/b/a CCIA, a 501(c)(6) non-stock Virginia corporation,

    Plaintiffs,

v.

ASHLEY BROOKE MOODY, in her official capacity as Attorney General of the State of Florida; JONI ALEXIS POITIER, in her official capacity as Commissioner of the Florida Elections Commission; JASON TODD ALLEN, in his official capacity as Commissioner of the Florida Elections Commission; JOHN MARTIN HAYES, in his official capacity as Commissioner of the Florida Elections Commission; KYMBERLEE CURRY SMITH, in her official capacity as Commissioner of the Florida Elections Commission; and PATRICK GILLESPIE, in his official capacity as Deputy Secretary of Business Operations of the Florida Department of Management Services,

    Defendants.

**Civil Action No.
4:21-cv-00220-RH-MAF**

## JOINT REPORT OF RULE 26 INITIAL CONFERENCE

1

The Parties held a Rule 26(f) conference by telephone on July 16, 2021. In accordance with Rule 26(f) and Local Rule 16.1, and the Court's Initial Scheduling Order dated June 10, 2021, the Parties to this action jointly submit the following report.

## I. Nature of the Case

Plaintiffs challenged Florida Senate Bill 7072 (S.B. 7072), which seeks to regulate how "social media platforms," as defined by the statute, moderate content posted by third parties. Plaintiffs allege that the statute violates the First Amendment, the Due Process Clause under the Fifth and Fourteenth Amendments, the Commerce Clause, and the Equal Protection Clause, and that the law is preempted by Section 230 of the Communications Decency Act. Shortly after filing the Complaint, Plaintiffs moved to preliminarily enjoin enforcement of the statute. The Court granted Plaintiffs' motion, and the preliminary injunction took effect on June 30, 2021. The State Defendants filed their answer and defenses on July 15, 2021, contending, *inter alia*, that the challenged law passes constitutional muster and that, insofar as Section 230 would purport to shield Plaintiffs and their members from the provisions of the challenged law, Section 230 is unconstitutional as applied.

Plaintiffs' Position

This constitutional challenge to S.B. 7072 turns on overwhelmingly legal as opposed to factual issues. Plaintiffs' Complaint asserts four claims based on constitutional violations and one claim based on preemption under Section 230. The violations of the First Amendment and other constitutional provisions, as well as the conflict with Section 230, are apparent from the plain text of the statute's provisions. Likewise, the discriminatory motivations behind the statute are equally clear from, among other things, official public statements made by the Governor and legislators in promoting and passing this law. Because this case can readily be resolved on legal grounds with little, if any, further factual development, extensive discovery is not necessary and would only serve to delay the proceedings.

In the interest of efficiently resolving this dispute, Plaintiffs intend to file an early motion for summary judgment well before the close of discovery. The motion will set forth why the claims in the Complaint should be resolved in Plaintiffs' favor based on the text of S.B. 7072, the relevant legal authorities, materials in the public record, and limited facts that are not subject to genuine dispute. By establishing why S.B. 7072 is unconstitutional and why Plaintiffs are entitled to judgment on the legal issues, the motion will in turn demonstrate the lack of any need for discovery, much less the extensive and highly burdensome discovery that the State apparently contemplates. If the State continues to insist on wide-ranging

demands and/or subpoenas, it should demonstrate a legitimate and compelling need and basis for such discovery in response to Plaintiffs' motion for summary judgment. *See, e.g.*, *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598 (S.D. Miss. 2015) (recognizing that a state Attorney General's subpoena that "interfere[d] with Google's [editorial] judgment" would "likely produce a chilling effect on Google's protected speech, thereby violating Google's First Amendment rights"), *vacated and remanded on procedural grounds,* 822 F.3d 212 (5th Cir. 2016); *see also Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963) ("[I]t is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech . . . that the State convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest.").

State Defendants' Position

S.B. 7072 regulates the content moderation decisions of social media platforms, and Plaintiffs' flagship claim is that such regulation violates the First Amendment. To prevail on this theory, Plaintiffs must establish as a threshold matter that the First Amendment protects their members' choices about which user-generated content to host. Resolving this threshold issue will require the Court to answer questions of fact as well as law. How, as a practical matter, do Plaintiffs' members decide which content to host and present to viewers? To what extent do

Plaintiffs' members intend to convey a message or curate speech around a central theme through their content moderation decisions? What do Plaintiffs' members mean when they disclaim responsibility for the speech they host in their terms of service? The Court cannot decide whether key provisions of S.B. 7072 regulate social media platforms' speech without first answering these and other questions of fact. Many of the same and other related questions are also important to Plaintiffs' preemption claim, which rests in part on Plaintiffs' contention that their members exercise editorial judgment through their content moderation decisions.

If the Court concludes that S.B. 7072 regulates activity protected by the First Amendment, it will then need to determine the appropriate level of scrutiny. This issue also depends in part on questions of fact. Common carriers are entitled, at most, to very modest First Amendment protection, and common carrier status turns in part on the extent of an entity's market power and the availability of alternate means by which consumers can obtain the service the entity offers. Moreover, intermediate rather than strict scrutiny is the appropriate level of scrutiny for certain regulations of speech by entities that are bottlenecks for the speech of others. Whether Plaintiffs' members are properly treated as common carriers and whether they are bottlenecks for their users' speech are thus additional legitimate topics for discovery. And whichever level of scrutiny the Court adopts, it will need to decide whether S.B. 7072 is justified in light of the nature and scope of the

problem this law addresses. Whether Plaintiffs' members engage in arbitrary and unfair content moderation decisions is therefore another legitimate topic for discovery.

Plaintiffs' other claims likewise turn on questions of fact as well as law. For example, Plaintiffs' dormant commerce clause claim depends in part on the extent to which S.B. 7072 burdens interstate commerce. And whether 47 U.S.C. § 230 is consistent with the First Amendment depends in part on the extent to which Plaintiffs' members coordinate their content moderation decisions with government actors.

While it is understandable that Plaintiffs would prefer to avoid discovery on these and other topics, they chose to file this lawsuit and must bear the ordinary burdens of civil litigation.

## II. Possibility of Settlement

Given the nature of this case, a settlement is highly unlikely. Nor do the Parties believe there are alternative dispute resolution processes that would be helpful in facilitating settlement.

## III. Proposed Timetables and Cutoff Dates

The Parties have not agreed to consolidate the preliminary injunction proceedings with any other phase of this litigation.

Plaintiffs' Position

In light of the Court's Initial Scheduling Order and Rule 16(b)(3)(A), Plaintiffs propose the following deadlines:

- Joinder of other parties: August 6, 2021
- Amendment of pleadings: August 6, 2021
- Completion of discovery: November 15, 2021 (per the Court's Initial Scheduling Order)
- Filing of dispositive motions: November 15, 2021

Plaintiffs oppose the State's request to extend the case schedule. In its Initial Scheduling Order, the Court set a discovery deadline of November 15, 2021 and a two-week trial period starting on February 22, 2022. It stated that "[t]hese dates will be moved earlier on an agreed motion or on a contested motion showing good cause. The parties should request a delay of these dates only for good cause."

The State seeks to prolong each remaining stage of the litigation by many months beyond the Court's established deadlines, far in excess of the minimal, if any, time needed for discovery in this case. The State does not attempt to explain why it needs that much time. This delay is apparently designed to give the State ample opportunity to engage in fishing expeditions while denying Plaintiffs the chance to secure permanent relief in a timely manner. Without a permanent injunction and a declaratory judgment invalidating the law, Plaintiffs and their

members are left exposed to private actions alleging violations of S.B. 7072's extremely broad provisions, each of which carries the threat of onerous statutory damages.[1] In short, the State falls far short of showing "good cause" to delay the proceedings, and such delay would cause substantial harm to Plaintiffs' members.

State Defendants' Position

To accommodate necessary third-party discovery from Plaintiffs' members and in light of the complexity and importance of the factual issues likely to be disputed in this case, Defendants propose that the Court extend the deadlines in its initial scheduling order as follows:

- Joinder of other parties: March 15, 2022
- Amendment of pleadings: March 15, 2022
- Completion of discovery: May 2, 2022
- Filing of dispositive motions: May 31, 2022

Defendants dispute Plaintiffs' position that the discovery cutoff and trial dates previously set by the Court should be maintained. The Court has since entered its Preliminary Injunction, enjoining the effectiveness of the challenged

---

[1] This threat is not hypothetical. For example, separate putative class actions have been filed against Facebook, Twitter, and YouTube in the Southern District of Florida, each seeking statutory, actual, and punitive damages under Section 501.2041, Fla. Stat, the new content-moderation law. ECF No. 21, *Trump et al v. Facebook, Inc. et al*, No. 1:21-cv-22440; ECF No. 16, *Trump et al v. Twitter, Inc et al*, No. 1:21-cv-22441; ECF No. 21, *Trump et al v. YouTube, LLC et al*, No. 1:21-cv-22445.

Florida law during the pendency of this action and preserving the status quo ante. Because the defenses properly asserted by Defendants will require discovery from third parties, in particular from some or all of Plaintiffs' members—the real plaintiff parties in interest here—and because Defendants reasonably anticipate protracted motion practice in connection with their discovery efforts, a discovery cutoff of November 15, 2021, is unreasonable, unnecessary, and highly prejudicial to Defendants to the point of denying them due process. For the same reason, a trial date of February 22, 2022, is unreasonable, unnecessary, and highly prejudicial to Defendants to the point of denying them due process.

**IV.     Initial Disclosures**

The Parties agree to make Rule 26(a)(1) initial disclosures on or before August 2, 2021. Rule 26(a)(2) and Rule 26(a)(3) disclosures will be made in compliance with the Court's Initial Scheduling Order.

**V.      Discovery Plan**

A. <u>Scope and Form of Discovery</u>

<u>Plaintiffs' Position</u>

As outlined above, little to no discovery is needed—much less the extensive and highly burdensome discovery that the State apparently contemplates—because the constitutionality and enforceability of S.B. 7072 turns on legal issues that can be resolved based on the statutory language, the governing case law,

publicly available information, and limited facts that are not subject to any genuine dispute. By no later than September 15, 2021, Plaintiffs intend to submit an early summary judgment motion that crystallizes those issues and articulates why the statute is both unconstitutional and preempted. Extensive discovery is not only unnecessary, but would also interfere with and chill the very First Amendment rights at issue in this case. *See supra* at 3-4 (citing cases).

Insofar as the State insists on pursuing aggressive discovery, Plaintiffs' early summary judgment motion will facilitate the efficient resolution of any remaining disagreement concerning the appropriate scope of discovery. The motion will confirm the key issues in dispute, and in response the State should be required to "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest," *Gibson*, 372 U.S. at 546. That is a streamlined approach that better enables the parties to narrow the areas of disagreement and would allow the Court to resolve them in the concrete context of Plaintiffs' motion rather than on a piecemeal basis in response to various discovery requests and/or subpoenas issued by Defendants.

If, despite Plaintiffs' proposed approach, the Parties do proceed to engage in more general discovery, Plaintiffs reserve the right to seek discovery from the State on topics including but not limited to: (1) the legislative intent, process, and communications related to the consideration and enactment of S.B. 7072; (2) any

information and data used to inform and support the legislative findings and provisions in S.B. 7072; (3) the scope of the law's impact on individuals and entities both within Florida and outside the State; and (4) the planned enforcement of the statute by the State and its various agents or agencies. Plaintiffs also reserve the right to seek to limit the number of discovery requests and/or depositions allotted to each Party for the sake of efficiency and preventing abusive practices.

State Defendants' Position

Plaintiffs' objection that Defendants must "demonstrate a legitimate and compelling need and basis" for "extensive and highly burdensome discovery" is misplaced and premature, misstates the law concerning the scope of the protections that the First Amendment affords a party opposing discovery, and mischaracterizes the discovery that Defendants intend to take.

As a threshold matter, Plaintiffs' objections are premature; an assertion of a First Amendment privilege or a claim of a potential chilling effect are to be raised and evaluated like any other privilege or alleged discovery burden, *i.e.*, in relation to specific discovery requests, Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense[.]") (emphasis added). Such objections cannot be interposed as a complete and *ab initio* bar to discovery.

Furthermore, in making their case for suppressing all discovery of evidence, Plaintiffs rely on two cases in which the subjects of ongoing government investigations sued to block the investigations on the ground that, if allowed to continue, they would chill their free speech. This is a far-cry from the situation here, where Plaintiffs are attempting to avoid the run-of-the-mill discovery obligations that the federal rules impose on all civil litigants. Plaintiffs have made no showing that discovery will seriously burden their First Amendment rights.

But even if they had, the information that Defendants intend to seek in discovery is highly relevant, necessary to the presentation of their case, and unavailable from other sources. For example, discovery regarding whether the platforms seek to convey a particular message through the content they host; the scope, meaning, and significance of their disclaiming in their terms of service of responsibility for that content; the extent to which the platforms exercise any editorial judgment in moderating content; and the extent to which the platforms constitute a bottleneck over their user's speech is essential for establishing whether the platforms are engaged in First Amendment activity at all and, if they are, what protections attach to that conduct under Supreme Court precedent. Discovery into these and other topics discussed above is essential to Defendants' case.

B. <u>Preservation of Potentially Discoverable Information</u>

The Parties have agreed to take reasonable measures to preserve potentially discoverable information and/or documents, including Electronically Stored Information (ESI), that is relevant to this litigation from alteration or destruction in the ordinary course of business. At this point, the Parties do not foresee issues concerning the preservation of discoverable information.

C. <u>Disclosure or Production of Electronic or Computer-Based Media</u>

Subject to the parties' positions concerning discovery in general (see Section V.A, *supra*), the Parties may request production of electronic or computer-based media ("Electronic Stored Information" or "ESI"). Electronic discovery shall be limited to ESI that is reasonably available and accessible to the responding party in the ordinary course of business. The term "ESI" shall include, but is not limited to: email, word processing documents, spreadsheets, presentation documents, images, audio, video, and audiovisual recordings, databases, computer systems (hardware and software), servers, archives, backup for disaster recovery systems, tapes, discs, drives, cartridges, and other storage media, handheld wireless devices, mobile telephones, and paging devices.

*Identification and Production of Discoverable ESI*: The Parties shall review all ESI that has been identified as containing relevant discoverable information for responsiveness and privilege. In accordance with the guidelines described herein,

the Parties shall produce ESI that is responsive and not privileged or otherwise protected. The producing party shall list on a privilege log any responsive ESI to which it claims a privilege or other protection.

*Scope and Cost Required*: The Parties do not expect that the cost and time required for disclosure or production of ESI will be beyond what is reasonably available and accessible to the Parties in the ordinary course of business.

*Form of Production of ESI*: ESI shall, to the extent possible, be produced in an accessible standard format and on a standard media (e.g., hard drive, thumb drive, or CD-ROM) or via email, an online server, or an online file transfer system. As a general matter, ESI should be produced in its native format. If any ESI is not readable, the producing party may elect to produce such information in hard copy format. Any ESI produced must include sufficient information to identify the author, sender, and recipient of the document as well as the date of its creation, revision, and/or transmission.

D. Other Discovery Matters

Discoverable materials in this case, if any, may include personally sensitive information and information prohibited by law from disclosure to third parties. The Parties are currently drafting and plan to file a proposed Protective Order to govern any materials that may be produced in discovery in this case.

**VI.   Motions Practice**

<u>Plaintiffs' Position</u>

As discussed above, Plaintiffs intend to file an early motion for summary judgment by September 15, 2021 if not sooner. Plaintiffs do not plan to file other dispositive motions prior to that motion.

<u>State Defendants' Position</u>

Defendants do not intend to file a dispositive motion until the close of discovery. While the rules permit Plaintiffs to move for summary judgment at any time, Defendants will invoke their rights under Federal Rule of Civil Procedure 56(d) to the extent that an early summary judgment motion by Plaintiffs turns on disputed facts. Defendants do not believe that litigating serial summary judgment motions by Plaintiffs while discovery is ongoing will promote the efficient resolution of this case.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy, and inexpensive determination of this action.

> Respectfully submitted,
>
> <u>/s/ Douglas L. Kilby</u>

Ilana H. Eisenstein (admitted pro hac vice)
Ben C. Fabens-Lassen (admitted pro hac vice)
Danielle T. Morrison (admitted pro hac vice)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Phone: 215-656-3300
Fax: 215-656-3301
Email: ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com
danielle.morrison@dlapiper.com
jonathan.green@dlapiper.com

Christopher G. Oprison
Florida Bar No. 0122080
J. Trumon Phillips
Florida Bar No. 84568
DLA PIPER LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
Phone: 305-423-8500
Fax: 305-675-6366
Email: chris.oprison@dlapiper.com
trumon.phillips@dlapiper.com
sheila.hall@dlapiper.com

Peter Karanjia (admitted hac vice)
James J. Halpert (pro hac vice

Douglas L. Kilby
Florida Bar No. 0073407
Glenn Burhans, Jr.
Florida Bar No. 0605867
Bridget Smitha
Florida Bar No. 0709581
Christopher R. Clark
Florida Bar No. 1002388
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
Phone: (850) 580-7200
Email: dkilby@stearnsweaver.com
gburhans@stearnsweaver.com
bsmitha@stearnsweaver.com
crclark@stearnsweaver.com

Lauren Gallo White
(admitted *pro hac vice*)
Meng Jia Yang
(admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Phone: (415) 947-2000
Email: lwhite@wsgr.com
mjyang@wsgr.com

Brian M. Willen
(admitted pro hac vice)

forthcoming)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Phone: 202-799-4000
Fax: 202-799-5000
Email: peter.karanjia@dlapiper.com
jim.halpert@dlapiper.com

Steffen N. Johnson
(admitted pro hac vice)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K St NW
Washington, DC 20006
Phone: (202) 973-8800
Email: bwillen@wsgr.com
sjohnson@wsgr.com

*Attorneys for Plaintiff NetChoice, LLC*

*Attorneys for Plaintiff Computer & Communications Industry Association*

/s/Blaine H. Winship
Blaine H. Winship
Florida Bar No. 356913
Chief Assistant Attorney General
Complex Litigation Bureau

Daniel W. Bell
Florida Bar No. 1008587
Chief Deputy Solicitor General

Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Blaine.winship@myfloridalegal.com
Daniel.bell@myfloridalegal.com

*Attorneys for Defendants Ashley Moody, in her official capacity as Attorney General of Florida; Joni Alexis Poitier, in her official capacity as Commissioner of the Florida*

/s/Charles J. Cooper
Charles J. Cooper (248070DC)
David H. Thompson (450503DC)
Brian W. Barnes*
Joseph O. Masterman (Florida Bar No. 1004179)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jmasterman@cooperkirk.com
   *Admitted *pro hac vice*

James W. Uthmeier
Florida Bar No. 113156
General Counsel
Raymond F. Treadwell
Florida Bar No. 93834
Chief Deputy General Counsel
EXECUTIVE OFFICE OF GOVERNOR RON DESANTIS

17

| | |
|---|---|
| *Elections Commission; Jason Todd Allen, in his official capacity as Commissioner of the Florida Elections Commission; John Martin Hayes, in his official capacity as Commissioner of the Florida Elections Commission; and Kymberlee Curry Smith, in her official capacity as Commissioner of the Florida Elections Commission* | Office of the General Counsel<br>The Capitol, PL-05<br>Tallahassee, FL 32399<br>(850) 717-9310<br>James.Uthmeier@eog.myflorida.com<br>Ray.Treadwell@eog.myflorida.com<br><br>*Attorneys for Defendant Patrick Gillespie, in his official capacity as Deputy Secretary of Business Operations of the Florida Department of Management Services* |

**CERTIFICATE OF SERVICE**

Counsel certifies that the foregoing document was electronically served on all counsel of record via the CM/ECF system on this 2nd day of August, 2021.

Respectfully submitted,

*/s/ Douglas L. Kilby*