<pre>
 1                   UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF FLORIDA
 2                      TALLAHASSEE DIVISION
                     Case No:  4:21-cv-220-RH-MAF
 3

 4   NETCHOICE, LLC, et al.,

 5        Plaintiffs,                   Tallahassee, Florida
                                        September 25, 2024
 6      v.                              10:00 a.m. – 11:13 a.m.
                                        Pages 1-41
 7   ASHLEY BROOKE MOODY, et al.,

 8        Defendants.
     _____

 9
                     TRANSCRIPT OF TELEPHONIC HEARING
10          BEFORE THE HONORABLE ROBERT L. HINKLE
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Plaintiffs:  Brian M. Willen, Esq.
                          Wilson, Sonsini, Goodrich & Rosati, P.C.
14                        1301 Avenue of the Americas
                          40th Floor
15                        New York, New York  10019

16                        Steffan N. Johnson, Esq.
                          Wilson, Sonsini, Goodrich & Rosati, P.C.
17                        1700 K. Street NW
                          5th Floor
18                        Washington, DC  20006

19                        Douglas L. Kirby, Esq.
                          Stearns, Weaver, Miller
20                        106 East College Avenue
                          Suite 700
21                        Tallahassee, Florida 32301

22
     For the Defendants:  Kevin A. Golembiewski, Esq.
23                        Florida Office of Attorney General
                          3507 Frontage Road
24                        Suite 200
                          Tampa, Florida 33607
25
</pre>

```
 1    APPEARANCES CONT'D:

 2    For the Defendants:   Henry Whitaker, Esq.
                            Florida Office of Attorney General
 3                          PL-01 The Capitol
                            Tallahassee, Florida 32399
 4
                            Darrick Monson, Esq.
 5                          Florida Office of Attorney General
                            Office of the Solicitor General
 6                          107 Gaines Street
                            Tallahassee, Florida 32399
 7
                            Brian W. Barnes, Esq.
 8                          Cooper & Kirk, PLLC
                            1523 New Hampshire Avenue NW
 9                          Washington, DC 20036

10    Reported by:          Dawn M. Savino, RPR, CRR
                            Official United States Court Reporter
11                          111 North Adams Street
                            Tallahassee, Florida 32301
12                          (850) 521-3674
                            Dawn_Savino@flnd.uscourts.gov
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
         1                    P-R-O-C-E-E-D-I-N-G-S
10:01 AM 2           THE COURT:  Good morning.  This is Judge Hinkle.
10:01 AM 3           The primary agenda for the day is to chart a course
10:02 AM 4   forward.  The two sides have done a very good job then meeting
10:02 AM 5   conscientiously with each other, and you've presented a new
10:02 AM 6   26(f) report.  It implicates some substantive issues, and the
10:02 AM 7   defense now has filed a motion for judgment on the pleadings.  I
10:02 AM 8   don't propose to take up any of the substantive issues today,
10:02 AM 9   but I do want to address the schedule and chart a path forward.
10:02 AM 10          I've read your submissions.  I'm prepared, I think.  I
10:02 AM 11  don't need you to repeat what you said, but I'll hear whatever
10:02 AM 12  you'd wish to add or emphasize.  I'll give you a chance to say
10:02 AM 13  whatever you wish.
10:03 AM 14          I think the most critical issue we need to deal with is
10:03 AM 15  when the plaintiffs will have to decide whether to amend the
10:03 AM 16  complaint, and then if they will amend, decide when they'll have
10:03 AM 17  to do it.  I've thought about that, and other issues.  Let me
10:03 AM 18  give you a chance to say whatever you wish, and then we'll go to
10:03 AM 19  work on it.
10:03 AM 20          I can also tell you this:  I do expect to have some
10:03 AM 21  substantive comments, certainly not a ruling, very preliminary,
10:03 AM 22  maybe you can refer to them as musings, but I think it may help
10:03 AM 23  to give you a little bit of a heads-up of at least thoughts I've
10:03 AM 24  had to this point, and it may help in an effort to manage the
10:03 AM 25  case going forward.  So I do expect before we finish to have
```

10:03 AM 1    some comments that are substantive in nature.

10:04 AM 2         I can tell you that there have been many times when I

10:04 AM 3    came into a hearing with preliminary views, I've listened to the

10:04 AM 4    parties as things played out, and I've wound up changing my

10:04 AM 5    preliminary views.  So if I say something that you don't care

10:04 AM 6    for today, don't despair, but I think it might help to know to

10:04 AM 7    start out what you're dealing with.  So I may do that.

10:04 AM 8         There's a lot of difference, I think, between the case

10:04 AM 9    as it was framed when it was last here, and the way it was

10:04 AM 10   framed in the Supreme Court.  I certainly don't blame anybody

10:04 AM 11   for that, and I think some of that resulted because the case got

10:04 AM 12   bolloxed up with the Fifth Circuit case, but I do think it is

10:04 AM 13   important to get it sorted out properly here.

10:05 AM 14        What I'd like to do is have the case presented here so

10:05 AM 15   that the next time it's in the Supreme Court, or even the next

10:05 AM 16   time it's in the Eleventh Circuit, it's the same case I've had a

10:05 AM 17   chance to address here.  That doesn't always happen.  Things

10:05 AM 18   change and evolve and new cases come out, but to the extent we

10:05 AM 19   can get everything properly addressed here, that would be good.

10:05 AM 20        Let me start and see on the plaintiffs' side what you'd

10:05 AM 21   like to tell me at the outset today.  I understand Mr. Willen

10:05 AM 22   will be speaking for the plaintiffs primarily.

10:05 AM 23        So Mr. Willen, what do you wish to tell me?

10:05 AM 24        MR. WILLEN:  Great.  Thank you so much, Your Honor.  I

10:05 AM 25   appreciate any musings you have, and I appreciate the thoughts

10:05 AM  1  that you've already expressed, and I'll try to be brief

10:05 AM  2  understanding that the Court has reviewed the submissions.

10:05 AM  3  I think you're exactly right, that the, sort of -- the

10:06 AM  4  only real procedural dispute at this point between the parties

10:06 AM  5  is about the timing of an amendment relative to some of the

10:06 AM  6  threshold motions that the State has now filed and said it wants

10:06 AM  7  to file, and our view is that it will just make the case more

10:06 AM  8  efficient and make more sense to get those threshold motions

10:06 AM  9  resolved before we go through the process of an amendment.

10:06 AM  10  So, you know, really a key, maybe the key, threshold

10:06 AM  11  legal question on remand here, as framed by the Supreme Court,

10:06 AM  12  is the meaning and the scope of the statute.  That is the

10:06 AM  13  required first step in the facial challenge, First Amendment

10:06 AM  14  analysis as the Court made clear.  The Court said, you know,

10:06 AM  15  before the Court can do anything with the facial challenge, it

10:06 AM  16  has to resolve the question of what the statute actually covers,

10:06 AM  17  and that's really a legal question.

10:07 AM  18  So that's really the issue that we want to try to get

10:07 AM  19  front and center here because it's foundational to everything

10:07 AM  20  else that we think is going to happen in this case, and

10:07 AM  21  certainly foundational to what an amended complaint would look

10:07 AM  22  like here.  And there may be some differences between the

10:07 AM  23  parties about the question of what the statute actually means

10:07 AM  24  and what it applies to.

10:07 AM  25  You know, in the prior proceedings, as the Court may

10:07 AM   1    recall, you know, the State took the position that the statute

10:07 AM   2    is fairly narrow.  We agree with that, but it does seem that on

10:07 AM   3    remand the State may be taking a slightly different approach and

10:07 AM   4    arguing for a slightly broader understanding of the statute.  So

10:07 AM   5    it's just going to be very important to both understand what

10:07 AM   6    their position is, and more importantly understand the Court's

10:07 AM   7    view on what the statute means and what it applies to.  And as I

10:08 AM   8    said, that really is determinative for what the facial challenge

10:08 AM   9    looks like, and in particular, what an amended complaint looks

10:08 AM   10   like.

10:08 AM   11        And I would just say, you know, in addition, the motion

10:08 AM   12   that they filed for judgment on the pleadings raises some issues

10:08 AM   13   both about the interpretation of the statute and associational

10:08 AM   14   standing, and we think it's also important to get those issues

10:08 AM   15   resolved so we know if there are questions that the Court has

10:08 AM   16   about standing, how best to address them in an amended pleading.

10:08 AM   17        So as things stand now we would really be amending, in

10:08 AM   18   a sense, in the dark without a clear understanding of what the

10:08 AM   19   Court thinks the statute covers or really what the State, at

10:08 AM   20   this point, thinks the statute covers which is just, in our

10:08 AM   21   view, inefficient, and what it would lead to in all likelihood

10:08 AM   22   is the necessity of multiple amendments; an amendment now and

10:09 AM   23   then in all likelihood an amendment once we get the rulings on

10:09 AM   24   the motions that the State has said it wants to file.

10:09 AM   25        So that's really what we're trying to do.  So what

10:09 AM  1    we've asked for is that the Court set a schedule for both the

10:09 AM  2    motion that the State has filed, set a deadline for filing the

10:09 AM  3    motion that they'd like to file to vacate the preliminary

10:09 AM  4    injunction, get those resolved, and then set a deadline.  And

10:09 AM  5    we've proposed 30 days after a ruling where at that point we can

10:09 AM  6    amend the complaint, and we just think that will allow the

10:09 AM  7    litigation to proceed much more efficiently and allow our

10:09 AM  8    amendment to really take account of the Court's understanding

10:09 AM  9    and the state of the law and the record more completely than we

10:09 AM  10   could do right now.

10:09 AM  11          THE COURT:  All right.  Thank you.

10:09 AM  12          Mr. Golembiewski?

10:09 AM  13          MR. GOLEMBIEWSKI:  Good morning, Your Honor.

10:10 AM  14          So it's defendants' position that plaintiffs should

10:10 AM  15   have to amend in the next few weeks given they've staked out the

10:10 AM  16   position that they'll likely amend, and that there have been

10:10 AM  17   significant intervening changes in this case between the Supreme

10:10 AM  18   Court's decision and the amendments to the actual statutes at

10:10 AM  19   issue.  And so right now, defendants are having to kind of

10:10 AM  20   litigate this case in limbo where we don't know exactly what

10:10 AM  21   claims that the plaintiffs are ultimately intending to press to

10:10 AM  22   final judgment.  And at this stage, the case, however we got

10:10 AM  23   here, has been pending for three years and the defendants are

10:10 AM  24   interested in getting it to a resolution.

10:10 AM  25          And the wait-and-see approach that plaintiffs are

10:10 AM 1  proposing is novel.  In any facial challenge, as Your Honor

10:10 AM 2  knows, part of the litigation is sussing out the scope of the

10:11 AM 3  law, and then the Court deciding that and whether there's

10:11 AM 4  constitutional applications.  And so it's odd to us for

10:11 AM 5  plaintiffs to request essentially what would affect the advisory

10:11 AM 6  rulings on the scope of the law, and then to reformulate their

10:11 AM 7  claims at that time, and that would really further push this

10:11 AM 8  litigation back.

10:11 AM 9  And there's tension too between that position and our

10:11 AM 10  view, and plaintiffs' view that the discovery deadline should

10:11 AM 11  stay at March 2025, because they might have a whole new case

10:11 AM 12  after essentially a ruling that changes their view of the law.

10:11 AM 13  And that's just not typically how we defend these cases.  We're

10:11 AM 14  supposed to be put on notice about the issues and claims that

10:11 AM 15  the plaintiffs are intending to press.

10:11 AM 16  And one reason we filed the motion for judgment on the

10:11 AM 17  pleadings timing when we did is because plaintiffs expressed

10:11 AM 18  uncertainty about the State's views of the scope of the law,

10:12 AM 19  even though we have been pretty consistent up even in the

10:12 AM 20  Supreme Court that it applies pretty broadly and beyond

10:12 AM 21  applications discussed in the Supreme Court's decision.

10:12 AM 22  Filing the motion for judgment on the pleadings provides further

10:12 AM 23  guidance to plaintiffs about our position, and allows the Court

10:12 AM 24  to decide that issue, among all the other, kind of,

10:12 AM 25  jurisdictional prongs we think their case presents after the

| | | |
|---|---|---|
| 10:12 AM | 1 | Supreme Court's decision. |
| 10:12 AM | 2 | And so our proposal for how to kind of sequence this is |
| 10:12 AM | 3 | plaintiffs can amend in the next three or four weeks, which |
| 10:12 AM | 4 | would allow the Court to know whether they're going to pursue |
| 10:12 AM | 5 | different claims or whether the Court should go ahead and decide |
| 10:12 AM | 6 | this MJP, and then after that the parties can brief the motion |
| 10:12 AM | 7 | to vacate the preliminary injunction. |
| 10:13 AM | 8 | MR. WILLEN:  Just a few things that I'd like to say in |
| 10:13 AM | 9 | response to that if I could, Your Honor. |
| 10:13 AM | 10 | So one, I think what my friend said just sort of |
| 10:13 AM | 11 | illustrates some of the issues that we face here.  So he said |
| 10:13 AM | 12 | that in their view the law applies pretty broadly.  But, you |
| 10:13 AM | 13 | know, that's really not the position that they took.  The Court, |
| 10:13 AM | 14 | I think, will recall when we were here for the preliminary |
| 10:13 AM | 15 | injunction hearing, you know, the Court had some questions that |
| 10:13 AM | 16 | I think are some of the same questions that it might have now |
| 10:13 AM | 17 | about what the statute means, what it applies to, does it apply |
| 10:13 AM | 18 | to -- there were questions about Home Depot, for example.  And |
| 10:13 AM | 19 | the state, at that point, took the position that the law |
| 10:13 AM | 20 | actually has a fairly narrow application.  They have sort of |
| 10:13 AM | 21 | consistently said that this law is really targeting sort of |
| 10:13 AM | 22 | sites that operate as what they view as the new public square; |
| 10:14 AM | 23 | sites that are about the facilitation of public speech.  Not a |
| 10:14 AM | 24 | lot of the, sort of, auxiliary edge cases that were identified |
| 10:14 AM | 25 | and discussed in the Supreme Court and other phases of the case. |

10:14 AM  1          So if they are now taking a position that this law has

10:14 AM  2     a, sort of, radically different sweep than I think we thought

10:14 AM  3     they had taken before and that we think the law actually does,

10:14 AM  4     that is exactly the issue that needs to get teed up and

10:14 AM  5     resolved.  Because if they are right about that, you know, then

10:14 AM  6     the case looks one way; if we are right about what the statute

10:14 AM  7     means, the case looks very different.

10:14 AM  8          So as of now, you know, we have a view about how the

10:14 AM  9     statute should be applied and read, and that informs the facial

10:14 AM  10    challenge that we've asserted.  We think the preliminary

10:14 AM  11    injunction that the Court has issued can and should survive, and

10:14 AM  12    we're happy to have that briefed.  But I don't think, you know,

10:15 AM  13    if we're talking about an amended complaint, that's a very

10:15 AM  14    different issue than the question of whether the current

10:15 AM  15    injunction is sustainable, which is the issue that they would

10:15 AM  16    like to brief.  And we think, as my friend has suggested, that

10:15 AM  17    that will be and is a good vehicle for resolving these threshold

10:15 AM  18    questions.

10:15 AM  19         And it's not in any way an advisory opinion, it's a

10:15 AM  20    ruling on concrete motions.  They filed a motion for judgment on

10:15 AM  21    the pleadings, they filed a motion, or they will file a motion,

10:15 AM  22    to dissolve the injunction.  Those are concrete issues, those

10:15 AM  23    are live issues at least as of now, and a ruling in that context

10:15 AM  24    is a definitive legal ruling that will really guide what the

10:15 AM  25    case looks like going forward.

| | | |
|---|---|---|
| 10:15 AM | 1 | Just in closing, very briefly, I will say, you know, if |
| 10:15 AM | 2 | the Court does prefer to do things as the State has suggested, I |
| 10:15 AM | 3 | think we would want a little bit more time than they have |
| 10:16 AM | 4 | proposed to do the amended complaint, and probably a little bit |
| 10:16 AM | 5 | more time -- well, I guess at that point the motion for judgment |
| 10:16 AM | 6 | on the pleadings probably would be overtaken by events.  But we |
| 10:16 AM | 7 | would want a little bit more time to do an amended complaint if |
| 10:16 AM | 8 | we're going to be doing that as the first thing that we do. |
| 10:16 AM | 9 | THE COURT:  All right.  Thank you. |
| 10:16 AM | 10 | MR. GOLEMBIEWSKI:  And Your -- |
| 10:16 AM | 11 | THE COURT:  No.  Look, thanks, but somebody has to |
| 10:16 AM | 12 | write the last letter. |
| 10:16 AM | 13 | Before I turn to some more substantive comments, let me |
| 10:16 AM | 14 | just respond to kind of the last back and forth.  I do think the |
| 10:16 AM | 15 | defendants have changed their position pretty substantially.  I |
| 10:16 AM | 16 | don't fault anybody for that.  As I've said at the outset, I |
| 10:16 AM | 17 | think some of that is because the case got combined with the |
| 10:17 AM | 18 | circuit case, and it went where it did. |
| 10:17 AM | 19 | Let me tell you what I said in the opinion, in my |
| 10:17 AM | 20 | opinion, granting the preliminary injunction, and I think it was |
| 10:17 AM | 21 | right.  And it doesn't really matter because that was then and |
| 10:17 AM | 22 | this is now, and that was part of the answer that could have |
| 10:17 AM | 23 | been given in the Supreme Court and it certainly can be given |
| 10:17 AM | 24 | now.  The question is where we're going to go going forward, and |
| 10:17 AM | 25 | certainly nobody's estopped by anything they've said up to this |

10:17 AM 1    point.

10:17 AM 2    But what I've said was this: *At least on its face, the*

10:17 AM 3    *statutory definition also applies to systems nobody would refer*

10:17 AM 4    *to as social media. The definition says nothing about sharing*

10:17 AM 5    *content with other users. The State says the definition should*

10:17 AM 6    *nonetheless be understood to be limited to providers of social*

10:17 AM 7    *media within the common understanding. The State says this*

10:18 AM 8    *comports with the statutory findings and the statute's obvious*

10:18 AM 9    *purpose. The State may be correct. For present purposes, it*

10:18 AM 10    *makes no difference.* That's the end of the quote.

10:18 AM 11    Now it turns out that when the Supreme Court got the

10:18 AM 12    case and looked at it as a facial overbreadth challenge, my

10:18 AM 13    comment that *for present purposes it made no difference* was

10:18 AM 14    wrong, and it turned out that apparently it made all the

10:18 AM 15    difference.

10:18 AM 16    It does seem to me it's going to be an important

10:18 AM 17    question going forward whether this statute applies to social

10:18 AM 18    media or it applies a lot more broadly than that, and we'll need

10:18 AM 19    to work through that.

10:19 AM 20    Here are my broader comments. When the case was here,

10:19 AM 21    nobody talked about the standard for a facial overbreadth

10:19 AM 22    challenge. I don't think anybody mentioned the plainly

10:19 AM 23    legitimate sweep of the statute. That came up in the Fifth

10:19 AM 24    Circuit case and then came up at the Supreme Court. I don't

10:19 AM 25    think anybody raised that at the Eleventh Circuit. But it

10:19 AM  1    turned out that was a large part of the show at the Supreme

10:19 AM  2    Court, and it actually drove the decision to vacate and remand.

10:19 AM  3         The other important thing that the Supreme Court

10:19 AM  4    addressed was the public utility analogy.  The state of Florida

10:19 AM  5    did argue that, that this is not just an old-style First

10:19 AM  6    Amendment case, but these are social media and there's an

10:19 AM  7    analogy to public utilities and that that has a substantial

10:19 AM  8    impact on the analysis.  The Fifth Circuit adopted that approach

10:20 AM  9    and the Supreme Court very clearly rejected it.  So a major part

10:20 AM 10    of the state's argument when the case was here originally has

10:20 AM 11    now been rejected by the Supreme Court.

10:20 AM 12         Let me talk about facial challenges.  One use of the

10:20 AM 13    term "facial" is an overbreadth challenge, and that's the way

10:20 AM 14    the Supreme Court addressed it.  What that kind of facial

10:20 AM 15    challenge does is expand a challenge beyond the individual

10:20 AM 16    plaintiff.  And as I said, that's how the Supreme Court

10:20 AM 17    conceptualized the facial challenge in this case, and that's how

10:20 AM 18    the defense treats it in the motion for judgment on the

10:20 AM 19    pleadings.

10:20 AM 20         Let me give you a hypothetical that will, I hope, help

10:21 AM 21    discuss what a facial challenge is and is not.  Suppose a state

10:21 AM 22    wants to adopt Provisions A, B and C.  And Provision A affects

10:21 AM 23    the individual party, plaintiff or defendant depending on the

10:21 AM 24    context of the case, but I'll call it a plaintiff, so A affects

10:21 AM 25    the plaintiff.  But the plaintiff wants to challenge not just A,

10:21 AM  1    but also B and C, and so brings a facial challenge that

10:21 AM  2    encompasses all three provisions, A, B and C.  Now, let me say

10:21 AM  3    there's a difference between three different provisions on the

10:21 AM  4    one hand and one provision that has three different effects on

10:21 AM  5    the other hand.  But for present purposes at least, I'm not

10:21 AM  6    trying to be rigorous in keeping those separate.  I'm just

10:21 AM  7    trying to tee up the discussion so that we can have an

10:21 AM  8    intelligent treatment of these going forward.

10:22 AM  9         An example of this is *United States versus Hanson*, I

10:22 AM  10    don't have the citation in front of me, but it's a Supreme Court

10:22 AM  11    decision in the next to last term, the term before our case.

10:22 AM  12    The case was decided in the Supreme Court, and it's a criminal

10:22 AM  13    case and involved a solicitation offense.  And the defendant

10:22 AM  14    made a facial challenge to the statute in just this way.  It was

10:22 AM  15    clear that what the defendant did could constitutionally be

10:22 AM  16    prohibited.  That it was okay to make it a crime to do what the

10:22 AM  17    defendant did.  But the defendant said if you read this statute,

10:22 AM  18    it doesn't just apply to what I did, but it would apply to other

10:22 AM  19    conduct, and it would apply to conduct that is protected by the

10:22 AM  20    First Amendment.  And so the defendant said the statute is

10:23 AM  21    facially unconstitutional and my conviction should be reversed.

10:23 AM  22    The Supreme Court rejected that.  The Supreme Court adopted the

10:23 AM  23    analysis and basically said yeah, that's the right analysis.  It

10:23 AM  24    set out how this kind of facial overbreadth challenge is

10:23 AM  25    properly analyzed, much like it did in NetChoice.  I think those

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
| 10:23 AM | 1  | principles really are not much disputed.  The Supreme Court          |
| 10:23 AM | 2  | interpreted the statute and said no, it doesn't apply to all         |
| 10:23 AM | 3  | that protected conduct and so the conviction got affirmed.  The      |
| 10:23 AM | 4  | analysis of that statute really doesn't make any difference to       |
| 10:23 AM | 5  | us, the point is that's a facial overbreadth challenge and that      |
| 10:23 AM | 6  | kind of challenge does exist.                                        |
| 10:23 AM | 7  | There's another use of the term "facial".  Maybe it's               |
| 10:24 AM | 8  | more colloquial, at least sometimes, but it's said often enough      |
| 10:24 AM | 9  | that some statute on its face violates the constitution.  Not       |
| 10:24 AM | 10 | just a First Amendment overbreadth claim, but argument is you        |
| 10:24 AM | 11 | can read the statute and you know it's unconstitutional.            |
| 10:24 AM | 12 | So an example of that, if the State passed a statute               |
| 10:24 AM | 13 | that said you cannot have a bumper sticker on your car               |
| 10:24 AM | 14 | supporting a presidential candidate, we would know that's            |
| 10:24 AM | 15 | unconstitutional.  And the way that might get phrased by             |
| 10:24 AM | 16 | somebody is to say that statute is unconstitutional on its face.    |
| 10:24 AM | 17 | You might say a statute's unconstitutional on all its                |
| 10:24 AM | 18 | applications when something's not an overbreadth challenge, but      |
| 10:25 AM | 19 | a different kind of facial challenge.  Sometimes it is said that    |
| 10:25 AM | 20 | a statute is facially unconstitutional only if it's                  |
| 10:25 AM | 21 | unconstitutional in all its applications.  Well, maybe the           |
| 10:25 AM | 22 | statute's unconstitutional, but probably not in all its              |
| 10:25 AM | 23 | applications.  I think the United States could probably pass a       |
| 10:25 AM | 24 | statute, and maybe it has, that says I can't have a bumper           |
| 10:25 AM | 25 | sticker on my car supporting a presidential candidate, so the       |

10:25 AM  1    code of conduct for United States judges probably says that.  So

10:25 AM  2    maybe there's some application of this statute that would be

10:25 AM  3    constitutional but look, you can just -- anybody that knows

10:25 AM  4    anything about the First Amendment or the constitution would

10:25 AM  5    tell the legislature as soon as this came up, like, you can't do

10:25 AM  6    this.

10:25 AM  7              Another example.  Maybe if the State, back some decades

10:26 AM  8    ago, passed a statute and said that only whites can vote in the

10:26 AM  9    primary, well you just know that's unconstitutional on its face,

10:26 AM  10   the State can't do that.

10:26 AM  11             Now, even examples like that, any of these, they might

10:26 AM  12   raise issues about standing or about the scope of an injunction.

10:26 AM  13   So if the person bringing the challenge to my bumper sticker

10:26 AM  14   statute didn't even have a car, maybe the person wouldn't have

10:26 AM  15   standing.  Maybe the person would say I have standing because I

10:26 AM  16   want to read other people's bumper stickers.  We can argue about

10:26 AM  17   standing.  We can argue about the scope of the injunction.

10:26 AM  18   Maybe if the plaintiff brings that challenge and gets an

10:26 AM  19   injunction that says the State can't prohibit the plaintiff from

10:26 AM  20   having a bumper sticker, or maybe the judge enters an injunction

10:26 AM  21   and says defendants, maybe all the state attorneys or the

10:26 AM  22   attorney general, you can't enforce this statute against

10:26 AM  23   anybody, anybody in the state.

10:27 AM  24             But you have those kind of issues.  But at least

10:27 AM  25   colloquially I think someone would say that statute is

10:27 AM  1    unconstitutional on its face.

10:27 AM  2         Maybe an illustration of this kind of issue in our case

10:27 AM  3    is to the extent the State says social media provider, you

10:27 AM  4    cannot attach a comment to a post.  So you can't attach a

10:27 AM  5    comment that says this post was sponsored by a foreign

10:27 AM  6    government.  Or this post is just not true.  Or to find accurate

10:27 AM  7    information on this subject, go look at another website.  Or

10:27 AM  8    anything else the provider wishes to say.  Now, I think I

10:27 AM  9    understood the State to assert that look, we've prohibited that

10:28 AM  10   and we can prohibit that because it's a public utility, and we

10:28 AM  11   can say you just have to carry the comment and you just have to

10:28 AM  12   carry the post, and you can't go attaching a comment.  Well, we

10:28 AM  13   can argue about whether that provision is unconstitutional and

10:28 AM  14   maybe frame that as whether that provision is unconstitutional

10:28 AM  15   on its face.

10:28 AM  16        Let's go back to my hypothetical.  Provisions A, B and

10:28 AM  17   C.  And it turns out that Provision A is unconstitutional, but

10:28 AM  18   Provisions B and C are constitutional.  So maybe Provision A is

10:28 AM  19   you can't have a bumper sticker supporting a presidential

10:28 AM  20   candidate; Provision B is you can't have flashing blue lights on

10:28 AM  21   top of your car supporting a presidential candidate, and

10:28 AM  22   Provision C is you can't broadcast a message from your car

10:28 AM  23   supporting a presidential candidate at more than 120 decibels.

10:29 AM  24   I guess for B and C maybe eliminate the reference to the

10:29 AM  25   presidential candidate to make it clearly constitutional, and

10:29 AM  1    eliminate any question about whether the presidential limitation

10:29 AM  2    makes a difference.

10:29 AM  3         So the hypothetical, as I've amended it, has A, the

10:29 AM  4    prohibition on bumper stickers supporting a candidate, that's

10:29 AM  5    unconstitutional; B, you can't have flashing blue lights on top

10:29 AM  6    of the car, well, that's constitutional because that would

10:29 AM  7    interfere with law enforcement; and you can't broadcast a

10:29 AM  8    message at 120 decibels, that would interfere with emergency

10:29 AM  9    signals and make anybody very close to it deaf and so suppose

10:29 AM 10    that's constitutional.  So now you've got A unconstitutional, B

10:29 AM 11    and C constitutional.

10:29 AM 12         Well, if those are in three different statutes and

10:30 AM 13    they're challenged in three different lawsuits, the result is

10:30 AM 14    the plaintiff wins the challenge to A and loses the challenges

10:30 AM 15    to B and C.  That's easy enough.

10:30 AM 16         Suppose it's three different statutes, but the

10:30 AM 17    plaintiff challenges all three in one lawsuit, has three counts.

10:30 AM 18    Counts 1, 2 and 3 or Counts A, B and C to match up with the

10:30 AM 19    provisions.  Well, it seems to me it ought to be the same

10:30 AM 20    result.  It shouldn't matter there's one lawsuit.  I don't know

10:30 AM 21    why you'd start trying to compare claiming a legitimate sweep,

10:30 AM 22    whatever.  You'd just look at A and you know it's

10:30 AM 23    unconstitutional, and you know that B and C are constitutional,

10:30 AM 24    and that's the outcome.

10:30 AM 25         Suppose now it's just one statute, but it's got three

10:30 AM 1    different provisions.  One statute all passed at the same time,

10:30 AM 2    but it's Provisions A, B and C.  Shouldn't the outcome be the

10:31 AM 3    same?  Seems to me it certainly should.

10:31 AM 4         This is probably the second use of the term "facial"

10:31 AM 5    that I discussed earlier, maybe the one I said might be in some

10:31 AM 6    circumstances thought to be colloquial, not just a facially

10:31 AM 7    overbreadth challenge, but it's just a challenge to three

10:31 AM 8    provisions and it says you can just read these provisions and

10:31 AM 9    you know the outcome.

10:31 AM 10        And so one of my questions is:  Why couldn't there be a

10:31 AM 11   facial challenge, this kind of facial challenge to A?  Why does

10:31 AM 12   it matter if it was in the same statute with B and C or maybe D,

10:31 AM 13   E, F and G.  It's a stand-alone provision that says you can't

10:31 AM 14   have a presidential bumper sticker on your car.  Why can't you

10:31 AM 15   just bring a lawsuit and say that's unconstitutional?  And if

10:31 AM 16   you're the one that has a car and wants to put it on there,

10:31 AM 17   you've got standing.  Why not.

10:32 AM 18        I would suggest to you implicitly that's how the

10:32 AM 19   parties approached this case when it was here originally, and

10:32 AM 20   that's how I approached it, and I think that's how the Eleventh

10:32 AM 21   Circuit approached it.  And so the Eleventh Circuit said here

10:32 AM 22   are these provisions, and some of them are constitutional and

10:32 AM 23   some of them are not.  Well again, the Supreme Court got it and

10:32 AM 24   didn't see it that way, and it was caught up with the Fifth

10:32 AM 25   Circuit and the Supreme Court said oh, you got to look at all

10:32 AM 1    these provisions and find the plainly legitimate sweep.  Well,

10:32 AM 2    at some point we're going to have to answer the question:  The

10:32 AM 3    plainly legitimate sweep of what?  It's one bill, it adopts a

10:32 AM 4    number of different statutes as they get put into this statute

10:33 AM 5    book, and it's got even more different provisions that could be

10:33 AM 6    sorted out.  We need to figure all that out.

10:33 AM 7           Now, a note about standing and scope of relief.  I said

10:33 AM 8    earlier you get into those issues regardless.  Justice Thomas's

10:33 AM 9    dissent isn't the law, and there are parts of the motion for

10:33 AM 10   judgment on the pleadings that cite Justice Thomas.  I'm no

10:33 AM 11   mathematician, but I know to have a majority of nine you have to

10:33 AM 12   have five.  So not everything Justice Thomas said is the law,

10:33 AM 13   but there's something to be said for the points he made, and I

10:33 AM 14   would suggest to the plaintiffs that you'll ignore those points

10:34 AM 15   at your peril.  Facial challenges, even on overbreadth, the type

10:34 AM 16   one -- definition one of facial that I talked about above are a

10:34 AM 17   thing.  And so to the extent Justice Thomas said that shouldn't

10:34 AM 18   even exist; well, it does, and the law is you can have that kind

10:34 AM 19   of challenge.  But there is something to be said for his view,

10:34 AM 20   and I have to tell you that routinely I look at cases and decide

10:34 AM 21   does this challenged provision affect a plaintiff, or in the

10:34 AM 22   case of an association, the plaintiffs' members, or does it not.

10:34 AM 23   And as we go forward, I'll be looking at that issue, I'll be

10:34 AM 24   looking for evidence of how this affects folks.

10:34 AM 25           I can give you an example of how I've dealt with this

10:34 AM 1   in other cases.  I've had a couple of transgender cases, and so

10:34 AM 2   I had a case where plaintiffs brought a challenge to medications

10:35 AM 3   for transgender plaintiffs and surgery for transgender

10:35 AM 4   individuals.  By the time the case got submitted, there were no

10:35 AM 5   plaintiffs who sought to have surgery.  The plaintiffs sought to

10:35 AM 6   bring a class action that would include surgical candidates, but

10:35 AM 7   there were no named plaintiffs that sought surgery, and so my

10:35 AM 8   ruling was the challenge to the surgery provisions is not

10:35 AM 9   properly here, I did not address it.

10:35 AM 10        That carries over here.  To the extent that there are

10:35 AM 11  provisions in this legislation that don't affect any member of

10:35 AM 12  the plaintiff organizations, plaintiffs' associations, then

10:35 AM 13  those issues aren't properly here and I'm not going to address

10:35 AM 14  them.

10:35 AM 15        Here's the upshot of all those musings, you're to refer

10:36 AM 16  to those as musings, they are certainly not rulings.  I leave it

10:36 AM 17  to the plaintiffs to choose whether they're going to assert a

10:36 AM 18  facial challenge or an as-applied challenge, what provisions

10:36 AM 19  they're going to challenge, how they're going to frame the

10:36 AM 20  challenge.  The defendants deserve to know, and I need to know,

10:36 AM 21  precisely what the plaintiffs challenge, how it affects your

10:36 AM 22  members, and the grounds for the challenge.

10:36 AM 23        I've said in other cases to people sometimes all I ask

10:36 AM 24  is one fair chance to address any issue.  So once I've made a

10:36 AM 25  definitive ruling on an issue, I don't need you to bring it back

10:36 AM 1   up.  If I've ruled on a motion in limine and it's a definitive

10:36 AM 2   ruling, then I don't need you to stand up in front of the jury

10:37 AM 3   or at trial and make the same objection again.  I do ask for one

10:37 AM 4   fair chance to address each issue, and so what I would really

10:37 AM 5   like to do is get this case very well-framed where every issue

10:37 AM 6   is clearly articulated by the plaintiffs, clearly addressed by

10:37 AM 7   the defendants, and I can rule on it, and then you can go up on

10:37 AM 8   appeal and the appellate court can decide what parts I got right

10:37 AM 9   and what parts I got wrong.  What I don't want to do is be back

10:37 AM 10  three-and-a-half years from now, and it turned out that there

10:37 AM 11  was something we didn't do and still hadn't made much progress.

10:37 AM 12       The upshot of that analysis I guess is this:  I think

10:37 AM 13  the plaintiffs need to stand on the current complaint or amend

10:37 AM 14  it, and you need to do it now.  I hear you saying it would be

10:37 AM 15  nice to know more of what the defense thinks and get my rulings

10:38 AM 16  before you frame your complaint.  That's not how lawsuits work.

10:38 AM 17  That's not how things were the day before you filed this

10:38 AM 18  lawsuit.  You had to decide who you were going to sue and what

10:38 AM 19  claims you were going to make, and now we've gotten some

10:38 AM 20  guidance out of the Supreme Court, and it's time for you to

10:38 AM 21  decide what you're going to challenge and why and set it out

10:38 AM 22  very clearly.  And that's a big part of why I just went through

10:38 AM 23  that long soliloquy just went through.  You need to make it

10:38 AM 24  clear, and you need to do it now.

10:38 AM 25       I hear you, say you need more than four weeks.  You

10:38 AM 1    know, it's been three-and-a-half years; it's been

10:38 AM 2    three-and-a-half months since the Supreme Court ruled.  Surely

10:38 AM 3    you knew this was coming.

10:39 AM 4         I usually say let's get discovery going.  There are a

10:39 AM 5    lot of things that the parties don't know the precise details of

10:39 AM 6    where we're going in the case, but you got a pretty good idea of

10:39 AM 7    what we're dealing with.  So I'm not inclined to say you can't

10:39 AM 8    start any discovery, you probably can and should, but we do need

10:39 AM 9    to get a more clear understanding of exactly what's being

10:39 AM 10   challenged and why.

10:39 AM 11        We probably need a trial date, and both sides have said

10:39 AM 12   oh, wait, and set the schedule later after we get some earlier

10:40 AM 13   rulings.  My experience is this:  Case management is almost

10:40 AM 14   always better when a date gets set.  Too often work expands to

10:40 AM 15   fit the available space, and we've got good lawyers on both

10:40 AM 16   sides and we've got lots of issues, some complexity.  If I set a

10:40 AM 17   trial date in 2029, you'd find enough to do between now and

10:40 AM 18   then, and every month that went by you would do some work, and

10:40 AM 19   it would maybe have some marginal impact.

10:40 AM 20        Somebody's got their phone not muted, and if you all

10:40 AM 21   could just mute your phone for just a minute, that would help.

10:40 AM 22        Ordinarily good case management is to go ahead and set

10:41 AM 23   a date.  I'm not likely to stay the case again.  We just need to

10:41 AM 24   sort out the wheat from the chaff.

10:41 AM 25        Let me give you an example of why I say this.  I

10:41 AM 1    mentioned I had trans cases.  In one of the cases the plaintiff

10:41 AM 2    was identified as Doe in the case.  I entered a preliminary

10:41 AM 3    injunction in favor of the named plaintiffs.  The State

10:41 AM 4    appealed, got briefed.  Lots of resources devoted to the appeal

10:41 AM 5    of the preliminary injunction.  Both sides said keep going,

10:41 AM 6    please don't stay the case, let's go ahead and go to trial.  We

10:41 AM 7    did, I tried the case, took all the evidence, made findings and

10:41 AM 8    conclusions, entered judgment.  The State dismissed its appeal,

10:42 AM 9    made sense.  Now we've got the full record and the final ruling,

10:42 AM 10   but all those resources on appealing and preliminary injunction

10:42 AM 11   were pretty much wasted.  It was just a lot of expense that

10:42 AM 12   maybe could have been avoided.

10:42 AM 13         Another of those cases involving Medicaid, the

10:42 AM 14   plaintiffs name was Decker, the State chose not to appeal a

10:42 AM 15   preliminary injunction, it just applied to the individual

10:42 AM 16   plaintiffs and we got a final ruling in the case.  And that went

10:42 AM 17   up on appeal, and didn't have all the expense of the earlier

10:42 AM 18   preliminary injunction.  Probably saved a lot of resources.

10:42 AM 19         So what I'm inclined to do is to talk about -- in just

10:42 AM 20   a minute I'll get your input on what's a realistic trial date.

10:42 AM 21   The preliminary schedule I set just took, really, my standard,

10:43 AM 22   running it from the date of remand after the case came back

10:43 AM 23   here.  Typically in every case once I get people in from both

10:43 AM 24   sides, I say okay, tentatively here's the discovery deadline,

10:43 AM 25   six months I think, and here's the trial date, typically 14

10:43 AM 1    weeks after the discovery deadline.  It gives me time to deal

10:43 AM 2    with any summary judgment motion before the attorneys start

10:43 AM 3    having their pretrial attorney conference and going forward.

10:43 AM 4    That schedule works out pretty well.  And as I say that's

10:43 AM 5    preliminary.  And the parties had their 26(f) conference.  I

10:43 AM 6    tell them if you want to do it sooner, I'll do it sooner.  I'll

10:43 AM 7    do it as soon as you want to.  If you want to take more time,

10:43 AM 8    you're going to have to have a good reason.

10:43 AM 9         And so what I did here was I just took those dates and

10:43 AM 10   I say here it is, talk to each other, and same general approach

10:43 AM 11   applies.  If you want more time, if you have a good reason,

10:44 AM 12   fine.  If you don't have a good reason, let's just go ahead and

10:44 AM 13   do it.  So we're going to talk about that in just a minute.

10:44 AM 14        There is, in this case, one possibility that I think

10:44 AM 15   cuts against going ahead and setting an early trial date.  Let

10:44 AM 16   me talk about that for just a minute.

10:44 AM 17        Settlement is not my role.  I almost never talk to

10:44 AM 18   parties about settling a case.  In an ordinary lawsuit, I send

10:44 AM 19   people to mediation, but I don't talk to them about settling the

10:44 AM 20   case.  The reason I have a job is sometimes there are disputes

10:44 AM 21   that need a ruling.  In constitutional cases that's almost

10:44 AM 22   always the case.  I mean, most of the time at least, when

10:44 AM 23   there's a real constitutional issue, the parties need a ruling.

10:44 AM 24   Most of the time settlement is not a realistic possibility.

10:44 AM 25        But here's my comment about this case.  I already told

10:45 AM  1    you this, but again it's not a ruling on anything, and it really

10:45 AM  2    doesn't matter to me whether you take up this suggestion or not.

10:45 AM  3    When there are issues that get presented, I'm going to decide

10:45 AM  4    them, and that's my role.  It's not my role to be involved in

10:45 AM  5    any kind of settlement discussion.  But my comment is this:  The

10:45 AM  6    situation now is substantially different than it was when the

10:45 AM  7    case was first filed and when the case was first here.  It seems

10:45 AM  8    to me, and the State may disagree, and if you do in due course

10:45 AM  9    you can submit your position and I'll rule on it.  But it seems

10:45 AM  10   to me the Supreme Court made it pretty clear that you can't just

10:45 AM  11   adopt the public utility approach.  There are First Amendment

10:45 AM  12   rights of social media providers.  It also seems to me that the

10:46 AM  13   State can regulate in this area, at least to some extent.

10:46 AM  14        I understand the extensive First Amendment position.

10:46 AM  15   There are those that think the First Amendment is close to

10:46 AM  16   absolute, and you can't holler "fire" in a crowded theater, but

10:46 AM  17   you can say most of what you want, and you shouldn't be

10:46 AM  18   regulating newspapers and you shouldn't be regulating social

10:46 AM  19   media, at least not very much.

10:46 AM  20        I can tell you that it does seem to me the State can

10:46 AM  21   regulate social media.  One thing I'm involved in, and most of

10:46 AM  22   you probably are not, I preside over cases involving sexual

10:46 AM  23   solicitation of children.  So I've had cases, not just with

10:46 AM  24   improper use of the internet to solicit, but I preside over

10:46 AM  25   cases where actual sexual abuse has occurred.  There are real

10:47 AM  1    victims of horrendous abuse that has been brought about through

10:47 AM  2    misuse of the internet and misuse of social media.  And if the

10:47 AM  3    State can regulate in a way that reduces that, then the

10:47 AM  4    plaintiffs would have a hard time convincing me the State can't

10:47 AM  5    do that, subject to restrictions and reasonableness and so

10:47 AM  6    forth.  To the extent that plaintiffs' argument about this

10:47 AM  7    statute was that the statute makes it harder for providers to

10:47 AM  8    try to block that kind of solicitation, the defense probably

10:47 AM  9    ought to take that seriously too, because it seems to me that's

10:47 AM  10   important.

10:47 AM  11           Bottom line is I don't think the State can adopt a

10:47 AM  12   public utility approach as it argued before, and I do think the

10:48 AM  13   State can do some regulating in this area.  Maybe this is a

10:48 AM  14   situation where it would make sense for there to be a stacking

10:48 AM  15   of arms.  A pause in the litigation, at least partly, maybe not

10:48 AM  16   entirely pausing the litigation, but maybe taking a step back in

10:48 AM  17   some respect.  Maybe if the State's serious about doing this,

10:48 AM  18   then studying exactly what you can and can't do, approaching it

10:48 AM  19   with a different mindset at the outset; not trying to make it a

10:48 AM  20   public utility but trying to say okay, the Supreme Court's told

10:48 AM  21   us that doesn't work, what can we do to make this better, lose

10:48 AM  22   the viewpoint bias, lose the effort to balance the social media

10:48 AM  23   between the right-leaning and left-leaning speakers, don't --

10:48 AM  24   lose the viewpoint bias, but figure out how to make this system

10:48 AM  25   work better.

10:49 AM  1          And along those lines, I guess, you know, one of the

10:49 AM  2    provisions we talked about before was this sequencing of posts.

10:49 AM  3    And there was one that I think, if I understand the appellate

10:49 AM  4    briefing, the State said we're not trying to defend that here.

10:49 AM  5    Maybe the State knows some of these provisions don't work, maybe

10:49 AM  6    recognizing they're unconstitutional or maybe just recognize

10:49 AM  7    they don't work.  Seems to me that some of these provisions just

10:49 AM  8    don't work.

10:49 AM  9          So maybe you want to talk about that, how to do this

10:49 AM 10    along the lines of -- you know, I don't know how eager the State

10:49 AM 11    is to start enforcing these provisions.  We can spend lots of

10:49 AM 12    resources arguing about preliminary injunctions, but maybe the

10:49 AM 13    thing to do is talk to each other about what should or shouldn't

10:49 AM 14    be enforced.  In the meantime, maybe make some agreement where

10:50 AM 15    things stand.  And the plaintiffs' members, at least, have a lot

10:50 AM 16    of expertise about how this works, and maybe talk to each other

10:50 AM 17    about how this ought to work.

10:50 AM 18          Probably not realistic.  I'm not somebody involved in

10:50 AM 19    the legislative process at all, but I've made those comments.

10:50 AM 20    That's the last I'll say about it.  So what I'm going to do is

10:50 AM 21    I'm going to plan to go forward in the expectation that it's

10:50 AM 22    litigation full-speed ahead, and if you talk to each other and

10:50 AM 23    decide something different, let me know.  Otherwise, that's the

10:50 AM 24    last I'm going to say about any of that.

10:50 AM 25          So we need a good complaint now.  And the plaintiffs

10:50 AM  1    can choose to stand on the current complaint.  If you do that, I

10:50 AM  2    may scratch my head and wonder if you actually read the Supreme

10:50 AM  3    Court decision.  But if you want to stand on the current

10:51 AM  4    complaint then fine, and you can respond to the motion for

10:51 AM  5    judgment on the pleadings, and I'll get you a ruling.

10:51 AM  6          I will say to the defendants the motion for judgment on

10:51 AM  7    the pleadings is mostly procedural and standing and facial

10:51 AM  8    challenge and what it means, and all that stuff.  I'd say the

10:51 AM  9    flip side of what I just said to the plaintiffs.  If you think

10:51 AM  10   you're going to win this case across the board on a motion to

10:51 AM  11   dismiss or motion for judgment on the pleadings, I might scratch

10:51 AM  12   my head and wonder if you actually read the Supreme Court

10:51 AM  13   decision.  I think it's likely that sooner or later there's

10:51 AM  14   going to be a substantive ruling on an adequate record about at

10:52 AM  15   least part of this thatchet (ph), this legislation.  And I think

10:52 AM  16   it's most likely that that substantive ruling is going to

10:52 AM  17   eventually come on a summary judgment ruling or after a trial.

10:52 AM  18   I don't think it's likely that the case is going to be entirely

10:52 AM  19   resolved on a motion to dismiss or for judgment on the

10:52 AM  20   pleadings.  It's possible.  Kind of depends on how the

10:52 AM  21   plaintiffs frame their complaint.

10:52 AM  22          All right.  That's a longer discussion than you wanted

10:52 AM  23   to sit through, and as I said it's not a ruling on anything.  So

10:52 AM  24   maybe it's all wasted effort, but maybe it gives you a heads-up

10:52 AM  25   and some idea at least of what you're dealing with in the judge.

10:52 AM 1          Mr. Willen, I think I mentioned going through it, it's

10:52 AM 2     been three-and-a-half months since the Supreme Court ruled.

10:52 AM 3     It's hard for me to imagine you haven't been thinking about what

10:52 AM 4     your complaint needs to look like.  How long do you think you

10:52 AM 5     need?

10:52 AM 6          MR. WILLEN:  I appreciate that, Your Honor, and I

10:53 AM 7     certainly appreciate all the comments.  They are very

10:53 AM 8     illuminating and very helpful.

10:53 AM 9          We, of course, have been thinking about these issues,

10:53 AM 10    thought as I said before, there are some still unresolved, very

10:53 AM 11    important threshold questions that will inform what an amended

10:53 AM 12    complaint looks like.

10:53 AM 13         I don't think we need an inordinate amount of time but,

10:53 AM 14    you know, what I would ask for is if the Court would give us

10:53 AM 15    basically until, say, November 1st.  I think the State had

10:53 AM 16    proposed October 15th, and I think we need a couple more weeks

10:53 AM 17    than that.  But I think we could do this by the 1st of November

10:53 AM 18    and get an amended complaint that tried, with the best of our

10:53 AM 19    ability, based on what we know, to address the issues that Your

10:53 AM 20    Honor has raised which, I think, are very thoughtful and we

10:53 AM 21    agree with pretty much everything you said.

10:54 AM 22         THE COURT:  Let me turn to the defense.  What, if

10:54 AM 23    anything, can you do to enlighten me on what's going to happen a

10:54 AM 24    week from today or a month from today, or if I haven't ruled on

10:54 AM 25    any motion to vacate, two or three months from today?  What's

10:54 AM 1    the State doing with these provisions?

10:54 AM 2    MR. GOLEMBIEWSKI:  Well, Your Honor, currently we agree

10:54 AM 3    with the plaintiffs that your injunction from the last go-around

10:54 AM 4    is still in effect.  So the defendants have not been enforcing

10:54 AM 5    these provisions.

10:55 AM 6    THE COURT:  And maybe this is not a fair question, and

10:55 AM 7    maybe it's not something you want to address without going back

10:55 AM 8    and speaking specifically to your clients about it, but if we

10:55 AM 9    had a trial date eight months from today, would it not be okay

10:55 AM 10   to just leave things the way they are and get the case presented

10:55 AM 11   in eight months?  I don't know what you think is happening

10:55 AM 12   critically -- and eight months is just a random number thrown

10:55 AM 13   out.  I don't know what you think is happening critically where

10:55 AM 14   you need to do something before we get it presented and a

10:55 AM 15   ruling.

10:55 AM 16   MR. GOLEMBIEWSKI:  Well yeah, that's something that we

10:55 AM 17   would have to discuss with the clients, Your Honor, but we

10:56 AM 18   generally agree with your broader point that preliminary

10:56 AM 19   injunction litigation should not drive this case at this point,

10:56 AM 20   and that may have led to some of the issues that arose in the

10:56 AM 21   Supreme Court last time.

10:56 AM 22   Our focus is on getting this case to final resolution

10:56 AM 23   and conducting adequate discovery and having an MSJ that

10:56 AM 24   addresses the precise issues and precise positions that

10:56 AM 25   plaintiffs see as problematic at this stage.  And so although we

10:56 AM  1    do intend to move to vacate that preliminary injunction and are

10:56 AM  2    interested in doing so, particularly given the slim record that

10:56 AM  3    it was built on and some of the Supreme Court's comments, we

10:56 AM  4    don't think that the injunction can stand on this record.  But

10:56 AM  5    we do more broadly agree that that litigation should not be the

10:56 AM  6    driver at this stage.  We should just litigate this case like

10:57 AM  7    any other case to judgment.

10:57 AM  8         I guess that doesn't answer you head-on, but we will

10:57 AM  9    have to get with our clients about the idea of some type of

10:57 AM  10   agreement on how the injunction will look while we focus on the

10:57 AM  11   case as a possible alternative to us seeking to vacate.  But

10:57 AM  12   that is something we have not discussed.

10:57 AM  13        THE COURT:  Fair enough.

10:57 AM  14        And another question you may not know the answer to:  I

10:57 AM  15   know there have been some amendments.  I haven't gone back and

10:57 AM  16   studied what's changed since the case was here.  For better and

10:57 AM  17   worse, I've worked on other things for the last three-and-a-half

10:57 AM  18   years.  I have not been following this of course.  Do you know

10:57 AM  19   whether there's anything going on now?  My weak understanding of

10:57 AM  20   the legislative process is that the committee meetings start in

10:58 AM  21   here pretty soon, and do you know if there's any likelihood of

10:58 AM  22   any appetite during the coming session to revisit any of these

10:58 AM  23   issues?

10:58 AM  24        MR. GOLEMBIEWSKI:  I'm not aware, Your Honor.  All I

10:58 AM  25   know -- I mean, the change that occurred back in 2022 while this

10:58 AM  1    was up on appeal is the legislature eliminated the provision

10:58 AM  2    that excluded companies that own or operate a theme park in the

10:58 AM  3    state from coverage of the law.  And so that's no longer one of

10:58 AM  4    the challenged statutory provisions.  But I'm not aware of

10:58 AM  5    whether the legislature is going to revisit 501, 2041 or the

10:58 AM  6    political candidate provision.

10:58 AM  7              THE COURT:  Got it.  Okay.

10:59 AM  8         Let me ask Mr. Willen, if I gave you to November 1st to

10:59 AM  9    amend, and I said -- and I'm going to set a trial date today,

10:59 AM 10    what would you tell me about the trial date?

10:59 AM 11              MR. WILLEN:  Well, I'd obviously want to speak to our

10:59 AM 12    clients but, you know, it is certainly in our interest to get

10:59 AM 13    this case -- I think we agree with the defendants that it's in

10:59 AM 14    our interest to get this case moving and resolved as quickly as

10:59 AM 15    possible.

10:59 AM 16         You know, we think, as the Supreme Court's decision

10:59 AM 17    makes clear, that there are very substantial constitutional

10:59 AM 18    problems with this law, and we are certainly eager to get a

10:59 AM 19    permanent and final ruling that the statute is not enforceable.

10:59 AM 20         So I think, as we said in our statement, the trial date

11:00 AM 21    that the Court sort of contemplated in the preliminary order I

11:00 AM 22    think is not unworkable from our perspective as things stand

11:00 AM 23    right now.

11:00 AM 24              THE COURT:  All right.  Mr. Golembiewski?  First, tell

11:00 AM 25    me if I'm saying your name right.  People never correct me, and

11:00 AM  1   I really wish --

11:00 AM  2        MR. GOLEMBIEWSKI:  It's Golembiewski.  That's all

11:00 AM  3   right.  I still have kids I've known from elementary school that

11:00 AM  4   say Golembiewski.

11:00 AM  5        THE COURT:  I'll do my best.  I can tell you that when

11:00 AM  6   I speak to anybody from up north and I say my name, they still

11:00 AM  7   think it H-A, and that's just the best I can do.  So within the

11:00 AM  8   limits of my ability I will say it correctly.

11:00 AM  9        MR. GOLEMBIEWSKI:  Thanks, Your Honor.

11:00 AM  10       So our view -- so we haven't -- because things have

11:00 AM  11  been still getting sorted out here, we haven't kicked off

11:01 AM  12  discovery even, and we put this in our motion for judgment on

11:01 AM  13  the pleadings but, for example, we think based on the Supreme

11:01 AM  14  Court's decision, part of this case is going to turn on the

11:01 AM  15  operations of covered platforms which is going to require

11:01 AM  16  third-party discovery on our end.  And so between that -- and

11:01 AM  17  that might implicate having to enforce subpoenas in other

11:01 AM  18  jurisdictions -- and the holidays, we think March for end of

11:01 AM  19  discovery and June trial date would be too soon.  And so we

11:01 AM  20  proposed pushing those back at least a couple months,

11:01 AM  21  particularly since plaintiffs won't be amending until November

11:01 AM  22  1st, and that will really give us a good sense of the scope of

11:01 AM  23  discovery and what their claims are.  And so our proposal would

11:01 AM  24  be maybe a discovery deadline in June or July, and then trial

11:01 AM  25  data few months there after.

11:02 AM  1          THE COURT:  Okay.  And what I told you earlier, just in

11:02 AM  2     ordinary cases I try to go for 14 weeks between the discovery

11:02 AM  3     cut-off and the trial.  How I get to that is you get three weeks

11:02 AM  4     to file the summary judgment motion after discovery ends, and

11:02 AM  5     you get three weeks to respond, you get a week for a reply and

11:02 AM  6     then I can have a hearing in the next week.  And then I keep six

11:02 AM  7     weeks on the back end so that I can get a ruling, and then

11:02 AM  8     you've got six weeks to prepare for trial.  That works pretty

11:02 AM  9     well in an ordinary court case or an ordinary employment case.

11:02 AM 10     It, of course, gives me a very limited time to master and rule

11:02 AM 11     on a summary judgment motion.  That's okay, and holds my own

11:03 AM 12     feet to the fire and I do it.

11:03 AM 13          The summary judgment ruling in this case may be a

11:03 AM 14     little more difficult than the average employment case summary

11:03 AM 15     judgment ruling, and a couple of months between the discovery

11:03 AM 16     deadline and the trial date, it's going to take a little more

11:03 AM 17     than that.  You may want more than 21 days to file the motion or

11:03 AM 18     respond.  One thing I always tell people is Rule 56 doesn't say

11:03 AM 19     you have to wait until all the discovery over to move for

11:03 AM 20     summary judgment.  But sometimes it does help to wait until all

11:03 AM 21     of it's done, and there's enough substance in this case that you

11:03 AM 22     may have to wait a little while.

11:03 AM 23          I can also tell you that I think there's differences

11:03 AM 24     from judge to judge about filing multiple summary judgment

11:03 AM 25     motions.  I think that's just fine.  I don't want you to spread

11:04 AM  1    things out unnecessarily but look, if we wind up with Provisions

11:04 AM  2    A, B and C and we do -- it gets framed in a way, or I decide

11:04 AM  3    that look, I really can't address these separately, then I have

11:04 AM  4    no problem with a summary judgment motion that addresses A and a

11:04 AM  5    different one on B and a different one or C.  I'm more than

11:04 AM  6    happy to have it addressed altogether, but if one of those is

11:04 AM  7    ready to be submitted earlier, then it's perfectly okay with me

11:04 AM  8    to submit it earlier.

11:04 AM  9              And with all of this, we've got very good lawyers on

11:04 AM  10   both sides.  You've done a good job talking to each other, talk

11:04 AM  11   to each other about those things.  It really does benefit, I

11:04 AM  12   think, both sides to get rulings as soon as something is ready

11:04 AM  13   to get a good ruling.  A lot of that will turn on how the

11:04 AM  14   plaintiffs reframe -- frame the case, or reframe the case.  If

11:04 AM  15   you frame it in such a way that the Supreme Court says I have to

11:05 AM  16   look at it altogether, then probably doesn't make any sense to

11:05 AM  17   have three different motions or six different motions.  But if

11:05 AM  18   it's framed in a way that as I suggested may be possible, those

11:05 AM  19   can be addressed separately, then it may make sense to do that.

11:05 AM  20   And like I say, if you talk to each other, everybody has other

11:05 AM  21   cases in addition to this one, and some of you even have lives

11:05 AM  22   separate and apart from your law practice.  And so if you can

11:05 AM  23   work it out in a way that works for everybody, great.  I will

11:05 AM  24   try to be in position to make rulings as quickly as things are

11:05 AM  25   ready to be ruled on, but I too have other cases, so I always

11:05 AM  1    don't get to things right away.  I try to get them as quickly as

11:06 AM  2    I can.  The goal here, in all these cases, is to spend all the

11:06 AM  3    time to do it well and hopefully not to spend any more time than

11:06 AM  4    that.

11:06 AM  5          I'll give the plaintiffs until November 1st to decide

11:06 AM  6    to stand on the existing complaint or to amend.  I don't need

11:06 AM  7    you to respond to the motion for judgment on the pleadings

11:06 AM  8    because it's likely that that motion is going to be rendered

11:06 AM  9    moot.  Even so, I think it was useful to get it filed.  It gives

11:06 AM  10   the plaintiffs a heads-up what's going on, and it was useful to

11:06 AM  11   me to read where you stood preparing for today.  But don't

11:06 AM  12   respond until November 1st.  If you decide to stand on the

11:06 AM  13   existing complaint, file a response on November 1st to the

11:06 AM  14   motion for judgment on the pleadings.

11:07 AM  15          And then what the defense has said does make sense.  It

11:07 AM  16   seems to me that we should stretch those dates out a little bit.

11:07 AM  17   I'll probably move the discovery deadline back maybe a couple of

11:07 AM  18   months, and then delay the trial maybe more than the 14 weeks

11:07 AM  19   because of what's likely to be involved here.

11:07 AM  20          I don't recall, I did not go look at whether you got

11:07 AM  21   26(a)(2) deadlines in this material.  I'll try to look back at

11:07 AM  22   that.  If you haven't had agreements on that, you may want to

11:07 AM  23   talk about it with each other.  Under our local rules you are

11:07 AM  24   always free to extend Rule 26 or discovery response deadlines so

11:07 AM  25   long as it doesn't interfere with the discovery deadline and the

11:07 AM  1    trial date.  I think it's Local Rule 6, but don't bind me to

11:08 AM  2    that.  So you can look at that and I'll look at it.  To the

11:08 AM  3    extent there are other deadlines you're going to need out of me,

11:08 AM  4    just tell me and I'll try to get to it.

11:08 AM  5         Let me go to the plaintiffs' side and see what else you

11:08 AM  6    want to tell me today, and whether there's anything else you

11:08 AM  7    think we can deal with today.

11:08 AM  8         MR. WILLEN:  No, this is very helpful.  Thank you, Your

11:08 AM  9    Honor.  This is Brian Willen.

11:08 AM  10        Just one very minor thing on the amendment.  I think

11:08 AM  11   the defendants had suggested that it would be a motion for leave

11:08 AM  12   to amend that we filed with an attachment and complaint.  It's

11:08 AM  13   our view that we can just file, if we're going the route of an

11:08 AM  14   amended complaint, we can just file the amended complaint

11:08 AM  15   without the need for a motion.  But just wanted to clarify that.

11:08 AM  16        THE COURT:  Yeah.  You may have needed leave, but

11:08 AM  17   you've got it.  So just file it by November 1st.

11:08 AM  18        MR. WILLEN:  Okay.  That's terrific.  I think that's

11:08 AM  19   all I have, but I will give any of my colleagues who are on the

11:09 AM  20   line if there is anything that I've failed to raise if they

11:09 AM  21   would like to raise.

11:09 AM  22        THE COURT:  All right.  Anybody on the plaintiffs'

11:09 AM  23   side, start with your name and you can tell me anything you

11:09 AM  24   wish.  Nobody.  Okay.  I guess congratulations Mr. Willen,

11:09 AM  25   you've gotten the support of everybody, all the other lawyers on

11:09 AM  1   your side, which is not always an easy thing to do.

11:09 AM  2          MR. WILLEN:  That's true.

11:09 AM  3          THE COURT:  Mr. Golembiewski.

11:09 AM  4          MR. GOLEMBIEWSKI:  I guess we just have one follow-up

11:09 AM  5   question about the preliminary injunction.  So if we do proceed

11:09 AM  6   to move to vacate, I know that the Eleventh Circuit had vacated

11:09 AM  7   -- you know, its posture is a doozy.  So the Eleventh Circuit

11:09 AM  8   had vacated part of the Court's preliminary injunction as to

11:09 AM  9   four or five provisions I think, but that vacature was knocked

11:10 AM  10  out because the Supreme Court vacated in full the Eleventh

11:10 AM  11  Circuit's decision.

11:10 AM  12         And so on a motion to vacate, could we treat those

11:10 AM  13  provisions the same and just proceed to brief all of them?  Or

11:10 AM  14  would the Court -- or I guess does the Court think that's less

11:10 AM  15  necessary, since the Eleventh Circuit already spoke to the fact

11:10 AM  16  that some of those provisions should go into effect.

11:10 AM  17         THE COURT:  Well, I'll hear what the plaintiffs have to

11:10 AM  18  say at the time.  You can consult about it, but let me tell you

11:10 AM  19  my general approach.  I try not to get reversed twice in the

11:10 AM  20  same case, at least on the same basis.  I do understand the

11:10 AM  21  Eleventh Circuit decision has been vacated.  I haven't gone back

11:10 AM  22  and studied that.  My hazy recollection of my impression at the

11:10 AM  23  time was that these were things that really weren't even

11:11 AM  24  presented to me.  Certainly it was not the main event when I was

11:11 AM  25  trying, in very short order, to deal with this.  That decision

11:11 AM  1    has been vacated, but it was a decision of the Eleventh Circuit,

11:11 AM  2    and the plaintiffs would have to make a pretty good showing to

11:11 AM  3    convince me that I should stay the course on something that I'm

11:11 AM  4    not sure I even really dealt with, and that three Eleventh

11:11 AM  5    Circuit judges said I got wrong.

11:11 AM  6         So yeah, I don't need you to go briefing that really,

11:11 AM  7    and if the plaintiffs try to convince me to leave in place an

11:12 AM  8    injunction that the Eleventh Circuit said was improper, then

11:12 AM  9    they need to brief that and I'd give you a chance to respond.

11:12 AM 10         All of that may have been premature.  I really haven't

11:12 AM 11    looked at those particular provisions and how the Supreme

11:12 AM 12    Court's reasoning might play into those, but I really don't

11:12 AM 13    think it would affect that, but I'd have to go back and study it

11:12 AM 14    and I have not done that.

11:12 AM 15         MR. WILLEN:  And Your Honor, this is Brian Willen.  I

11:12 AM 16    would suggest, picking up on what the Court said, that it makes

11:12 AM 17    sense, I think, for the parties to have a discussion about the

11:12 AM 18    preliminary injunction and sort of what that is going to look

11:12 AM 19    like going forward, and whether there needs to be a motion to

11:12 AM 20    vacate, whether the parties can reach agreement on some or all

11:12 AM 21    of the provisions.  I think that conversation would be

11:12 AM 22    beneficial.  So I would suggest that we have it amongst

11:12 AM 23    ourselves at least in the first instance.

11:12 AM 24         THE COURT:  I agree completely.  So the requirement to

11:12 AM 25    consult with each other before filing that motion, do it, and

11:12 AM  1    talk to each other and see what you have.

11:13 AM  2              MR. GOLEMBIEWSKI:  All right.  Thank you, Your Honor.

11:13 AM  3              MR. WILLEN:  Thank you, Your Honor.

11:13 AM  4              THE COURT:  Anything else from the defense?

11:13 AM  5              MR. GOLEMBIEWSKI:  No, nothing from me.

11:13 AM  6              THE COURT:  All right.  Thank you all.  Be safe.

11:13 AM  7    There's a hurricane coming right at Tallahassee late tomorrow or

11:13 AM  8    the next day, and I don't know where all of you are, but

11:13 AM  9    everybody be safe and we'll go forward from here.  Thank you

11:13 AM  10   all.  We are adjourned.

11:13 AM  11             MR. WILLEN:  Thank you, Your Honor.

11:13 AM  12             MR. GOLEMBIEWSKI:  Thank you.

11:13 AM  13             (PROCEEDINGS CONCLUDED)

11:13 AM  14                    C E R T I F I C A T E
11:13 AM  15        I certify that the foregoing is a correct transcript
               from the record of the proceedings in the above-entitled matter.
11:13 AM  16   Any redaction of personal data identifiers pursuant to the
               Judicial Conference Policy on Privacy is noted within the
11:13 AM  17   transcript.

11:13 AM  18   9-26-2024                    /s/ Dawn M. Savino, R.P.R., C.R.R.
               Date                         DAWN M. SAVINO, R.P.R., C.R.R.

11:13 AM  19

          20

          21

          22

          23

          24

          25

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**