**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

NETCHOICE, LLC, et al.,

      Plaintiffs,

v.

JAMES UTHMEIER, in his official
capacity as Attorney General of the
State of Florida, et al.,

      Defendants.

_____/

Case No. 4:21-cv-220-RH/MAF

**PUBLIC REDACTED**

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................................................ii

ARGUMENT ......................................................................................................................2

    I.      Plaintiffs Lack Associational Standing for their First Amendment and
            Section 230 Challenges......................................................................................2

    II.    Plaintiffs Purported As-Applied Challenges are Quasi-Facial Challenges......6

    III.   Plaintiffs' Provision-Specific Arguments Fail.......................................................7

    IV.   Plaintiffs' First Amendment Facial Challenges Fail. ........................................10

    V.    Plaintiffs' Vagueness Challenges Fail.................................................................12

CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004) ..................................................................................3, 4

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ....................................................................................................8

*Borrero v. United Healthcare of New York, Inc.*,
    610 F.3d 1296 (11th Cir. 2010) ................................................................................3

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ..................................................................................7

*Chiles v. Salazar*,
    146 S. Ct. 1010 (2026) ..............................................................................................8

*City of South Miami v. Governor*,
    65 F.4th 631 (11th Cir. 2023) ...................................................................................6

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991) ..................................................................................................7

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ..................................................................................................9

*Ellis v. England*,
    432 F.3d 1321 (11th Cir. 2005) ..............................................................................10

*Evers v. General Motors Corp.*,
    770 F.2d 984 (11th Cir. 1985) ................................................................................10

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ........................................................................................4

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
    901 F.3d 1235 (11th Cir. 2018) ............................................................................7, 8

*Johnson v. United States*,
    576 U.S. 591 (2015) ................................................................................................12

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ...................................................................................1, 2, 3, 11

*NetChoice, LLC v. Bonta*,
    170 F.4th 744 (9th Cir. 2026) ...........................................................................10, 11

*NetChoice, LLC v. Bonta*,
    152 F.4th 1002 (9th Cir. 2025) ..............................................................1, 3, 4, 12

*Peace Ranch, LLC v. Bonta*,
   93 F.4th 482 (9th Cir. 2024) ................................................................................4

*Prop. Casualty Insurers Ass'n of Am. v. Donovan*,
   66 F. Supp. 3d 1018 (N.D. Ill. 2014) .............................................................6, 7

*RJ Reynolds Tobacco Co. v. FDA*,
   96 F.4th 863 (5th Cir. 2024) ................................................................................9

*Rumsfeld v. FAIR, Inc.*,
   547 U.S. 47 (2006) ...............................................................................................7

*SisterSong Women of Color Reproductive Justice Collective v. Governor of Georgia*,
   40 F.4th 1320 (11th Cir. 2020).........................................................................12

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022)............................................................................4

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) .............................................................................................3

*United States v. O'Brien*,
   391 U.S. 367 (1968) .............................................................................................8

*Wilson v. State Bar of Ga.*,
   132 F.3d 1422 (11th Cir. 1998)...........................................................................5

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
   471 U.S. 626 (1985) .........................................................................................8, 9

## Statutes

FLA. STAT.
   §501.2041(2)(b) ............................................................................................. 7, 12
   §501.2041(2)(j)....................................................................................................5

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' opposition rests on their fundamental misreading of *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Plaintiffs treat *Moody* as blessing all activities of social-media platforms as expressive simply because platforms set content-moderation policies and attempt to enforce them. Every argument in Plaintiffs' opposition proceeds from that flawed premise. But *Moody* made clear that the proper analysis "means asking, as to every covered platform or function, whether there is an intrusion on protected editorial discretion." *Id.* at 725. Plaintiffs ask this Court to conclude that "[d]eciding on the third-party speech that will be included in or excluded from a compilation" is by itself sufficient to render their members' curation and dissemination entirely expressive. *Id.* at 731. Plaintiffs ignore the human "organizing and presenting the included items" that is needed too. *Id.*; *see also id.* at 746 (Barrett, J., concurring). Without Plaintiffs' flawed premise, their arguments wilt. Plaintiffs' members' participation is required because the "unique design of each platform and its algorithms affects whether the algorithm at issue is expressive." *NetChoice, LLC v. Bonta* (*Bonta I*), 152 F.4th 1002, 1014 (9th Cir. 2025). Even if member participation were not required, Plaintiffs cannot escape the substantial evidence that their members' use of algorithms renders much of their members' curation and dissemination nonexpressive. Defs.MSJ.17-28, DE292 (Apr. 3, 2026). And Plaintiffs' attempts to save their vagueness challenges by applying the wrong

1

standard likewise fail. This Court should grant Defendants' motion for summary judgment.

## ARGUMENT

### I.    Plaintiffs Lack Associational Standing for their First Amendment and Section 230 Challenges.

Plaintiffs cannot avoid the need for member participation with their "excessive participation" theory. Plaintiffs contend that they can satisfy *Moody* with sample evidence from members. Pls.Resp.6-7, DE309 (May 1, 2026). But Plaintiffs' contention that they need only supply evidence that their members curate and disseminate third-party speech defies *Moody* and erroneously assumes that all Plaintiffs' members' curation and dissemination activities are expressive. *See* Pls.Resp.8.

Plaintiffs' contention rests on the flawed premise that the existence of content-moderation standards and any subsequent effort to enforce those standards renders all of their members' curation and dissemination expressive. *See id.* (citing Pls.First.Am.MSJ.14-22, DE282-1 (Mar. 20, 2026)). This flaw permeates Plaintiffs' entire response. But as *Moody* explained, the proper inquiry requires "asking, as to every covered platform or function, whether there is an intrusion on protected editorial discretion." 603 U.S. at 725. And as *Moody* acknowledged, the answer to that question may vary between functions on a single platform. *Id.*; *see also id.* at 747 (Barrett, J., concurring) ("[T]he analysis is bound to be fact intensive, and it will surely vary from function to function and platform to platform."). Merely "[d]eciding on the third-party

2

speech that will be included in or excluded from a compilation" does not amount to "expressive activity" unless "organizing and presenting the included items" follows. *Moody*, 603 U.S. at 731 (majority op.). For standing purposes, the problem for Plaintiffs is that both of those steps—especially the second step—involve the use of proprietary algorithmic systems that distance human beings from the decision. Defs.MSJ.17-28. "Knowing where *each* . . . member's algorithm falls" on the spectrum from expressive to nonexpressive "reasonably requires some individual platforms' participation." *Bonta I*, 152 F.4th at 1014.

The nature of the relief that Plaintiffs seek does not change the analysis. True, *Borrero v. United Healthcare of New York, Inc.* involved claims for declaratory and injunctive relief that could be "litigated with limited individual participation" because of the specific nature of the plaintiffs' challenge. 610 F.3d 1296, 1306 (11th Cir. 2010). But *Borrero* did not hold that member participation is never required for injunctive or declaratory relief. Indeed, *Borrero* even noted that the "actual litigation" may reveal the need for member participation and acknowledged that the district court could reconsider the member-participation issue later. *Id.* at 1306 n.3. *Borrero* also predated the Supreme Court's insistence that courts tailor equitable relief to the injuries of the parties before them. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852-53 (2025).

So, as the Second Circuit has explained, an "organization lacks standing to assert claims of injunctive relief on behalf of its members where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized

3

proof.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). Consistent with that principle, *Bonta I* affirmed the dismissal of a materially similar challenge for lack of associational standing because the "unique design of each platform and its algorithm affect whether the algorithm at issue is expressive." 152 F.4th at 1014. Plaintiffs' only answer to *Bonta I* is to ignore that S.B.7072 applies to algorithms just like the law at issue in *Bonta I. See* Pls.Resp.12. And likewise for Section 230, the use of "algorithms to create and communicate [a platform's] own message: that it thinks you, the reader—you, specifically—will like this content," is not protected. *Force v. Facebook, Inc.*, 934 F.3d 53, 82 (2d Cir. 2019) (Katzmann, C.J., concurring and dissenting in part). So Plaintiffs cannot avoid the need to establish the expressive nature of each function engaged in curation and dissemination for each of their members.

Plaintiffs next try to conjure standing to challenge some provisions of S.B.7072 with their theory that their members need not admit that they are presently in violation of those provisions to establish an Article III injury. Pls.Resp.18-19. But Plaintiffs' chosen authorities do not support their argument. *Peace Ranch, LLC v. Bonta* held that a plaintiff "plausibly alleged that it refrained from" engaging in certain conduct because of the government's "interpretation" of a law. 93 F.4th 482, 489 (9th Cir. 2024). *Speech First, Inc. v. Cartwright* similarly involved the chilling of speech to support standing. 32 F.4th 1110, 1122 (11th Cir. 2022). The problem for Plaintiffs is not the nature of the purported injury (i.e., chilled expression); it is that they rely on vague, uncertain, or

4

hypothetical testimony that they have, in fact, suffered that purported injury because of the challenged provisions.

For the individualized-disclosure provision, Plaintiffs' standing falters because of vague testimony about the operational burdens of providing some unspecified, additional degree of notice. Defs.MSJ.16-17; *see Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1427 (11th Cir. 1998) (requiring "specific facts" at summary judgment).

For the opt-out provision, Plaintiffs' standing falls because of unrebutted, specific evidence that cuts against them: evidence that permitting users to opt out of those algorithms is not so unduly burdensome as to chill Plaintiffs' members' use of those purportedly expressive algorithms. Defs.MSJ.17.

For the journalistic-enterprise provision, Plaintiffs' standing wilts because it depends on a persistent misreading of the provision. Although Plaintiffs finally acknowledge that the provision does not apply to obscene content, they contend that their members could not act against sexual or graphic content posted by journalistic enterprises. Pls.Resp.17. Plaintiffs misread the provision, which applies when a platform acts against a journalistic enterprise's post because of the "content" of its independent "publication or broadcast"—not because of the content of the post itself. FLA. STAT. §501.2041(2)(j). Plaintiffs offer no evidence that their members intend to act against a journalistic enterprise in that retaliatory way.

And for the rules-change provision, Plaintiffs' standing flounders because of a lack of specific evidence that any member has *ever* changed its policies more than once

5

a month. One declaration that Plaintiffs cite, Pls.Resp.17, vaguely refers to "multiple updates in the same month" to "address issues on the platform," Veitch Decl. ¶¶35-36, DE280-3. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ Another declaration that Plaintiffs cite, Pls.Resp.17, says nothing about the timing of the rules changes that it references, Potts Decl. ¶19, DE280-4. Plaintiffs seemingly argue that the hypothetical possibility, unsupported by evidence, that a member would change its rules in response to some intervening event is sufficient to support standing. *See* Pls.Resp.17-18. But that position defies precedent, which holds that a "highly attenuated chain of possibilities—which rests on speculation about the decisions of independent actors" cannot support standing. *City of South Miami v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023) (cleaned up).

## II.    Plaintiffs Purported As-Applied Challenges Are Quasi-Facial Challenges.

Plaintiffs' next contention that their quasi-facial challenges are as-applied challenges because they are limited to Plaintiffs' members defies logic, *see* Pls.Resp.26-27, and Plaintiffs' admission that their facial and purported as-applied challenges cover the same conduct, Pls.Resp.44-45. A challenge to a broad range of applications of law is more akin to a facial challenge than an as-applied challenge. *Prop. Casualty Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1036 (N.D. Ill. 2014) (holding that an association's challenge that did not involve a "particular, concrete application of the [challenged provision] to any of its members" was "more akin to a facial challenge than

6

to an as-applied challenge"). Accordingly, could Pornhub establish that a statute regulating obscenity could never be constitutionally applied to it because some of the material it hosts is not obscene? Or could someone who burns a flag establish that an arson statute could never be constitutionally applied to him because some of his conduct is expressive? The answer to those questions is obviously "no." So too here.

### III.   Plaintiffs' Provision-Specific Arguments Fail.

None of Plaintiffs' arguments about specific provisions of S.B.7072 is persuasive, but a few warrant direct responses.

For the consistency provision, Plaintiffs persist in their misreading of it, contending that "[i]t does not merely require websites to follow their own rules." Pls.Resp.32. That contention is belied by the provision's text, which requires only "consistent" application of a platform's "standards." FLA. STAT. §501.2041(2)(b). And Plaintiffs' backup argument that the First Amendment does not permit states to hold publishers to their representations is belied by precedent that Plaintiffs ignore. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991).

For the candidate-deplatforming provision, Plaintiffs overreach and assert that all account creation is expressive because one court has described, in the context of Section 230, a dating site's "questionnaire" as "facilitat[ing] the expression of information by individual users." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003); *see* Pls.Resp.33. Account creation is not "inherently expressive," *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006), because a reasonable observer would not

understand the mere act of contracting for a social-media account to convey "*some* sort of message," *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (citation omitted). Contracting for accounts is nothing like, for example, the burning of the draft card in *United States v. O'Brien*, which conveyed a message of "demonstration against the war and against the draft." 391 U.S. 367, 376 (1968). Accordingly, Plaintiffs are wrong to argue that deplatforming is an exercise of editorial discretion and thus implicates the First Amendment. *See* Pls.Resp.34.

For the individualized-disclosure, standards, and view-count provisions, Plaintiffs go nowhere in their attempts to counter Defendants' defense of those provisions. First, Plaintiffs persist in their mistaken argument that *Zauderer* applies only in the advertising context, but the Supreme Court recently described *Zauderer* in broader terms as applicable to the disclosure of "factual, noncontroversial information in commercial speech." *Chiles v. Salazar*, 146 S. Ct. 1010, 1022 (2026) (citation and quotation marks omitted). These provisions regulate commercial speech because they pertain to how platforms handle user content under platforms' declared standards and thus propose the terms of a commercial transaction with users, refer to the product that platforms offer, and arise from platforms' economic motivation to enlist or retain users. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). What standards a platform applies, why it acted on a user's content under those standards, and how many other users viewed or were shown a user's content is uncontroversial, factual

8

information. *See Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985).

Second, Plaintiffs contend that evidence establishes that these provisions are unduly burdensome. It does not. Undue burden is measured relative to the benefits gained. *RJ Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 885 (5th Cir. 2024). Florida's interest in preventing consumer deception is substantial, *Edenfield v. Fane*, 507 U.S. 761, 769 (1993), and the provisions serve that interest by requiring disclosure of the standards that govern users' content (standards), disclosure of the reason a platform acted on a user's content (individualized-disclosure), and disclosure, upon request, of the number of views a users' content has received (view-count).

Meanwhile, Plaintiffs' assertion of a paralyzing burden goes nowhere. *See* Pls.Resp.39. Defendants put forth substantial evidence that witnesses and declarants from Plaintiffs' members lack personal knowledge about the effect of S.B.7072 on Plaintiffs' members, in part because some of those individuals are government relations or marketing executives who have no further insight to offer about technical matters. Defs.MSJ.28; Defs.Opp'n.19, DE311 (May 1, 2026). ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ DE312-6. A litigant cannot avoid summary

judgment with "unsupported, conclusory statements not based on personal knowledge" contained in a declaration. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005).

Plaintiffs' burden argument is further undermined by their members' actions. Plaintiffs' members have backed principles that support providing notice of and the reasoning for content-moderation decisions. Defs.MSJ.40. YouTube and X already display view counts for some posts. Veitch Decl. ¶41, DE280-3; Fernandez Decl. ¶30, DE280-8. And YouTube prepares detailed reports for users who post videos that show view counts and can show for every second of a video what viewer retention is. GOOG-NTCHFL7072-00001482 at -84-85, DE312-3; GOOG-NTCHFL7072-00001489 at -90-91, DE312-4; GOOG-NTCHFL7072-00001499 at -1500, DE312-5. Plaintiffs have never explained how platforms have the technological capability to act on numerous pieces of content but not the technological capability to disclose or explain information about those actions. At summary judgment, Plaintiffs need "specific facts to back up [their] conclusory allegations." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Only Defendants have offered specific facts, and those specific facts defeat Plaintiffs' challenges to the disclosure provisions.

### IV.    Plaintiffs' First Amendment Facial Challenges Fail.

To save their facial challenges, Plaintiffs improperly try to foist their burden on Defendants to develop a record about S.B.7072's full range of applications. Pls.Resp.44. But "to properly assert a facial challenge, it is [a plaintiff's] burden to establish the [law's] full range." *NetChoice, LLC v. Bonta* (*Bonta II*), 170 F.4th 744, 759 (9th Cir. 2026) (citation

and quotation marks omitted). That is, Plaintiffs must "develop a record that would allow the court to 'determine [the] law's full set of applications,' cataloging what 'activities, by what actors' the law regulates." *Bonta I*, 152 F.4th at 1021 (quoting *Moody*, 603 U.S. at 718, 724). To be sure, "current constitutional doctrine may make such a showing unrealistic," *id.*, which is likely why Plaintiffs run away from their burden. But this Court has held that S.B.7072 "appl[ies] not just to traditional social-media providers but also to a wide variety of other applications that provide multiple users access to or over the internet." DE209:11. Plaintiffs thus cannot prevail on their facial challenges with their admitted focus on "heartland applications," Pls.Resp.44—the same focus that led the Supreme Court to vacate and remand this case once before, *Moody*, 603 U.S. at 724.

In any event, within Plaintiffs' heartland applications, which they acknowledge overlap with their purported as-applied challenges, Pls.Resp.45, S.B.7072 has plainly legitimate sweep. Plaintiffs turn over "organizing and presenting the included items," *Moody*, 603 U.S. at 731, to algorithmic systems that "attenuate" the connection between what Plaintiffs' members feed users and "human beings' constitutionally protected right to '*decide for [themselves]* the ideas and beliefs deserving of expression, consideration, and adherence,'" *id.* at 746 (Barrett, J., concurring) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994)); Defs.MSJ.17-28. They also "attenuate the connection between content-moderation *actions*" and that same decision, *Moody*, 603 U.S. at 746 (Barrett, J., concurring), with their use of algorithmic systems to imprecisely decide what

11

content violates their stated policies, Defs.MSJ.25-26. Plaintiffs' misreading of *Moody* cannot save them from that evidence.

## V.   Plaintiffs' Vagueness Challenges Fail.

Plaintiffs' contention that Defendants apply the wrong vagueness standard in light of *Johnson v. United States*, 576 U.S. 591 (2015) is meritless. *See* Pls.Resp.50. *SisterSong Women of Color Reproductive Justice Collective v. Governor of Georgia*, which postdated *Johnson*, asked whether "persons of reasonable intelligence can derive a core meaning from a statute" for purposes of a facial vagueness challenge. 40 F.4th 1320, 1327 (11th Cir. 2020) (citation and internal quotation marks omitted).

Plaintiffs' contention that "consistent" in the consistency provision is "obscure" because it somehow "invites arbitrary enforcement" fares no better. *See* Pls.Resp.50. Because the consistency provision turns on a platform's consistent application of its own standards, FLA. STAT. §501.2041(2)(b), it is platforms, not Florida, that set the benchmark for enforcement. Platforms are not only free to set their own standards; they are also free to interpret those standards in a particular context as they see fit. If a platform removes a post endorsing a stereotype but not a post criticizing it, the platform has not violated the consistency provision. *See* Pls.Resp.51. The platform runs afoul of the provision only if one user's post endorsing the stereotype is removed but not another user's post doing the same. If a platform decides that "anti-Zionist" slogans violate its policies, *see* Pls.Resp.52, it cannot remove one user's "anti-Zionist" slogan but not another user's "anti-Zionist" slogan. Similarly, a platform cannot set a policy

12

claiming that it will remove all "images calling for genocide," *id.*, while sub silentio allowing certain images calling for genocide specifically of the Jewish people.

For the ban on post-prioritization and shadowbanning algorithms for posts by or about candidates, Plaintiffs commit two faults. First, Plaintiffs arrive at their conclusion that a post by or about a political candidate can never appear above or below any other post only by ignoring statutory text that points to chronological ordering as permissive. *See* Pls.Resp.53; Defs.MSJ.49-50. Second, Plaintiffs refuse to accept the ban's clarity because they do not like the result. They ask how candidate posts must appear—or not appear—in algorithmically curated feeds. Pls.Resp.53-54. The answer to that question is simple: Plaintiffs cannot use algorithmically curated feeds for posts by or about political candidates unless those algorithms rank all posts chronologically. That is consistent with the First Amendment because those feeds are not expressive. *See* Defs.MSJ.17-18. Plaintiffs' witnesses also lack personal knowledge about the effect on the ban on Plaintiffs' members, either because they do not know about the presence of Florida candidates on their platforms, ███████████████████ Duba Tr.122:22-25, attached as Exhibit 2, or because they are not involved in the technical aspects that pertain to compliance, Defs.MSJ.28; Defs.Opp'n.19.

## CONCLUSION

Defendants respectfully request that this Court grant their motion for summary judgment.

13

Dated: May 8, 2026

Charles J. Cooper
David H. Thompson
Brian W. Barnes
Clark L. Hildabrand
Jack Tucker
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

Respectfully submitted,

JAMES UTHMEIER
*Attorney General of Florida*

/s/*William H. Stafford, III*
William H. Stafford, III

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3694
(850) 410-2672 (fax)

*Counsel for Defendants*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that Defendants' Reply in Support of Their Motion for Summary Judgment contains 3,195 words, excluding the parts exempted by N.D. Fla. R. 7.1(F), and thus complies with the limit of 3,200 words set by N.D. Fla. R. 56.1(D).

/s/*William H. Stafford, III*
William H. Stafford, III

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically served on all counsel of record via the CM/ECF system on this 8th day of May, 2026.

/s/*William H. Stafford, III*
William H. Stafford, III

16