IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NETCHOICE, LLC et al.,

      Plaintiffs,

v.                                                        CASE NO. 4:21cv220-RH-MAF

JAMES UTHMEIER et al.,

      Defendants.

_____/


**ORDER DENYING SUMMARY JUDGMENT**


The State of Florida adopted legislation that imposes sweeping requirements on large social-media platforms. The legislation compels platforms to host speech that violates their standards—speech they otherwise would not host—and forbids platforms from speaking as they otherwise would. The Governor's signing statement and numerous remarks of legislators show rather clearly that the legislation is viewpoint-based, designed to curb the platforms' purported liberal bias. The United States Supreme Court made clear, on review of a preliminary injunction in this very case, that the legislation is unconstitutional in substantial respects.

The Supreme Court also made clear, though, that the unconstitutional applications, without more, are insufficient to resolve the plaintiffs' facial challenges to the legislation. That remains true. The plaintiffs have added challenges they label as-applied, and the record is more fully developed now than it was then. Both sides have moved for summary judgment, the plaintiffs on some claims, the defendants across the board. This order denies the motions based on the Supreme Court's analysis and this record's genuine factual disputes.

## I. Procedural background

The plaintiffs are NetChoice, LLC and Computer & Communications Industry Association ("CCIA"). Both are trade associations whose members include social-media platforms that are subject to the legislation at issue. The plaintiffs assert the rights of their affected members and, as set out in an order denying a motion to dismiss, have standing to do so. *See* Order of May 22, 2025, ECF No. 209.

The defendants are the Attorney General of Florida and the members of the Florida Elections Commission, all in their official capacities. The defendants have a role in enforcement of the provisions at issue and are proper defendants under *Ex parte Young*, 209 U.S. 123 (1908).

The plaintiffs challenge parts of Senate Bill 7072 as adopted by the 2021 Florida Legislature. The legislation created three new Florida statutes: § 106.072,

§ 287.137, and § 501.2041. The legislation also included findings and a severability clause. The statutes were scheduled to take effect on July 1, 2021, but a preliminary injunction in this case blocked implementation of §§ 106.072 and 501.2041. *NetChoice, LLC v. Moody*, 546 F. Supp. 3d 1082 (N.D. Fla. 2021) ("*NetChoice I*"). The Eleventh Circuit affirmed in part and vacated and remanded in part. *NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196 (11th Cir. 2022) ("*NetChoice II*"). The Supreme Court vacated the Eleventh Circuit decision and remanded. *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ("*Moody*"). The Eleventh Circuit in turn remanded the case to this court. *See* ECF No. 149.

Back in this court, the plaintiffs filed an amended complaint challenging Florida Statutes § 106.072(2), § 501.2041(2)(a), (b), (c), (d), (e), (f), (g), (h), and (j), and § 501.2041(3). The amended complaint asserts an as-applied First Amendment claim (count 1), a facial First Amendment claim (count 2), a vagueness claim under the First, Fifth, and Fourteenth Amendments (count 3), and a preemption claim based on the Supremacy Clause and 47 U.S.C. § 230(c) (count 4). The as-applied claim is explicitly limited to "websites operated by NetChoice and CCIA members when those websites curate and disseminate collections of third-party speech posted on their services." Am. Compl., ECF No. 171 at 29 ¶ 55.

The parties have continued to comply with the preliminary injunction to the extent approved by the Eleventh Circuit on the initial appeal. A cryptic label for

the challenged provisions, together with the Eleventh Circuit's now-vacated ruling

on their likely constitutionality, is this:

| | | |
|---|---|---|
| 106.072(2) | candidate deplatforming | unconstitutional |
| 501.2041(2)(a) | must publish standards | constitutional |
| 501.2041(2)(b) | consistency | unconstitutional |
| 501.2041(2)(c) | 30-day limit on changes | unconstitutional |
| 501.2041(2)(c) | notice of changes | constitutional |
| 501.2041(2)(d) | explanation of actions | unconstitutional |
| 501.2041(2)(e) | must disclose view counts | constitutional |
| 501.2041(2)(f) | must allow opt-outs | unconstitutional |
| 501.2041(2)(g) | annual notice re opt-outs | unconstitutional |
| 501.2041(2)(h) | posts by or about candidates | unconstitutional |
| 501.2041(2)(j) | journalistic enterprises | unconstitutional |
| 501.2041(3) | definition re (2)(d) | unconstitutional. |

Discovery has ended. The plaintiffs have moved for summary judgment on

all of count 1 except the challenge to § 501.2041(2)(a), all of count 2 except the

challenges to §§ 106.072(2) and 501.2041(2)(a) and (c), and all of count 3. The

defendants have moved for summary judgment on all claims. The motions have

been fully briefed and orally argued.

**II. Summary-judgment standard**

On a summary-judgment motion, disputes in the evidence must be resolved,

and all reasonable inferences from the evidence must be drawn, in favor of the

nonmoving party. The moving party must show that, when the facts are so viewed,

the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When there are cross-

motions, this standard applies separately to each motion. A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

### III.  The First Amendment applies to compilations of user posts

Social-media platforms compile user posts. The First Amendment applies to the compilations. So restrictions imposed by government on the compilations must survive First Amendment scrutiny. In its decision in this very case, the Supreme Court made this clear. *See Moody*, 603 U.S. at 729–30, 740.

Thus, for example, after discussing its decision in *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180 (1997), in which the Court held the FCC's regulation of a cable system's choice of stations was subject to but survived First Amendment scrutiny, the Court said this: "But for purposes of today's cases, the takeaway of *Turner* is this holding: A private party's collection of third-party content into a single speech product (the operators' 'repertoire' of programming) *is itself expressive, and intrusion into that activity must be specially justified under the First Amendment.*" *Moody*, 603 U.S. at 729–30.

Collecting third-party speech content into a single speech product is what social-media platforms do. As the Supreme Court said, the collection "is itself expressive, and intrusion into that activity must be specially justified under the First Amendment." *Id.* The defendants' contrary assertion was rejected in

*NetChoice I* (this court's preliminary-injunction order), and in *NetChoice II* (the Eleventh Circuit's opinion affirming that order in relevant part), and in *Moody* (the Supreme Court's opinion agreeing with the Eleventh Circuit in relevant part).

Nor was this the only statement to this effect in *Moody*. The Court discussed two paradigmatic social-media platforms, Facebook and YouTube, and noted, as remains undisputed on this record, that Facebook has Community Standards and YouTube has Community Guidelines. The platforms remove an enormous volume of content based on the Standards and Guidelines. *Moody* said this: "When the platforms use their Standards and Guidelines to decide which third-party content those feeds will display, or how the display will be ordered and organized, they are making expressive choices. And because that is true, they receive First Amendment protection." *Moody*, 603 U.S. at 740.

The defendants say platforms decide which content to show any given user primarily based on the user's viewing habits, showing the user the content most likely to keep the user on the platform longer. Perhaps so. *See Moody*, 603 U.S. at 735 ("The selection and ranking is most often based on a user's expressed interests and past activities."). And the defendants say this decision is made by algorithms, devoid of human involvement. Not so. Humans adopt the standards and guidelines, establish algorithms that incorporate them, and keep a great deal of content off the platforms on this basis, even though, as the defendants emphasize, the remaining

content is organized to a substantial extent by algorithms based on a user's viewing habits. This record establishes without genuine dispute that the six platforms specifically addressed in the plaintiffs' motion have standards or guidelines that have a significant role in selection and organization of content. "And because that is true, they receive First Amendment protection." *Moody*, 603 U.S. at 740.

*Moody* reiterated this point in discussing Texas's similar legislation. The Court said the parties treated Facebook's News Feed and YouTube's homepage as the heartland applications of the Texas law—much as those and other platforms' similar features are the heartland applications of the Florida law. *See id.* at 744. The Court said that at least on the record then before the Court, "the editorial judgments *influencing* the content of those feeds" were "protected expressive activity" that Texas could not "interfere with . . . simply because it would prefer a different mix of messages." *Id.* (emphasis added). The Court said "influencing," not "fully determining." The record now before this court makes clear that editorial judgments of the six platforms addressed in the plaintiffs' motion at least *influence* the content of their feeds. The First Amendment applies.

To be sure, Justice Barrett, speaking for herself in a separate concurrence, said "technology may attenuate the connection between content-moderation actions (e.g., removing posts) and human beings' constitutionally protected right to 'decide for [themselves] the ideas and beliefs deserving of expression,

consideration, and adherence.'" *Moody*, 603 U.S. at 746 (Barrett, J., concurring) (bracketing in original, emphasis deleted) (quoting *Turner*, 512 U.S. at 641). So, she said, "the way platforms use this sort of technology might have constitutional significance." *Id*.

Indeed it might. The better view is that the compilations are subject to First Amendment scrutiny, just as the Court repeatedly said, but that in applying the appropriate scrutiny—in analyzing whether a proffered justification for any given government regulation is sufficient—the way platforms use this sort of technology has constitutional significance. A platform whose dominant activity is showing users content that will keep them engaged longer—as determined by algorithms— might well be subject to significant regulation that would not survive First Amendment scrutiny in another context. *See, e.g.*, *Comput. & Commc'n Indus. Ass'n v. Uthmeier*, No. 25-11881, 2025 WL 3458571 (11th Cir. Nov. 25, 2025).

But the defendants are plainly incorrect when they assert, in substance if not explicitly, that the First Amendment does not apply when there is mixed curation—some driven by human editorial discretion and some by algorithms or artificial intelligence. Responding to Justice Barrett's concurrence, the Court said this case does not deal with "feeds whose algorithms respond *solely* to how users act online—giving them the content they appear to want, without *any* regard to independent content standards." *Moody*, 603 U.S. at 736 n.5 (emphasis added). The

Court continued, "Like them or loathe them, the Community Standards and Community Guidelines make a wealth of user-agnostic judgments about what kinds of speech, including what viewpoints, are not worthy of promotion. And those judgments show up in Facebook's and YouTube's main feeds." *Id*. Justice Barrett joined that footnote.

The unmistakable upshot is this: the First Amendment applies to mixed curation. The defendants' contrary assertion is inconsistent with *Moody*, the many precedents discussed in *Moody*, and any coherent view of the First Amendment. This does not mean platforms are not subject to government regulation, but it does mean regulation must pass appropriate First Amendment scrutiny.

## IV. The plaintiffs' facial claim

*Moody* sets out the methodology governing the plaintiffs' facial challenge. The court must compare a provision's unconstitutional applications to the provision's plainly legitimate sweep. *See Moody*, 603 U.S. at 723–26. The record is more complete now than it was then, but the record still does not establish beyond genuine factual dispute that the plaintiffs can prevail on this claim. *See* ECF No. 209 at 11 (holding that the challenged statutes apply more broadly than to social-media platforms as that term would commonly be understood).

## V. The plaintiffs' as-applied claim

The plaintiffs' as-applied claim asserts the challenged provisions violate the First Amendment "as applied to websites operated by NetChoice and CCIA members when those websites curate and disseminate collections of third-party speech posted on their services." Am. Compl., ECF No. 171, at 29 ¶ 55. In a footnote, the amended complaint says this does not include messaging or email services or websites when they facilitate services like ride sharing or payment processing. *Id.* at 29 n.5.

The defendants say this is not an as-applied challenge but a quasi-facial challenge. The Eleventh Circuit recently defined these terms, saying that "[i]n evaluating an as-applied challenge, a court 'addresses whether a statute is unconstitutional on the facts of a particular case' or in its application 'to a particular party.'" *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)). But "[i]n a 'quasi-facial' challenge, the plaintiff contends that the law cannot be constitutionally applied to a defined subset of people the law covers, which includes [the plaintiff]." *Id.* Thus, "[t]o prevail in a quasi-facial challenge, [a plaintiff] must satisfy the standard for a facial challenge to the extent that [the] claim 'reach[es] beyond [the plaintiff's] particular circumstances.'" *Id.* at 1003–04 (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)).

The plaintiffs' summary-judgment motion asks for a ruling directed not to the challenged statutes' "application to a particular party" but "to a defined subset of people the law covers"—and even then, only to the defined subset when performing defined tasks. At least as so framed, this is a quasi-facial challenge. The record makes clear that the provisions held unconstitutional in *NetChoice II* are unconstitutional in a substantial number of applications. But just as for the facial challenge, the record does not establish beyond genuine factual dispute that the plaintiffs can prevail on this quasi-facial claim.

## VI. The plaintiffs' vagueness claim

A law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "Unconstitutionally vague laws fail to provide 'fair warning' of what the law requires, and they encourage 'arbitrary and discriminatory enforcement' by giving government officials the sole ability to interpret the scope of the law." *Keister v. Bell*, 29 F.4th 1239, 1258 (11th Cir. 2022) (quoting *Grayned*, 408 U.S. at 108–09); *see also Johnson v. United States*, 576 U.S. 591, 595 (2015) ("Our cases establish that the Government violates [the Due Process Clause] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.") (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)).

"The First Amendment context amplifies these concerns because an unconstitutionally vague law can chill expressive conduct by causing citizens to 'steer far wider of the unlawful zone' to avoid the law's unclear boundaries." *Keister*, 29 F.4th at 1258–59 (quoting *Grayned*, 408 U.S. at 109); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (explaining that when "a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts").

The plaintiffs' vagueness claim targets the consistency and by-or-about-candidate provisions, Florida Statutes § 501.2041(2)(b) and (h). The provisions implicate the First Amendment. Violations are not crimes, but the sanctions for violations include administrative fines and liquidated damages so draconian as to reasonably be analogized to criminal penalties. There is much to be said for the plaintiffs' assertion that the consistency and by-or-about-candidates provisions are unconstitutionally vague.

To be sure, the defendants correctly note that the consistency provision, § 501.2041(2)(b), requires consistency only with a platform's own standards. But other provisions mandate departure from those standards, requiring more favorable—and thus inconsistent—treatment of posts by a journalistic enterprise or by or about a candidate. And consistency is often in the eye of the beholder. *See,*

*e.g.*, *United States v. Williams*, 553 U.S. 285, 306 (2008) ("Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.") The plaintiffs are correct that a platform's application of its standards on any given occasion ought not subject it to severe penalties if a jury later decides the application was somehow inconsistent with the platform's application of its standards on some other occasion. At the least, the consistency provision invites arbitrary enforcement.

Moreover, the defendants' argument on the consistency provision apparently is at odds with its insistence that in fact, the platforms make no expressive choices at all—that instead they employ algorithms to give users content that will keep them engaged. It would be hard to label inconsistent any decision made entirely by a programmed-in-advance algorithm.

The difficulty with the by-or-about candidates provision, § 501.2041(2)(h), is different. The provision seems clear enough at one level. Except at the margins, it should be easy enough to discern whether any given post is by or about a candidate. But the provision prohibits a platform from using "post-prioritization or shadow banning algorithms" for content by or about a user known to be a candidate. "'Post-prioritization' means action by a social media platform to place,

feature, or prioritize certain content or material *ahead of, below, or in a more or less prominent position* than others in a newsfeed, a feed, a view, or in search results." Fla. Stat. § 501.2041(1)(e) (emphasis added). Unless a platform shuts down completely, compliance with this provision is literally impossible; posts can only be ahead of or below other posts, and posts can only be in a more or less prominent position than other content.

The defendants say, though, that the provision does not mean what it says— that it requires posts by or about candidates to be placed in chronological order. Perhaps Florida courts will rewrite the provision in this way, but they have not done so to this point. One doubts the Florida legislature really intended to require all candidate posts to go to the top, allowing candidates and their supporters to flood every user's feed, rendering platforms useless, or nearly so. And if that is not what the provision means, one is at a loss to divine any plausible meaning.

So it is likely the consistency and by-or-about-candidates provisions are unconstitutionally vague at least as applied to some platforms. The question, then, is whether the vagueness claim must meet the standards for facial or quasi-facial challenges. *Moody* did not address the issue; the vagueness claim was not before the Court. More recently, the Eleventh Circuit has addressed the issue, acknowledging *Moody* but saying that in "facial vagueness challenges under the First Amendment . . . 'as a logical matter, a law . . . found to be constitutionally

unreasonable . . . due to lack of standards and guidance is by definition facially invalid.'" *Fla. Preborn Rescue, Inc. v. City of Clearwater, Fla.*, 161 F.4th 732, 739 n.2 (11th Cir. 2025) (quoting *Young Isr. of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1350 (11th Cir. 2024)).

If this were a claim by a single platform asserting only a vagueness challenge to these two provisions, summary judgment might well be granted for the platform. But this case presents much broader claims and is going to trial. The witnesses will be the same, and the testimony nearly the same, regardless of whether summary judgment is granted on this part of the vagueness claim. The prudent course is to try this issue along with the others. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."); *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001) ("[E]ven in the absence of a factual dispute, a district court has the power to deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.") (internal quotation and citation omitted); *see also United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292 (11th Cir. 1991) ("A trial court is permitted, in its discretion, to deny even a well-supported motion for

summary judgment, if it believes the case would benefit from a full hearing.");

*Trans-Audit, Inc. v. Condata Glob., Inc.*, No. 1:22-cv-318, 2024 WL 6935183, at

*4 (N.D. Fla. Feb. 13, 2024) (collecting additional authorities; declining to grant

summary judgment on part of a claim based on this discretion; and concluding,

"The discretion should rarely be exercised but is greater when the issue involves

only one part of one claim in an action that will go to trial on other issues

anyway.").

## VII. The defense motion

The defendants assert the challenged Florida statutes are constitutional in all

their applications. But the defendants base this assertion entirely on the theory that

the First Amendment does not apply at all. As set out above, that is incorrect. The

defendants are not entitled to summary judgment.

## VIII.  Conclusion

For these reasons,

IT IS ORDERED:

The summary-judgment motions, ECF Nos. 233, 281, 287, and 291, are

denied.

SO ORDERED on June 18, 2026.

s/Robert L. Hinkle
United States District Judge